UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEE     SCHMIDT    and    CRYSTAL
ARRINGTON,

        Plaintiffs,

v.                                            Civil Action No. 2:24cv621

CITY OF NORFOLK, the NORFOLK
POLICE  DEPARTMENT,  and  MARK
TALBOT,    in    his    official
capacity as the Norfolk Chief
of Police,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss collectively filed by Defendants City of Norfolk, the Norfolk Police Department ("NPD"), and Chief of Police Mark Talbot. ECF No. 18. Because the facts and legal questions are adequately presented in the motions and subsequent briefs, and oral argument would not aid in the decisional process, the Court finds that a hearing is unnecessary. For the reasons explained herein, the Court **DENIES** the motion to dismiss.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' complaint arises out of the City of Norfolk's installation and operation of automatic license plate readers ("ALPR") supplied by the private technology contractor Flock Safety ("Flock"). ECF No. 1, at 2. Plaintiffs allege that citizens of

Norfolk live under the watch of a web of "unblinking eyes" — the 172 Flock cameras that have been installed around the city.  Id. at 2.[1]

These 172 cameras capture information on the majority of cars that pass within their field of view.  Id.  Flock's software uses machine learning to take the information it obtains from the camera images to create a "Vehicle Fingerprint."  Id.  This "fingerprint" documents the color, make, model, type of plate, damage or alterations to the car, and whether the vehicle is registered to a resident or non-resident.  Id. at 8.  The fingerprint is then uploaded to a centralized database, whose software allows law enforcement to link together different photos of the same car.  Id. This data is then retained in the database for at least 30 days.[2] Id. at 9.  Flock cameras can capture images of vehicles traveling up to 100 miles per hour from up to 150 feet away.  Id. at 8.

In 2023, NPD and Flock entered into a five-year contract.  Id. at 9.  The contract's stated purpose is "the awareness, prevention,

---

[1] The facts reported below are taken from the complaint and do not represent "findings" by the Court for the purposes of the case.

[2] Plaintiffs allege that NPD originally had no policy governing camera usage and video retention and that the policy later developed still provides "virtually no privacy protections."  ECF No. 1, at 11.  Illustratively, Plaintiffs allege that any officer who completes a standard training course receives login credentials and can access the data from the Flock system. Id.  Norfolk law enforcement officers are instructed to use this data exclusively for law enforcement purposes, however, as the Plaintiffs point out, the policy never specifies what a "law enforcement purpose" is, instead leaving that determination in the hands of each individual officer without any advance approval required.  Id.

and prosecution of crime, bona fide investigations by police departments, and archiving for evidence gathering." _Id._  As Plaintiffs allege, the NPD strategically placed the 172 cameras in locations such that, in Police Chief Mark Talbot's words, "[i]t would be difficult to drive anywhere of any distance [in Norfolk] without running into a camera." _Id._ at 10.  Moreover, Flock data from Norfolk is "pooled" with data collected in various neighboring cities, creating what Chief Talbot labels "a nice curtain of technology" that allows monitoring to be extended beyond Norfolk. _Id._  Chief Talbot and NPD have plans to add up to 65 more Flock cameras around Norfolk, expanding the cover of this "curtain." _Id._ at 19.

The two Plaintiffs in this case, Lee Schmidt and Crystal Arrington, both live and conduct business within the "curtain of technology" of the Norfolk Flock cameras.  _Id._ at 12, 14.  Lee Schmidt is a Navy veteran who notes that there are four Flock cameras right outside of his neighborhood and that he has observed Flock cameras elsewhere on his daily travels throughout the city of Norfolk.  _Id._ at 12.  Crystal Arrington is a home healthcare worker that resides in Portsmouth but frequently travels to Norfolk to visit her friends and family and to drive her elderly clients to and from their doctors' offices and other appointments.  _Id._ at 14.  Ms. Arrington states that based on what she knows about the Flock cameras and what Chief Talbot has said about their placement,

3

the cameras have photographed her car on multiple occasions, causing her to worry about her own and her client's privacy.  Id. at 14-15.

Plaintiffs filed the instant federal lawsuit alleging that the "warrantless surveillance of their every move" violates their Fourth Amendment rights.  ECF No. 1, at 2.  On November 25, 2024, Defendants collectively filed the pending motion to dismiss, alleging lack of standing under Rule 12(b)(1), lack of personal jurisdiction over NPD under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6).  ECF No. 18.  Plaintiffs subsequently filed a motion to dismiss NPD without prejudice, ECF No. 20, which this Court granted by consent order, ECF No. 21.  As such, NPD has been terminated as a party.  The remaining portions of the pending motion to dismiss as filed by Defendants City of Norfolk and Mark Talbot are ripe for decision under Rule 12(b)(1) and Rule 12(b)(6).

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a cause of action based on a court's lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction "challenges the court's authority to hear the matter brought by [the] complaint."  Zaycer v. Sturm Foods, Inc., 896 F. Supp. 2d 399, 403 (D. Md. 2012).  The United States Supreme Court has held that a trial court should

4

"dismiss under Rule 12(b)(1) only when the jurisdictional allegations are 'clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.'" Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)). Put simply, a Rule 12(b)(1) motion to dismiss should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction, the burden of establishing such jurisdiction falls on the plaintiff. Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).

Defendants often challenge a court's subject matter jurisdiction by attacking a plaintiff's standing. The standing inquiry asks whether a party has a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." Sierra Club v. Morton, 405 U.S. 727, 731-32 (1972). If a plaintiff lacks standing, a court necessarily lacks subject matter jurisdiction, Pitt County v. Hotels.com, L.P., 553 F.3d 308, 312 (4th Cir. 2009), as "'Article III gives federal courts jurisdiction only over cases and controversies,' and standing 'is an integral component of the case or controversy requirement,'" CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52

5

(4th Cir. 2011) (quoting Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006)).  To carry their burden to establish standing, a plaintiff must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The injury in fact must be both concrete and particularized.  Id. at 334.

In some instances, the facts necessary to prove standing are intertwined with the merits of the case.  In those situations, a Rule 12(b)(1) motion to dismiss is an "indirect attack on the plaintiff's alleged factual merits," Kuntze v. Josh Enterprises, Inc., 365 F. Supp. 3d 630, 638 (E.D. Va. 2019), or a challenge to the validity of the plaintiff's claim, Kerns, 585 F.3d at 193. This overlap of facts often occurs when standing is challenged in cases involving an alleged Fourth Amendment violation.  Because standing can only be assessed in this context by definitively determining whether a search occurred and whether such search infringed upon an interest which the Fourth Amendment was designed to protect, such determination is essentially an evaluation of the merits of a plaintiff's Fourth Amendment claim.

The Supreme Court has held that standing, when inextricably intertwined with the Fourth Amendment analysis, is more "properly subsumed under substantive Fourth Amendment doctrine." Rakas v.

Illinois, 439 U.S. 128, 139-40 (1978). As such, the Supreme Court and the Fourth Circuit have held the best option in these instances is for the Court to receive evidence and for the entire factual dispute to be resolved by proceeding on the merits. Adams v. Bain, 697 F.2d 1213, 1217 (4th Cir. 1982). This entails either denying the Rule 12(b)(1) motion[3] and proceeding with the case or converting the Rule 12(b)(1) motion into a motion for summary judgment and ruling on that motion once sufficient discovery is complete. Kuntze, 365 F. Supp. 3d at 638.

The Fourth Circuit has recognized the validity of both these alternatives. In Carter v. United States, the Fourth Circuit vacated the district court's grant of the defendant's 12(b)(1) motion, holding that "unless the relevant allegations are 'wholly unsubstantial,' the district court should deny a Rule 12(b)(1) motion in order to 'assume jurisdiction and proceed to the intertwined merits issues.'" 694 F. App'x 918, 924 (4th Cir. 2017) (quoting Kerns, 585 F.3d at 193). In contrast, the Fourth Circuit held in Lutfi v. United States that the district court should have assumed jurisdiction and proceeded as if the defendant filed a

---

[3] When resolving a Rule 12(b)(1) motion, a district court is not constrained to considering only allegations in the complaint but may also consider materials outside the pleadings. Adams, 697 F.2d at 1219. These outside materials can be considered without converting the Rule 12(b)(1) motion into a motion for summary judgment. Id.; Fed. R. Civ. P. 12(d).

motion for summary judgment.  527 F. App'x 236, 241-42 (4th Cir. 2013).

## B. Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action based on the plaintiff's failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Fair notice is provided by setting forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Moreover, neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor

8

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice to meet the plausibility requirement. Id.

Because a motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the well-pled facts is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

### C. Fourth Amendment Searches

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In determining whether "a search" has occurred, federal courts either apply the common-law property-based approach[4] or a two-part test adopted by the Supreme Court assessing objective

---

[4] The common-law property approach examines whether the Government obtained information by physically intruding on a constitutionally protected area. United States v. Jones, 565 U.S. 400, 406 n.3 (2012). If it has, a search has undoubtedly occurred. Id.

and subjective expectations of privacy. See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).[5]  If either "facet [of the Katz test] is not met, no Fourth Amendment violation has transpired." United States v. Martin, No. 3:23cr150, 2024 WL 4476560, at *5 (E.D. Va. Oct. 11, 2024).

Examining the two-part test first articulated in Katz, for a plaintiff to have an "objective" expectation of privacy, their belief that an area or thing is private must be one that society is prepared to recognize as reasonable. O'Connor v. Ortega, 480 U.S. 709, 715 (1987).  This requires an evaluation of whether a disputed surveillance practice is an intrusion that jeopardizes an individual's sense of security more than necessary. Martin, 2024 WL 4476560, at *12.

In contrast, a "subjective" expectation of privacy focuses on the plaintiff's own mindset, thus requiring a "straightforward inquiry into the complainant's state of mind." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  Though any plaintiff can easily assert that they subjectively believed an area to be private, whether they can demonstrate a subjective expectation of privacy often turns on their outward manifestations (i.e., keeping an item in a locked space, using password protection

---

[5] The Katz test has recently been reaffirmed as an alternative to the property-based approach in various Supreme Court holdings. See, e.g., Carpenter v. United States, 585 U.S. 296, 304 (2018); United States v. Jones, 565 U.S. 400, 406 (2012); Kyllo v. United States, 533 U.S. 27, 33 (2001).

on a device, avoiding disclosure to third parties). Martin, 2024 WL 4476560, at *11. If a plaintiff can point to efforts they made to preserve something as private then courts will generally find that such individual had a subjective expectation of privacy. Id.; O'Connor, 480 U.S. at 718. However, if that individual knowingly exposes something to the public, even in their home or office, any claimed subjective expectation of privacy is generally undercut, thus likely failing that part of the Katz test. Katz, 389 U.S. at 351.

One unique application of the Katz test is to "drag-net type law enforcement practices," that allow law enforcement to discern the whole of an individual's physical movements over an extended period of time. Carpenter v. United States, 585 U.S. 296, 310 (2018). The Supreme Court has unequivocally acknowledged that an individual's subjective and reasonable objective expectations of privacy include privacy in the whole of their physical movements. Id. Allowing the government to collect data that amounts to the whole of someone's physical movements provides an "intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations'" in violation of that individual's subjective expectation of privacy. Id. at 311 (quoting United States v. Jones, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring)). The Supreme Court further held that it is society's

11

understanding that law enforcement would not, and could not, secretly monitor and catalogue an individual's every movement over a long period of time, meaning that such extensive information gathering is a violation of society's objective expectations of privacy. Jones, 565 U.S. at 430 (Alito, J., concurring). Accordingly, such "drag-net" practices are considered a search, notwithstanding the fact that many instances of a person's movements are in a public space and easily observable by others.

Controlling precedent has deemed certain law enforcement surveillance methods as tantamount to a drag-net, finding that these technologies violate individuals' subjective and reasonable objective expectations of privacy and therefore constitute a Fourth Amendment search. For example, the Supreme Court held that gathering all of an individual's cell-site location information over a period of as little of seven days was a search, for it revealed the whole of an individual's physical movements during that period. Carpenter, 585 U.S. at 311. Similarly, the Fourth Circuit held that aerial surveillance by plane, which captured second by second images of broad swaths of the City of Baltimore for close to 12 hours a day, sufficiently tracked the whole of one's movements and was therefore a search. Leaders of a Beautiful Struggle v. Baltimore Police Department, 2 F.4th 330, 333-34 (4th Cir. 2021).

### III. DISCUSSION

Because Defendants' jurisdictional challenges implicate the Court's authority to consider the merits of Defendants' Rule 12(b)(6) motion, the Court will address the Rule 12(b)(1) claim first. See Docs Billing Sols., LLC v. GENETWORx LLC, No. 3:18cv35, 2018 WL 4390786, at *2 (E.D. Va. Aug. 30, 2018) (noting that jurisdictional challenges should take precedence over other motions).[6]

### A. Rule 12(b)(1) - Subject Matter Jurisdiction

Regardless of whether a court denies a Rule 12(b)(1) motion and proceeds with the case or converts it to a motion for summary judgment, a court must first have or assume jurisdiction. Kuntze, 365 F. Supp. 3d at 638; see Kerns, 585 F.3d at 193. In order to assume jurisdiction, a court "should engage in a threshold analysis to ensure that the plaintiff's allegations are sufficient to confer jurisdiction." Kuntze, 365 F. Supp. 3d at 638. This step is, in essence, a facial analysis where the court assumes the truth of the plaintiff's allegations to determine if the well-pled facts plausibly confer jurisdiction. Id. at 639; Rich v. United States, 811 F.3d 140, 144-45 (4th Cir. 2015). Plaintiffs can meet their

---

[6] Although Defendants' filings argue that there are also Rule 12(b)(2) grounds for dismissing NPD as a party, this argument was mooted when the Court granted Plaintiffs' unopposed motion to dismiss NPD.    ECF No. 21. Since there is no longer a live controversy concerning NPD, the Court will not address this claim further.    Disability Law Ctr. v. Millcreek Health Ctr., 428 F.3d 992, 996 (10th Cir. 2005).

burden by plausibly alleging in their complaint that they suffered an injury caused by Defendants' actions that can be redressed by the Court.  Spokeo, 578 U.S. at 338.  The concrete and particularized injury Plaintiffs are alleging in the instant case is that they were forcibly subjected to an ongoing warrantless search in violation of the Fourth Amendment.  ECF No. 1, at 2.

Determining whether the Plaintiffs are being subjected to a "search," as necessary to resolve the standing dispute, is no easy task.  It, in essence, requires the resolution of the key factual and legal disputes that represent the crux of this case.  As such, the Court will first decide whether it can assume jurisdiction based on the facts alleged through application of the Katz test and then determine whether it is best to conclusively resolve this issue at this time by converting the Rule 12(b)(1) motion into a summary judgment motion or by denying the Rule 12(b)(1) motion and proceeding with discovery.  Kuntze, 365 F. Supp. 3d at 639.

### 1. Subjective Expectation of Privacy

Defendants argue that Plaintiffs do not have a subjective expectation of privacy in the images and information Flock cameras capture.  ECF No. 19, at 7.  Specifically, Defendants state that long-standing Supreme Court precedent holds that individuals have no reasonable expectation of privacy in their movements from one place to another while traveling in an automobile on public

thoroughfares.   See ECF No. 19, at 7 (citing United States v. Knotts, 460 U.S. 276, 281 (1983)).[7]

While this Court is of course bound by the Supreme Court's holding in Knotts, Defendants' assertion that Plaintiffs' claimed subjective expectation of privacy cannot be reconciled with Knotts ignores more recent Supreme Court precedent.   As detailed above, in Carpenter the Supreme Court limited the breadth of Knotts by clarifying that "a person does not surrender all Fourth Amendment protection by venturing into the public sphere," and that individuals have a reasonable expectation of privacy in the whole of their physical movements.   Carpenter, 585 U.S. at 310.

Relying on Carpenter, when this Court accepts Plaintiffs' well-pled version of the facts and draws all reasonable inferences in their favor, as is required at this stage of the proceedings, the Court concludes that it is plausible that Plaintiffs subjectively believe they have a reasonable expectation of privacy that is being violated because the Flock camera system is creating a drag-net system of surveillance that effectively tracks the whole of Plaintiffs' physical movements.   Plaintiffs' complaint supports this conclusion by alleging that:   (1) Chief Talbot stated that it

---

[7] Defendants also discuss New York v. Class, where the Supreme Court held that "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile [i.e. a license plate]."   475 U.S. 106, 113-14 (1986).   The Court, however, finds Defendants' argument relating to Knotts more relevant at this stage of the proceedings.

would be difficult to drive any distance in the city of Norfolk without running into one of the Flock cameras, (2) there are more than 170 Flock cameras around Norfolk, (3) there are four cameras directly outside Plaintiff Schmidt's neighborhood and he cannot leave his neighborhood without the NPD knowing; (4) Plaintiff Arrington's car has been photographed on a near daily basis by the ALPRs; (5) the Flock system creates a searchable database of digital fingerprints of specific cars, and retains this data for 30 days allowing for long term tracking; and (6) the stated purpose of the Flock system is to "archive evidence" of a vehicle's movements "for evidence gathering." ECF No. 1, 12-14, 16, 18, 20.

Plaintiffs plausibly allege that these assertions justify their subjective belief that Defendants' drag-net surveillance violates their subjective expectation of privacy. Plaintiffs, providing the Court with a straightforward look into their state of mind, illustrate that (1) neither Plaintiff, prior to the Flock camera installations, believed that anyone, including law enforcement, would be able to track their every movement in a vehicle over the span of 30 days, and if they did it would be considered stalking; and (2) both Plaintiffs find the cameras deeply intrusive, with it causing Plaintiff Schmidt anxiety and

16

Plaintiff Arrington to be concerned for the future of her business. Id. at 13, 16, 18.[8]

In sum, the alleged facts and associated reasonable inferences plausibly allege that Plaintiffs believe there is a drag-net system of surveillance, and based on the Supreme Court's holding in Carpenter, it is similarly plausible that Plaintiffs believe that there was a violation of their subjective expectation of privacy. Therefore, the Court must proceed to the next step of the Katz inquiry: whether, objectively speaking, society considers that expectation of privacy to be reasonable.

### 2. Objective Expectation of Privacy

Defendants argue that Plaintiffs cannot establish an objectively reasonable expectation of privacy because the Flock cameras do not capture the whole of Plaintiffs' physical movements. ECF No. 19, at 14-16. In support of this argument, Defendants attempt to distinguish the Flock system (static camera images) from the technology at issue in Carpenter (cell-site location data), and Beautiful Struggle (large scale aerial surveillance by plane). Id. at 11-17. Defendants attempt to reinforce this differentiation

---

[8] The Court recognizes that Plaintiffs fail to overtly offer any outward manifestations of their subjective expectation of privacy. However, on this record, this does not undercut Plaintiffs' allegations of a subjective expectation of privacy, for the principal actions the Court can envision that would outwardly manifest Plaintiffs' expectations would be either illegal (i.e., covering up their license plate) or essentially impractical in their circumstances and given their responsibilities (i.e., not driving and instead walking, biking, or taking public transit everywhere).

by stating that unlike the technology in the aforementioned cases, no information obtained in the Flock photographs of Plaintiffs' vehicles or in the Vehicle Fingerprint is "so revealing of intimate details as to raise constitutional concerns," thus rendering Plaintiffs' claimed expectation of privacy one that society is not prepared to accept as reasonable. Id.; Dow Chem. Co. v. United States, 476 U.S. 227, 238 (1986).

Contrary to Defendants' assertions, in Carpenter the Supreme Court held that "society's expectation has been that law enforcement agents and others would not — and indeed, in the main, simply could not — secretly monitor and catalogue every single movement of an individual's car for a very long period." 585 U.S. at 310 (quoting Jones, 565 U.S. at 430). Plaintiffs sufficiently allege in their complaint that a reasonable person could believe that society's expectations, as laid out by the Court in Carpenter, are being violated by the Norfolk Flock system. ECF No. 1, at 20-21. Plaintiffs do so by describing how historically it would have been nearly impossible for law enforcement to collect the same information as the Flock cameras and to the same magnitude without expending significant time, money, and labor. Id. at 2-3. Plaintiffs also discuss how "police need not even know in advance whether they want to follow a particular individual, or when" as they can reach back a minimum of 30 days to review a "vehicle Fingerprint" that was admittedly captured and catalogued for every

18

<u>vehicle</u> on Norfolk's streets.   ECF No. 22, at 19.   In fact, as stated in the Flock agreement, the very purpose of capturing this data was "archiving for evidence gathering," ECF No. 1, at 9, and this archived evidence can be accessed with "just the click of a button," <u>Carpenter</u>, 585 U.S. at 311.

When construed in Plaintiff's favor, as required at this stage of the case, the complaint alleges facts notably similar to those in <u>Carpenter</u> that the Supreme Court found to clearly violate society's expectation of privacy: law enforcement secretly monitoring and cataloguing the whole of tens of thousands of individual's movements over an extended period.   In short, the Court finds that considering existing precedent, the well-pled facts plausibly allege a violation of an objectively reasonable expectation of privacy.[9]

*     *     *

Accordingly, because the facts as alleged in the complaint suggest that Defendants can discern intimate information about the Plaintiffs, such as where they go, for how long, who they associate with, and because Plaintiffs point to statements by the Chief of

---

[9] The Court's finding is not a preview of the likely resolution of this case, but instead an interpretation of the pre-discovery factual allegations interpreted in the light most favorable to Plaintiffs.   Going forward, the Court will be interested to know, as briefly mentioned in Defendants' reply brief, the location of the Flock cameras throughout the city, and the similarities, or lack thereof, between the Flock camera distribution in this case and the Flock camera distribution in Richmond at issue in <u>United States v. Martin</u>,   No. 3:23cr150, 2024 WL 4476560 (E.D. Va. Oct. 11, 2024).

Police stating that it would be difficult to drive any distance in Norfolk without running into one of the Flock cameras, Plaintiffs have, at least at this early stage, plausibly alleged that their subjective and reasonable objective expectations of privacy have been violated.  ECF No. 1, at 2.  Furthermore, Plaintiffs have plausibly alleged that a warrantless search occurred, and thus interests that the Fourth Amendment was designed to protect have been violated.  Id.  Because Plaintiffs have plausibly alleged an injury caused by Defendants' installation and operation of the Flock cameras, and neither party disputes that Plaintiffs' injuries can be redressed in the instant action via an injunction, the Court can assume Plaintiffs' standing, and therefore, that Plaintiffs' allegations are sufficient to confer subject matter jurisdiction. As such, the Court next considers whether it is best to convert the Rule 12(b)(1) motion into a summary judgment motion or deny the Rule 12(b)(1) motion and proceed with the case.

### 3. Converting or Denying Rule 12(b)(1) Motion

At this early juncture, the Court is hesitant to convert the Rule 12(b)(1) motion into a motion for summary judgment because: (1) there appear to be many unresolved issues of material fact directly relevant to the determination of whether Defendants' use of Flock cameras violates Plaintiffs' Fourth Amendment rights,[10]

---

[10] For example, some of the unresolved issues include the number and location of Flock cameras given the geography of Norfolk, the nature of the Flock

and (2) the parties have not had the opportunity to perform any merits-based discovery. Moreover, attempting to short-circuit the typical discovery process in favor of "jurisdictional discovery" would reap little, if any, economies as both the jurisdictional issue and the alleged Fourth Amendment violation require resolution of the same ultimate question.

Therefore, because there are material jurisdictional facts in dispute that are wholly intertwined with the merits of the case, the Court finds that the case should proceed forward to discovery. Consequently, Defendants' motion to dismiss on Rule 12(b)(1) grounds is **DENIED**.

### B. Rule 12(b)(6) - Failure to State a Claim

Because the Court has appropriately assumed subject matter jurisdiction, it now turns to the Rule 12(b)(6) portion of Defendants' motion to dismiss. The dispositive Rule 12(b)(6) question is whether the complaint contains sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face. Iqbal, 556 U.S. at 678. Defendants assert that: (1) Plaintiffs cannot demonstrate that a search occurred under a physical trespass theory; and (2) Plaintiffs fail to sufficiently allege a violation of both their subjective and

---

database and its use or misuse by NPD, the extent to which Plaintiffs' vehicles have actually been captured in the Flock system, and Defendants' ability to effectively "track" Plaintiff' vehicles as they move throughout Norfolk.

reasonable objective expectations of privacy, as required by the Katz test.  ECF No. 19, at 6-19 (citing Katz, 389 U.S. at 361).

As outlined above, Plaintiffs have sufficiently alleged a violation of both their subjective and reasonable objective expectations of privacy, and by doing so, plausibly allege that a search has occurred.  When the Court takes all well-pled facts in the complaint as true, even if "doubtful in fact," the Court can draw another inference in Plaintiffs' favor, as it is required to do at this stage: that a violation of Plaintiffs' Fourth Amendment rights occurred.  Twombly, 550 U.S. at 555.  Because violations of Fourth Amendment rights are a claim upon which this Court frequently grants relief, Defendants fail to carry their burden and their Rule 12(b)(6) motion is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss on both Rule 12(b)(1) and Rule 12(b)(6) grounds. ECF No. 18.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

IT IS SO ORDERED.

_____  /s/ Mark S. Davis
                         Mark S. Davis
          CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February  5  , 2025