**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| LEE SCHMIDT and CRYSTAL ARRINGTON, | |
| *Plaintiffs*, | Case No.: 2:24-cv-00621-MSD-LRL |
| v. | Hon. Mark S. Davis |
| CITY OF NORFOLK and MARK TALBOT, in his official capacity as the Norfolk Chief of Police, | |
| *Defendants*. | |

## FLOCK SAFETY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

      A.    Background on Flock ...............................................................................3

      B.    Procedural History ..................................................................................4

      C.    Discovery From Flock ............................................................................5

LEGAL STANDARD .............................................................................................................6

ARGUMENT .........................................................................................................................7

I.     Flock's Intervention Is Timely and Will Not Prejudice Either Party. ...................7

II.    Flock Satisfies the Standards for Mandatory Intervention. ...............................11

      A.    Impairment of Flock's Interests ...........................................................11

      B.    Inadequacy of Existing Representation .................................................12

III.   Flock Also Satisfies the Standard for Permissive Intervention. .........................15

CONCLUSION .....................................................................................................................17

CERTIFICATE OF SERVICE ..............................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

### FEDERAL CASES

*Allied Title Lending, LLC v. Taylor*,
    420 F. Supp. 3d 436 (E.D. Va. 2019) .................................................................7, 8

*Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*,
    467 F. Supp. 3d 282 (D. Md. 2020) ......................................................................11

*Am. Petrol. Inst. v. Cooper*,
    2009 WL 10688053 (E.D.N.C. Feb. 27, 2009) .....................................................16

*Back Bay Restoration Found., Ltd. v. U.S. Army Corps. of Engr's*,
    2019 WL 7817079 (E.D. Va. Sept. 25, 2019) ........................................................8

*Berger v. N.C. State Conference of the NAACP*,
    597 U.S. 179, 197 (2022) ................................................................................12, 14

*BioNTech SE v. CureVac SE*,
    2024 WL 2044828 (E.D. Va. Apr. 12, 2024) ........................................................13

*Cellco P'ship & N.Y. SMSA Ltd. P'ship v. Cnty. of Monmouth*,
    2024 WL 989824 (D.N.J. Mar. 7, 2024)................................................................16

*Daggett v. Comm'n on Govt'l Ethics & Election Pracs.*,
    172 F.3d 104 (1st Cir. 1999) ................................................................................16

*Defs. of Wildlife v. N.C. Dep't of Transp.*,
    281 F.R.D. 264 (E.D.N.C. 2012) .......................................................................8, 13

*Dinner Table Action v. Schneider*,
    2025 WL 604885 (D. Me. Feb. 25, 2025) ............................................................16

*Driftless Area Land Conservancy v. Huebsch*,
    969 F.3d 742 (7th Cir. 2020) ................................................................................14

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) .............................................................................6, 11

*Field v. Anadarko Petrol. Corp.*,
    35 F.4th 1013 (5th Cir. 2022) ..............................................................................11

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489, 1496 (9th Cir. 1995) ......................................................................11

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) .............................................................................13

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) ...................................................................................7

*Hill v. W. Elec. Co.*,
  672 F.2d 381 (4th Cir. 1982) ...............................................................................8, 15

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*,
  321 F. App'x 286 (4th Cir. 2009) ..................................................................2, 12, 13

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) (en banc) ...............................................................1, 16

*Middleton v. Andino*,
  481 F. Supp. 3d 563 (D.S.C. 2020)........................................................................9

*N.C. Green Party v. N.C. State Bd. of Elections*,
  619 F. Supp. 3d 547 (E.D.N.C. 2022).....................................................................11

*Nat. Res. Def. Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) ..............................................................................14

*Nat'l Farm Lines v. I.C.C.*,
  564 F.2d 381 (10th Cir. 1977) ..............................................................................13

*Richman v. First Woman's Bank*,
  104 F.3d 654 (4th Cir. 1997) ...............................................................................11

*Scott v. Bond*,
  734 F. App'x 188 (4th Cir. 2018) ............................................................................8

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  323 F.R.D. 553 (E.D. Va. 2018) ..............................................................................9

*Stuart v. Huff*,
  706 F.3d 345 (4th Cir. 2013) ................................................................................14

*T-Mobile Northeast LLC v. Town of Barnstable*,
  969 F.3d 33 (1st Cir. 2020 ) .................................................................................16

*Teague v. Bakker*,
  931 F.2d 259 (4th Cir. 1991) ............................................................................11, 12

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)..........................................................................................12, 14

*United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*,
  819 F.2d 473 (4th Cir. 1987) ............................................................................13, 14

iii

*United States v. Martin*,
    2024 WL 4476560 (E.D. Va. Oct. 11, 2024) ............................................................2, 4, 5, 10

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) ...................................................................................13

*W. Watersheds Project v. U.S. Forest Serv. Chief*,
    2020 WL 13065066 (D. Wyo. July 29, 2020) ..........................................................16

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ....................................................................................11

**FEDERAL RULES**

Fed. R. Civ. P. 12 ...................................................................................................................4

Fed. R. Civ. P. 24 ......................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6).........................................................................................................6

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ...................................................................................................... *passim*

**OTHER AUTHORITIES**

25 Fed. Proc., L. Ed. § 59:327 ............................................................................................13

7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1909 (3d
    ed. Supp. 2022) ..........................................................................................................12

Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendment ....................................15

6 James Wm. Moore et al., *Moore's Federal Practice* § 24.10 (2025) .............................16

Flock Group, Inc., doing business as Flock Safety ("Flock"), moves this Court, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or in the alternative pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, for an Order granting its Motion to Intervene as a Defendant in this action.

## INTRODUCTION

"Any Fourth Amendment analysis . . . must be grounded on an accurate understanding of the facts." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 333 (4th Cir. 2021) (en banc). Plaintiffs allege that the City of Norfolk's use of a Flock Safety product violates the Fourth Amendment because it has "enable[d] the warrantless surveillance of their every move," ECF ¶ 1, and has "captured the whole of" Plaintiffs' "public movements," *id.* ¶ 90. These allegations are inaccurate. Recent discovery requests by Plaintiffs to Flock seeking broad categories of documents and data make clear that Flock is best placed to provide the Court with information showing that Plaintiffs' allegations are incorrect and that the City's use of Flock's products is lawful. Accordingly, Flock now moves to intervene.

The Court's decision on the City's motion to dismiss explained that a number of unanswered questions about how Flock's technology works are "directly relevant" to the merits of this lawsuit. ECF 29 at 20. The Court stated that resolving the Fourth Amendment issue in this case is "no easy task" and "requires the resolution of the key factual and legal disputes that represent the crux of this case." *Id.* at 14. The Court identified "many unresolved issues of material fact directly relevant to the determination of whether Defendants' use of Flock cameras violates Plaintiffs' Fourth Amendment rights," including "the number and location of Flock cameras given the geography of Norfolk, the nature of the Flock database and its use or misuse by NPD, the extent to which Plaintiffs' vehicles have actually been captured in the Flock system, and Defendants' ability to 'track' Plaintiff[s]' vehicles as they move throughout Norfolk." *Id.* at

20-21 n.10.  Similarly, Plaintiffs themselves recently described "the capabilities" of "Flock Cameras" as "a central question in the case," ECF 38 at 10 (motion to compel discovery), and asserted that the cameras' "capability" is "what ultimately matters," *id.* at 2.

Flock is in the best position to explain the facts on the issues that the Court identified and the "capabilities" of Flock technology that Plaintiffs have described as "key."  ECF 38 at 11; *see JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 291 (4th Cir. 2009) (reversing denial of motion to intervene by companies whose "factual challenges" to plaintiffs' claims showed "superior knowledge" over subject matter as compared to existing government agency defendant).  Flock is uniquely able to explain what Flock cameras can do and, just as important, what they cannot do, so that this Court does not have to "speculate" about Flock's capabilities.  *United States v. Martin*, 2024 WL 4476560, at *16 (E.D. Va. Oct. 11, 2024) (relying on Flock testimony in denying motion to suppress).  Plaintiffs seemingly agree as they recently served Flock with a broad subpoena, more akin to traditional party discovery, requesting 28 categories of documents and data.  It will be far more efficient for Flock to provide that discovery, as well as other critical information, as a party to the action than as a third party.  To take just one example, Flock would be willing to produce certain data that Plaintiffs have moved to compel Defendants to produce.

Accordingly, this Court should grant Flock's motion to intervene.  Courts regularly allow intervention when a non-party can help fully develop the factual and legal issues in a case and when intervention will not prejudice the existing parties.  Here, Flock's intervention will enhance the Court's ability to determine facts it has identified as important to resolving this case without delaying the proceedings.  Flock agrees to abide by the existing case schedule, which is months away from the close of fact discovery and the deadline for dispositive motions.  And Flock will

avoid creating any additional burden on Plaintiffs by endeavoring to minimize incremental discovery and briefing.

The City consents to Flock's intervention.  Plaintiffs have not provided their position.

## BACKGROUND

### A.    Background on Flock

Flock is a technology company that creates products to help private companies, neighborhoods, and law enforcement combat crime and keep their communities safe.[1]  Flock was founded in 2017 as a four-person venture in Atlanta and has grown significantly in the years since, offering solutions to its customers that include License Plate Recognition ("LPR") technology.[2]  Flock's LPRs have various technical features that help combat crime, as well as privacy protections and other properties to avoid misuse.[3]  Over 5,000 communities in 49 states use Flock's hardware and software,[4] ranging from large cities such as San Francisco, Atlanta, and Dallas to smaller communities, like Berkeley, California and Alexandria, Virginia.[5]

In February 2023, after public meetings, the City of Norfolk signed a multiyear contract with Flock.  Under that contract, Flock has set up approximately 172 LPR cameras in Norfolk—a city of close to 240,000 residents that spans over 53 square miles.  Images from the cameras are stored on Flock's secured database for 30 days, during which time it can be accessed only by

---

[1] *Who We Are*, Flock Safety, flocksafety.com/media-kit (last visited Apr. 3, 2025).

[2] *Our Founding Story*, Flock Safety, flocksafety.com/media-kit (last visited Apr. 3, 2025); *LPR Cameras*, Flock Safety, flocksafety.com/devices/lpr-cameras (last visited Apr. 3, 2025).

[3] *About Flock Safety*, Flock Safety, flocksafety.com/about (last visited Apr. 3, 2025).

[4] *See id.*; *License Plate Recognition Cameras*, flocksafety.com/resources/license-plate-reader-cameras-overview (last visited Apr. 3, 2025).

[5] *See, e.g.*, *SF Takes Historic Step to Solve Crime with 400 LPR Cameras*, Flock Safety, flocksafety.com/articles/sf-takes-historic-step-to-solve-crime-with-400-lpr-cameras (last visited Apr. 3, 2025); *Berkeley CA Transparency Portal*, Flock Safety, transparency.flocksafety.com/berkeley-ca-pd (last visited Apr. 3, 2025).

authorized users for legitimate law enforcement purposes.  Once images are deleted from the database, nobody can access them, including Flock.

###### B.    Procedural History

In late October 2024, Lee Schmidt and Crystal Arrington ("Plaintiffs") sued the City of Norfolk, the Norfolk Police Department, and the former Norfolk Police Chief (collectively, "the City" or "Norfolk").  ECF 1.  Plaintiffs broadly allege that the City is violating their Fourth Amendment rights by using Flock cameras without a warrant because, in their telling, the cameras allow the City to track "the whole" of their movements over a 30-day period.  The Complaint makes this allegation repeatedly.  *See id.* ¶¶ 9, 74, 81-83, 90, 99, 109.

Norfolk moved to dismiss the case for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  *See* ECF 18, 19.  On February 5, 2025, the Court denied the City's motion to dismiss, finding the allegations raised factual issues.  *See* ECF 29.  Crediting Plaintiffs' allegation that Flock enables the City's "warrantless surveillance of their every move," *id.* at 4, the Court found that the allegations construed in Plaintiffs' favor supported an inference that the City was "secretly monitoring and cataloguing the whole of tens of thousands of individuals' movements over an extended period," *id.* at 19.  The Court noted that this finding "is not a preview of the likely resolution of this case, but instead an interpretation of the pre-discovery factual allegations interpreted in the light most favorable to the Plaintiffs."  *Id.* at 19 n.9.

The Court indicated that it "will be interested to know," among other things, "the location of the Flock cameras throughout the city, and the similarities, or lack thereof, between the Flock camera distribution in this case and the Flock camera distribution in Richmond at issue in *United States v. Martin*," where Judge Payne found that the use of Flock cameras did not violate the Fourth Amendment.  *Id.* (citing *United States v. Martin*, 2024 WL 4476560 (E.D. Va. Oct. 11,

2024)).  The Court also identified "many unresolved issues of material fact directly relevant to the determination of whether Defendants' use of Flock cameras violates Plaintiffs' Fourth Amendment rights," including "the number and location of Flock cameras given the geography of Norfolk, the nature of the Flock database and its use or misuse by NPD, the extent to which Plaintiffs' vehicles have actually been captured in the Flock system, and Defendants' ability to 'track' Plaintiffs' vehicles as they move throughout Norfolk."  *Id.* at 20-21 & n.10.

On February 24, the Court entered a Scheduling Order setting July 1, 2025 as the deadline for Plaintiffs to take discovery; July 29, 2025 as the deadline for Defendants to take discovery; August 14, 2025 as the deadline for all dispositive motions, including any motion for summary judgment; and October 7, 2025 as the trial date.  *See* ECF 31 at 2, 4.

### C.    Discovery From Flock

On February 25, both parties sent Flock preservation letters for future discovery in this action.  *See* Declaration of Jonathan Kravis ("Kravis Decl.") ¶ 2.  Flock sent Plaintiffs a response to their preservation letter on March 5, and met and conferred with Plaintiffs and the City on March 6 and March 7, respectively.  *See id.*

Plaintiffs then served Flock with a document subpoena on March 14.  *See id.* ¶ 3, *see also* Kravis Decl. Ex. A.  Plaintiffs' subpoena is expansive, containing 28 broad requests for production including:

- all data collected from Flock cameras to which Norfolk has access, *see* RFPs Nos. 6-10;

- information about the placement and positioning of the Flock cameras in Norfolk, *see* RFP No. 14;

- "user guides" and "data dictionaries . . . related to the Flock Cameras, Flock Data, or Flock System," RFP No. 4;

- documents "sufficient to show the features and capabilities of the Flock System, including but not limited to its search, data analysis, machine learning, and artificial intelligence features or capabilities," RFP No. 19;

- documents "related to [Flock's] 'Vehicle Fingerprint' and 'Convoy Analysis' features," RFP No. 20;

- all records "related to the ability of Flock Cameras, Flock Data, or the Flock System to track vehicles or people," RFP No. 23; and

- information about Flock's data-security and privacy policies and practices, RFP Nos. 16-18.  Kravis Decl. Ex. A.

Plaintiffs also have indicated that they intend to serve Flock with a deposition subpoena under Rule 30(b)(6).  *See* Kravis Decl. ¶ 6.

Counsel for Flock have been conferring with Plaintiffs regarding the production of data and information sought by the subpoena.  *See id.* ¶ 5.  The parties have also conferred on this motion to intervene.  The City has consented to Flock's intervention.  *Id.* ¶ 7.  Flock reached out to Plaintiffs on Tuesday, April 1, 2025, and Thursday, April 3, 2025, but Plaintiffs have not provided their position.  *Id.* ¶ 8.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 24 provides two mechanisms for a non-party to intervene in a case: (1) intervention as of right and (2) permissive intervention.  Fed. R. Civ. P. 24.  The Fourth Circuit favors "liberal" application of these standards in order "to dispose of as much of the controversy involving as many apparently concerned persons as is compatible with efficiency and due process."  *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotations omitted).

A non-party movant may intervene as of right "[o]n timely motion" if the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Under Rule 24, if the movant meets this standard, the Court "must" allow intervention. Fed. R. Civ. P. 24(a).

Regardless of whether a party has a right to intervene under Rule 24(a), the Court may permit intervention "[o]n timely motion" if the non-party movant "has a claim or defense that shares with the main action a common question of law or fact." Fed R. Civ. P. 24(b)(1)(B). In deciding whether to permit intervention, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

For purposes of both mandatory and permissive intervention, a proposed intervenor must file a timely motion to intervene and show that its participation will not unreasonably prejudice existing parties. *See* Fed. R. Civ. P. 24(a), (b) (requiring a "timely motion"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (timeliness depends on "prejudice" to existing parties). Flock accordingly addresses those common issues first before explaining why it satisfies the other requirements for mandatory and permissive intervention.

## I.      Flock's Intervention Is Timely and Will Not Prejudice Either Party.

Flock's intervention at this stage will enhance the efficient adjudication of this action without prejudicing any party. *See Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 455 (E.D. Va. 2019) ("[C]ourts should balance any delay or prejudice threatened by intervention with the advantages promised by it." (quotations omitted)). To determine whether intervention is timely, courts consider "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould*, 883 F.2d at 286. The "most important" of these considerations is "whether the existing parties will suffer

prejudice if the motion is granted." *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018) (citing *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)).  Here, each consideration cuts strongly in favor of Flock's intervention.

This case is still in a preliminary stage.  Dispositive motions, including the parties' summary judgment briefing, are not due for more than four months, on August 14, 2025.  ECF 31 at 4.  Courts in the Fourth Circuit regularly hold that intervention before summary judgment briefing is timely.  *See, e.g.*, *Back Bay Restoration Found., Ltd. v. U.S. Army Corps. of Engr's*, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019) (finding intervention timely when filed before summary judgment motions were due); *Defs. of Wildlife v. N.C. Dep't of Transp.*, 281 F.R.D. 264, 267 (E.D.N.C. 2012) (finding motion timely when administrative record and motions for summary judgment were not yet due).  Plaintiffs have served discovery on Flock, and they have been conferring regarding that discovery.  Permitting Plaintiffs to intervene will not set back those efforts.

Indeed, Flock moved to intervene promptly after it became apparent that the facts about Flock's technology would be central to and substantially benefit the Court in this case.  As noted, the Court's decision explained that a number of unanswered questions about how Flock's technology works are "directly relevant" to the merits of this lawsuit.  ECF 29 at 20.  And discovery proceedings following that decision have made clear that Flock's participation will be necessary to answer those questions.  Plaintiffs have served Flock with broad discovery seeking documents and data, and have asserted in discovery motion practice that Flock's "capabilit[ies]" are what "ultimately matters" in the case.  ECF 38 at 1-2.

The existing parties cannot identify any prejudice from Flock's participation, which is "the most important" factor in whether intervention is timely.  *Allied Title Lending*, 420 F. Supp.

3d at 455.  If this motion to intervene is granted, then Flock will agree to comply with the Court's current Scheduling Order, which all but eliminates any risk of prejudice from delay.  *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018) (finding prejudice muted if intervenor agrees to follow existing pretrial schedule).  Flock will also work with the existing parties to streamline discovery and briefing as much as possible.  This coordination will further mitigate any risk that Flock's involvement will materially increase the burden of litigation on the Plaintiffs.  *Cf. Middleton v. Andino*, 481 F. Supp. 3d 563, 568 (D.S.C. 2020) (finding "briefing by the Proposed Intervenors would not amount to prejudicial delay, even if it creates some additional work for Plaintiffs (and the court)").

Far from causing prejudice, Flock's intervention will help ensure that the parties and the Court have an accurate understanding of how Flock's technology works, among other critical factual issues in this lawsuit.  In its order on the City's motion to dismiss, the Court recognized that this case involves "many unresolved issues of material fact" that are "directly relevant to the determination of whether [the City's] use of Flock cameras violates Plaintiffs' Fourth Amendment rights."  ECF 29 at 20.  Those unresolved issues include the "number and location of Flock cameras," the "nature of the Flock database," the "extent to which Plaintiffs' vehicles have actually been captured in the Flock system," and the nature of Flock's technological capacity to "effectively 'track' [Plaintiffs'] vehicles as they move throughout Norfolk."  *Id.* at 20-21, 20 n.10.  Plaintiffs themselves have described "the capabilities" of "Flock Cameras" as "a central question in the case," ECF 38 at 10 (motion to compel discovery from Defendants), and a "key inquiry," *id.* at 11.  Indeed, Plaintiffs have argued that the cameras' "capability" is "what ultimately matters" in the case.  *Id.* at 2.

Flock is best positioned to help answer the Court's questions and explain the facts regarding the cameras' capabilities—and limitations.  Flock employees will have the most knowledge of what the company's technology can and cannot do.  Presumably that is why Plaintiffs have served Flock with a subpoena seeking 28 broad categories of documents, including data, product guides, and documents regarding "the features and capabilities of the Flock System."  *See* Kravis Decl. Ex. A.  Indeed, in *United States v. Martin*, Judge Payne heard and relied extensively on live testimony from a Flock employee in denying a motion to suppress Flock footage that captured a suspect fleeing a robbery.  *See* 2024 WL 4476560, at \*1-3.

It will be far more efficient to resolve these requests for discovery if Flock is a party to the action.  Indeed, Plaintiffs have already served Flock with what amounts to party discovery.  And Flock is willing to produce data that may obviate ruling on a motion to compel discovery from Defendants that Plaintiffs have filed.  Plaintiffs requested that Defendants produce data from Flock cameras regarding all vehicles photographed in the City of Norfolk.  ECF 38 at 4.  Defendants agreed only to produce data from Flock cameras that photographed vehicles driven by Plaintiffs.  *See id.* at 4-5.  Flock can produce much of the broader set of data that Plaintiffs seek.  Rather than cause prejudice, this illustrates how intervention and getting information directly from Flock as a party can reduce burdens on the Court, the City, and Plaintiffs.

In addition to being more efficient, Flock will be able to assist the Court more effectively as a party to this action than it can as a third party.  If Flock is limited to responding to the parties' requests for production, then it will be unable to correct any misunderstandings or misrepresentations of its technology that are made in briefing or at trial.  By contrast, as a party Flock would be able to help ensure that the evidence presented accurately portrays how its products work.  Flock would have the chance to correct errors in Plaintiffs' presentation of the

facts in real time, including through cross-examination of any fact or expert witnesses the Plaintiffs present.  Allowing Flock to participate directly in the full adversarial process is the most effective way to ensure that this Court gets to ground truth about how Flock's technology works.

## II.    Flock Satisfies the Standards for Mandatory Intervention.

Flock satisfies the conditions for mandatory intervention.  To intervene as of right, the proposed intervenor must "(1) submit a timely motion to intervene; (2) demonstrate a 'direct and substantial interest' in the property or transaction at issue; (3) prove that the interest would be impaired if intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties." *Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, 467 F. Supp. 3d 282, 286 (D. Md. 2020) (quoting *Richman v. First Woman's Bank*, 104 F.3d 654, 659 (4th Cir. 1997)).  As explained above, Flock's motion is timely.  Flock meets the other requirements, too.

### A.    Impairment of Flock's Interests

Flock's interest in its contract with the City to provide LPRs and related services is a "direct and substantial interest" that justifies intervention.  *Matter of Richman*, 104 F.3d 654, 659 (4th Cir. 1997).  "[A]n interest sufficient to demonstrate injury-in-fact for standing purposes likely suffices to show a protectable interest under Rule 24(a)(2)." *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022).  Flock's contract with the City clearly meets that standard and, in any event, is a "a significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).  Circuit courts have granted mandatory intervention when a party's contractual rights and relationships are at stake.  *See Field v. Anadarko Petrol. Corp.*, 35 F.4th 1013, 1018-19 (5th Cir. 2022); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995), *overruled in part on other grounds by Wilderness Soc'y v.*

*U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (collecting cases); *see also Feller*, 802 F.2d at 730 (finding sufficient interest based on practical impairment of proposed intervenor's livelihood).

Plaintiffs' claims seek to impair Flock's contractual relationship with the City. Plaintiffs allege that the use of Flock cameras pursuant to that contract violates the Fourth Amendment, and they seek a permanent injunction that would limit the City's ability to use Flock services pursuant to that contract. Specifically, Plaintiffs seek an order "permanently enjoining Defendants from operating the Flock Cameras" and "using the Flock Cameras to collect images or information" or "accessing any images, records or other data generated by the Flock Cameras without first obtaining a warrant based on probable cause." *See* ECF 1 at 22-23. Flock accordingly "stand[s] to gain or lose by the direct legal operation" of the court's judgment in the litigation, *Teague*, 931 F.2d at 261, and mandatory intervention is warranted.

Plaintiffs' complaint also has put Flock's property at issue. Under Flock's agreement with the City, the Flock cameras are owned by Flock. Plaintiffs seek an order "[p]ermanently enjoining Defendants from operating the Flock Cameras." ECF 1 at 22. Plaintiffs thus seek relief directly affecting Flock's property and its use.

### B.    Inadequacy of Existing Representation

Flock also meets its "minimal" burden to show that, even though the City and Flock have some interests in common, the City "may be" an inadequate representative of Flock's interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 197 (2022) ("Where 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." (quoting 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022))); *JLS*, 321 F. App'x at 290 (inadequate

representation can be found "even when a governmental agency's interests appear aligned with those of a particular private group at a particular moment in time"). The Fourth Circuit and other courts have found that the inadequate representation requirement is met where movants have "superior knowledge" of the relevant facts as compared to an existing government defendant. *JLS*, 321 F. App'x at 291 (reversing denial of companies' motion to intervene in case against government regulator); *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (intervention warranted where movant "can provide expertise the government agencies may be lacking"); *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 383 (10th Cir. 1977) (intervention warranted where movant has "experience and knowledge in a complex area of business which the government agency does not have"); *BioNTech SE v. CureVac SE*, 2024 WL 2044828, at *5 (E.D. Va. Apr. 12, 2024) ("[I]f the applicant has superior knowledge and stronger incentives, that may also suggest inadequate representation."); *Defs. of Wildlife v. N.C. Dep't of Transp.*, 281 F.R.D. 264, 269 (E.D.N.C. 2012) (intervention warranted where movant "has a greater understanding of [the subject matter] than any existing defendants"); 25 Fed. Proc., L. Ed. § 59:327 (same). This Court should do so here as well. Again, Plaintiffs themselves have asserted that "the capabilities" of "Flock Cameras" are "a central question in the case," ECF 38 at 10 – a question that squarely implicates Flock's specialized knowledge and experience.

Further, the City's status as a government entity that is "charged with representing multiple, distinct interests" means that it cannot adequately represent Flock's interests. *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987). The Fourth Circuit has noted "the difficulty for a government entity in adequately representing the interests of a private group," *JLS*, 321 F. App'x at 292, and courts have "often concluded that

13

governmental entities do not adequately represent the interests of" private parties, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *see, e.g.*, *Trbovich*, 404 U.S. at 538-39 (holding the Secretary of Labor's "obligation to protect . . . 'vital public interest[s]'" prevented it from adequately representing an individual union member); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977) ("Given the acknowledged impact that regulation can be expected to have upon their operations, [chemical companies'] participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense."); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) (explaining how an agency's obligation to "defend the procedural regularity of its proceedings" might undermine the interests of an otherwise-aligned private party).[6]

Indeed, the City's governmental interests may "have the potential of dictating a different approach to the conduct of the litigation" than the one that Flock may "conceive to be" in its "best interests." *United Guar. Residential Ins. Co. of Iowa*, 819 F.2d at 475. Already, Flock and the City have taken divergent approaches in responding to similar discovery requests, such as Plaintiffs' requests for data. The City's resistance to producing data regarding individuals other than the Plaintiffs indicates that it may be focused on its employees' particular uses of the Flock technology rather than its capabilities. Further, the City may have views about when using a

---

[6] In some circumstances, the Fourth Circuit requires a "more exacting showing of inadequacy" when a proposed intervenor is aligned with a government agency. *See, e.g.*, *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013). But that rule applies only when a "member of the public seeks to intervene to defend a law alongside the government." *Berger*, 597 U.S. at 196; *see Stuart*, 706 F.3d at 351 (explaining that the government is likely an adequate representative when a "duly enacted statute faces a constitutional challenge" because then the need for the government to "serve in a representative capacity on behalf of its people" is "at its apex"). That is not the case here.

warrant to access Flock data would be feasible for its particular law enforcement goals that would be inconsistent with Flock's interest in maximizing the utility and value of its product, which could lead to Flock and the City taking different positions regarding the scope of the Fourth Amendment.  Because there is risk that the City's approach may not be "consistent with" Flock's "best interests," *id.*, Flock is entitled to intervene to protect those interests itself.

## III.    Flock Also Satisfies the Standard for Permissive Intervention.

Regardless of whether Flock has a right to intervene under Rule 24(a), Flock meets the requirements for permissive intervention under Rule 24(b).  A court may grant a request to intervene under Rule 24(b) when the movant files a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  In evaluating such a request, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(c).  A decision to allow permissive intervention "lies within the sound discretion of the trial court."  *Hill*, 672 F.2d at 385-86.

Flock clearly has a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Flock seeks to intervene in order to argue that the use of Flock's cameras in Norfolk does not violate the Fourth Amendment, which is the same question raised by Plaintiffs' claims.  In other words, it would raise a common defense in this action.

As explained above, Flock's timely motion will neither delay these proceedings nor prejudice the current parties.  Flock will adhere to the current case schedule and work with the other parties and the Court to handle any issues related to joint discovery and briefing and avoid any delay or burden on Plaintiffs.  *Cf.* Fed. R. Civ. P. 24, Advisory Committee Notes, 1966

Amendment (the court may impose "appropriate conditions or restrictions" of that sort in order to ensure "efficient conduct of the proceedings").

In fact, as noted, allowing Flock to participate as a party in this lawsuit will enhance the finding of facts that the Court and Plaintiffs have identified as important. Intervention should be permitted when the proposed intervenor's "input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues." 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.10 (2025); *see also T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020 ) ("[A] district court mulling permissive intervention is free to consider whether 'the applicants may be helpful in fully developing the case.'" (quoting *Daggett v. Comm'n on Gov't'l Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999))). Courts regularly grant permissive intervention under Rule 24(b) where the prospective party's participation would aid the court. *See, e.g.*, *Dinner Table Action v. Schneider*, 2025 WL 604885, at *2 (D. Me. Feb. 25, 2025) (proposed intervenor would be "helpful in fully developing the case" because it "offer[ed] a unique perspective"); *Cellco P'ship & N.Y. SMSA Ltd. P'ship v. Cnty. of Monmouth*, 2024 WL 989824, at *4-5 (D.N.J. Mar. 7, 2024) (proposed intervenor was uniquely positioned to explain environmental stakes of case); *W. Watersheds Project v. U.S. Forest Serv. Chief*, 2020 WL 13065066, at *5 (D. Wyo. July 29, 2020) (proposed intervenor would "advance[] the full and complete development of the factual and legal issues raised"); *Am. Petrol. Inst. v. Cooper*, 2009 WL 10688053, at *4 (E.D.N.C. Feb. 27, 2009) (allowing intervention "because the industry knowledge of [the proposed intervenor] and its members may shed helpful light on the legal questions at hand").

Flock's participation in this lawsuit would aid the Court by helping it develop the most accurate record possible, ensuring that the Court's ultimate Fourth Amendment ruling is

"grounded on an accurate understanding of the facts." *Leaders of a Beautiful Struggle*, 2 F.4th at 333.

## CONCLUSION

For the foregoing reasons, this Court should grant Flock's motion to intervene.

Dated: April 3, 2025                    Respectfully submitted,


                                        /s/ *Stephen E. Noona*
                                        Stephen E. Noona (VSB No. 25367)
                                        Brandan M. Goodwin (VSB No. 94766)
                                        KAUFMAN & CANOLES, P.C.
                                        150 W. Main Street, Suite 2100
                                        Norfolk, Virginia 23510-1665
                                        Telephone: (757) 624-3239
                                        Facsimile: (888) 360-9092
                                        senoona@kaufcan.com
                                        bmgoodwin@kaufcan.com

                                        E. Martin Estrada*
                                        MUNGER, TOLLES & OLSON LLP
                                        350 S. Grand Avenue, Fiftieth Floor
                                        Los Angeles, California 90071
                                        Telephone:  (213) 683-9100
                                        Martin.Estrada@mto.com

                                        Justin P. Raphael*
                                        MUNGER, TOLLES & OLSON LLP
                                        560 Mission Street, Twenty-Seventh Floor
                                        San Francisco, CA 94105
                                        Telephone:  (415) 512-4000
                                        Justin.Raphael@mto.com

                                        Jonathan I. Kravis*
                                        MUNGER, TOLLES & OLSON LLP
                                        601 Massachusetts Avenue, NW, Suite 500E
                                        Washington, D.C. 20001
                                        Telephone:  (202) 220-1100
                                        Jonathan.Kravis@mto.com

                                        * *Pro hac vice* forthcoming

                                        *Attorneys for Proposed Intervenor Flock*
                                            *Group, Inc., d/b/a Flock Safety*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

/s/ *Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
Brandan M. Goodwin (VSB No. 94766)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510-1665
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
bmgoodwin@kaufcan.com