IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| LEE SCHMIDT and CRYSTAL ARRINGTON,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF NORFOLK and MARK TALBOT, in his official capacity as the Norfolk Chief of Police,<br><br>*Defendants*. | Civil Case No. 2:24-cv-000621-MSD-LRL |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL**

Defendants fail to justify their refusal to produce the data from their Flock Cameras. Instead, they try to reframe this case as a challenge to their surveillance of two individuals among the potentially hundreds of thousands of drivers they track every month. *See* Doc. 43, PageID# 381 (estimating that Defendants generate over six billion records of people's movements over about seven months). But Defendants track Plaintiffs only by surveilling everyone. As Plaintiffs explained in their opening brief, that is why both the Supreme Court and Fourth Circuit have analyzed the ability of "drag-net type law enforcement surveillance," Doc. 29, PageID# 179, to track people generally, rather than just parties to a given case. *See Carpenter v. United States*, 585 U.S. 296 (2018); *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330 (4th Cir. 2021) (en banc).

Defendants' efforts to distinguish this binding precedent miss the mark. In *Carpenter*, the Court never even considered what the data showed about the individual defendant, but instead how location records can be used generally to retrospectively track the entire population. Likewise, the

Fourth Circuit in *Beautiful Struggle* held that the plaintiffs had standing and proved their Fourth Amendment claim without ever showing how or to what extent the aerial surveillance tracked them. Instead, it relied on the general capabilities of the technology and evidence about how it tracked *everybody*.

Defendants also have no convincing response to Plaintiffs' other relevance arguments. Plaintiffs argued in their opening brief that they need the broader dataset to show the potential for even more invasive tracking in the future. Yet, Defendants ignore this point and have thus waived any counterargument. Plaintiffs also argued that they need data about other people to show how Defendants could use their Flock data to make inferences about Plaintiffs' associations. Defendants argue only that they do not use a software feature that could help them make those inferences, but they ignore Plaintiffs' broader argument that location data inherently enable such inferences independent of any software feature, as both *Carpenter* and *Beautiful Struggle* explained.

Next, Defendants claim undue burden. But their boilerplate objections were insufficient to preserve this argument. In any event, it is a red herring. Plaintiffs are not seeking the over 6 billion pictures Defendants anticipate taking of cars before trial. Rather, they want *data* in the form of a spreadsheet or text file. Defendants fail to explain what burden (if any) they would incur if they had to simply output a spreadsheet or text file.

Finally, Defendants propose that, despite the short timeframe for discovery, the Court defer ruling and instead require Plaintiffs to ask Defendants' own contractor for the data. This argument turns the discovery rules on their head. It is akin to directing Plaintiffs to ask Microsoft to produce Defendants' emails because Microsoft has more resources and that arrangement would be more convenient for Defendants. That is not how discovery works. Defendants cannot shirk their discovery obligations by directing Plaintiffs to ask Defendants' contractor for documents,

especially since Flock's position is that it is just a "steward" of its clients' documents and that its clients have the sole obligation to preserve their data.

For these reasons and those stated in Plaintiffs' opening brief, *see* Doc. 38, the Court should grant Plaintiffs' motion to compel.

## ARGUMENT

I. **The Flock data are relevant to Plaintiffs' Fourth Amendment claims.**

In their opening brief, Plaintiffs identified three ways in which Defendants' broader dataset is relevant to their claims. *First*, the full dataset will show the overall capabilities of Defendants' surveillance—rather than how it happened to track just two people at a given time—which is the key Fourth Amendment inquiry. Doc. 38, PageID# 256–58. *Second*, it will help Plaintiffs prove their entitlement to prospective relief by modeling how the tracking will become more invasive as Defendants acquire more Flock cameras. *See id.*, PageID# 258–59. *Third*, it will enable Plaintiffs to prove that Defendants can use the data to make inferences about their associations. *Id.*, PageID# 259 & n.4. Defendants' response to the first argument misinterprets binding precedent, they ignore the second argument completely, and their response to the third is a strawman. Plaintiffs explain why below.

    a. **Defendants' arguments against relevancy misinterpret binding Supreme Court and Fourth Circuit precedent.**

Defendants erroneously argue that Flock data beyond Plaintiffs are irrelevant. Doc 43, PageID# 371. "[T]he threshold for relevance is not a high one . . . ." *Walsh v. Kynd Hearts Home Healthcare, LLC*, 2022 WL 18108388, at *1 (E.D. Va. Sept. 1, 2022) (Leonard, J.) (alterations in original) (quoting *Contract Materials Processing, Inc. v. Kataleuna Gmbh Catalysts*, 462 F. App'x 266, 273 (4th Cir. 2012)). And it depends on "the substantive law which forms the basis of [Plaintiffs'] claims and defenses." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1184 (4th

3

Cir. 1995). Here, that substantive law makes clear that what matters is what a system of surveillance is *capable* of revealing, *see* Doc. 38, PageID# 256–58, not the "specific facts of each intrusion," *United States v. Chatrie*, 107 F.4th 319, 351 (4th Cir. 2024) (Wynn, J., dissenting), *reh'g en banc granted*, 2024 WL 4648102 (4th Cir. Nov. 1, 2024). That is why, in *Leaders of a Beautiful Struggle v. Baltimore Police Department*, the Fourth Circuit considered how the surveillance technology tracked *other* people: because it showed the technology's present *and future* "capabilities" to track the individual plaintiffs. *See* 2 F.4th 330, 343 n.9 (4th Cir. 2021) (en banc). In other words, it conducted a "general inquiry, not a retroactive, *post-hoc* examination based on the *results* of the search in [a single] case." *United States v. Smith*, 110 F.4th 817, 834 n.8 (5th Cir. 2024).

Defendants instead take a cramped and unsupported view of this binding precedent. In *Carpenter v. United States*, 585 U.S. 296 (2018), Defendants say, the Court only considered how the surveillance captured the defendant's movements, Doc 43, PageID# 375. Not so. After all, the location records did not even place Carpenter at the crime scene. *Carpenter*, 585 U.S. at 312. Beyond that, the Supreme Court did not consider what the location records showed about *Carpenter's* life. *See id.* at 302–03, 310–13. Instead, it evaluated the capacity of cell site location information to track people to "potentially revealing locales," even though there was no evidence that Carpenter's records placed him at any such locale. *See id.* at 311–12. And the Supreme Court repeatedly emphasized that it was considering not the results of a single search aimed at one person, but a "newfound tracking capacity [that] runs against everyone." *Id.* at 312. Indeed, this Court has already recognized that cases alleging "drag-net type law enforcement practices" (like *Carpenter* and this one) require a "unique" approach. Doc. 29, PageID# 179. When "twenty-four hour surveillance of any citizen . . . [is] possible," courts apply "different constitutional

4

principles." *Carpenter*, 585 U.S. at 306–08 (quoting *United States v. Knotts*, 460 U.S. 276, 283–84 (1983)). Those principles examine what such dragnet practices are capable of revealing about the population under surveillance, not what they happened to reveal about any given individual at any given point in time.

Defendants likewise misread *Beautiful Struggle*. In their view, *Beautiful Struggle* only considered surveillance of other people because the technology was so imprecise. Doc. 43, PageID# 376–77. Because Defendants' surveillance is so much more precise, they say, there is no need to consider how it tracked anyone other than Plaintiffs. *Id.* (A surprising argument, given Defendants' prior efforts to downplay the invasiveness of their surveillance relative to *Beautiful Struggle*. *See* Doc. 29, PageID# 185–86.) Nowhere in its opinion, however, did the Fourth Circuit hold that the plaintiffs faced a lower burden of proof because of the aerial surveillance's limited tracking capacity. *Cf. Beautiful Struggle*, 2 F.4th at 333 ("Any Fourth Amendment analysis must be grounded on an accurate understanding of the facts." (cleaned up) (citation omitted)). So, if all that mattered was how the technology tracked the *plaintiffs*, they would have lost on standing or the merits. Instead, the Court reasoned that because the surveillance "can capture around ninety percent of Baltimore in a given moment," they had standing. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 979 F.3d 219, 225 (4th Cir. 2020), *rev'd en banc,* 2 F.4th 330.[1] And because of the current and future capabilities of the technology to "harvest[] location data from the entire population," they proved a Fourth Amendment violation. *See Beautiful Struggle*, 2 F.4th at 341–47. That police were collecting intrusive data about everyone meant that the "program [was] like a 21st century general search"—precisely what the Framers sought to outlaw by ratifying the

---

[1] The en banc court did not reverse the panel's ruling on standing.

Fourth Amendment. *See id.* at 340, 348. Thus, the outcome in *Beautiful Struggle* turned on Baltimore's overall surveillance effort, not its individual surveillance of the plaintiffs.

Next, Defendants resort to creative wordplay to create confusion around what the Court held in its motion to dismiss opinion. That opinion recognized that the Fourth Amendment violation was not the individual tracking of Plaintiffs, but instead "law enforcement secretly monitoring and cataloguing the whole of tens of thousands of individual's movements." Doc. 29, PageID# 187. Defendants, however, latch onto a minor typo and reason that because the Court used the "singular possessive," it must have meant "*[an] individual's* movements." Doc. 43, PageID# 379. But that makes no sense. Plaintiffs never alleged that Defendants are capturing "tens of thousands" of datapoints on *each individual*, nor did the Court's opinion mention the "12,898 location points" at issue in *Carpenter* (which, in any event, do not amount to ten*s* of thousands). Instead, the Court's holding came in the context of discussing how the Flock cameras enabled retrospective, population level surveillance, as in *Carpenter* and *Beautiful Struggle*. *See* Doc. 29, PageID# 186–87. And its holding is fully consistent with both of those cases.

The upshot is that what matters is what the cameras are *capable* of showing, not how they happened to track the Plaintiffs during an arbitrary timeframe.[2] Plaintiffs need the full record of surveillance to show what Defendants are capable of tracking and to demonstrate how that violates a *societal* expectation of privacy. *See Beautiful Struggle*, 2 F.4th at 340–41. After all, Defendants recorded Plaintiffs' movements "only by" recording *everyone's* movements. *Id.* at 337. So, the full record of how Defendants accomplished that is relevant to Plaintiffs' claims.

---

[2] As Plaintiffs noted, Defendants failed to implement a litigation hold for their Flock data, so, to date, they have only produced 30 days of data concerning Plaintiffs.

6

      **b.**      **Defendants abandoned any argument that their Flock data are irrelevant to Plaintiffs' claim for prospective relief.**

Defendants' Flock data are also relevant to Plaintiffs' claim for prospective relief. *See* Doc. 38, PageID# 258–59. Because Plaintiffs seek to enjoin the surveillance going forward, *see* Doc. 1, PageID# 22–23, what matters is not just how Defendants have tracked them in the past, but their potential future capacity to do so, especially if they follow through on their plan to acquire 65 more Flock cameras. *Compare id.*, PageID# 10 (¶ 40), *with* Doc. 30, PageID# 194 (¶ 18, admitting this allegation). As Plaintiffs argued, the broader dataset will enable Plaintiffs and their experts to model how the surveillance could become even more invasive. Doc. 38, PageID# 258–59. Yet, Defendants failed to respond to this argument. As a result, they have conceded that their Flock data are relevant to Plaintiffs' prospective relief claim. *See, e.g.*, *Su v. Fam. First Home Healthcare, LLC*, 2024 WL 4101798, at *1 (E.D. Va. Apr. 19, 2024) (Leonard, J.).

      **c.**      **Defendants fail to carry their burden of showing that their Flock data are irrelevant to showing Defendants' ability to discover Plaintiffs' associations.**

Defendants' response to Plaintiffs' final relevance argument is a strawman. Because they do not use Flock's "Convoy Analysis" feature, they claim, discovery about associations is irrelevant. But what enables Defendants to make inferences about associations is not any unique feature of Flock's operating system, it is the *location data* alone. *See Carpenter*, 585 U.S. at 311; *Beautiful Struggle*, 2 F.4th at 341–42. After all, "Convoy Analysis" was not an issue in *Carpenter* or *Beautiful Struggle*, yet both opinions express concern about how location data can reveal associations. *See Carpenter*, 585 U.S. at 311; *Beautiful Struggle*, 2 F.4th at 341–42. The exact source and form "of the underlying location data is entirely irrelevant" because the *location data*, not any software enhancement, enable inferences about associations. *Beautiful Struggle*, 2 F.4th at 343–44 & n.11. Plaintiffs only mentioned "Convoy Analysis" as an *example* of how Defendants can use Flock data to make inferences about associations, not the *only* example. *See* Doc. 38,

7

PageID# 259. Defendants even admit that they can make such inferences without "Convoy Analysis" by identifying cars tracked "around the same time and place as the . . . Plaintiffs' vehicles." Doc. 43, PageID# 378. That concedes that Defendants' broader dataset is relevant to show how they can discover Plaintiffs' associations.

*    *    *

Accordingly, Defendants' Flock data are relevant to Plaintiffs' Fourth Amendment claim.

## II.   Defendants failed to preserve their burden argument, and it is a red herring anyway.

Defendants argue that producing the requested Flock data would be burdensome due to the amount of responsive Flock data and the limitations of their servers. Doc 43, PageID# 380.[3] Their argument fails for two reasons.

*First*, Defendants waived it through boilerplate objections. In their responses, they objected only that each relevant request was "overly broad, unduly burdensome, and seeks information beyond the proper scope of discovery to the extent it includes Flock Data that does not reference Plaintiffs and is not relevant to the claims and defenses in this case." *See* Doc. 43-1, PageID# 396–97. Those are prototypical "boilerplate objections." *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, 2016 WL 11642670, at *2 (E.D. Va. May 31, 2016) (Leonard, J.). "[M]erely stating that a discovery request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection." *Spendlove v. RapidCourt, LLC*, 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019). Instead, "a party objecting to a discovery request as overly burdensome must submit affidavits or other evidence demonstrating the nature and extent of the asserted burden." *Id.* Even during the parties' meet and confer, Defendants did not provide this information, but simply stated that they

---

[3] Defendants ignore the rest of the proportionality factors and have therefore waived any argument as to those factors. *See Walsh*, 2022 WL 18108388, at *1 ("The party resisting discovery has the burden of establishing that the production should not be required.").

8

would withhold data based on relevance, pending the outcome of a motion to compel. *See* Doc. 38-3, PageID# 291; *see also* Doc. 43-1, PageID# 396–97. The Court can and should overrule Defendants' undue burden objection on this basis alone. *See Glory Wealth Shipping Pte. Ltd. v. Indus. Carriers, Inc.*, 2014 WL 12547261, at *5 (E.D. Va. July 3, 2014) (Leonard, J.).

*Second*, Defendants' undue burden argument fails on the merits. Defendants complain about the burden of producing images, but they fail to address the burden of producing *data*. Plaintiffs agree that producing 6.5 billion *images* would be unduly burdensome (and unhelpful for Plaintiffs), and Plaintiffs believed that they had previously clarified during the parties' meet and confers that they would prefer data files (e.g., Microsoft Excel or text files), if available. Moreover, it is now clear that Defendants can easily produce these data because they have produced six data files containing one month of their Flock data for Plaintiffs' cars. The largest totals about 143 kilobytes. So, even if Defendants must produce similar data for 500,000 cars for seven months, the total production would be about 0.5 terabytes, not 561. In other words, the burden Plaintiffs are actually asking Defendants to shoulder is, at worst, less than one-tenth of one percent (< 0.1%) of what Defendants claim.

Yet, Defendants provide no "reasons [or] evidence regarding 'the nature and extent of th[at] burden,'" *Daedalus Blue, LLC v. MicroStrategy Inc.*, 2021 WL 11709428, at *5 (E.D. Va. May 3, 2021) (citation omitted), except for a vague and dismissive footnote, *see* Doc. 43, PageID# 381 n.16. "The mere fact that responding to a discovery request will require the objecting party 'to expend considerable time, effort and expense consulting, reviewing and analyzing "huge volumes of documents and information" is an insufficient basis to object' to a relevant discovery request." *Deutsche Bank Nat'l Tr. Co. v. Fegely*, 2020 WL 201048, at *6 (E.D. Va. Jan. 13, 2020) (citation omitted). Even assuming there is a significant burden, then, Defendants have not shown that it is

9

undue—in fact, they fail to address any of the other proportionality factors. *Compare* Doc. 38, PageID# 259–61, *with* Doc. 43, PageID# 380–82. And it is far from clear that producing data to Plaintiffs would, in fact, require a time- and resource-intensive review, as opposed to simply outputting data to a text file and sending it to Plaintiffs.[4]

The Court should therefore overrule Defendants' undue burden objections.

### III. Plaintiffs are not required to seek Defendants' data from the third-party contractor Defendants pay to store their data.

Defendants alternatively ask the Court to delay ruling on Plaintiffs' Motion to Compel to pawn this discovery obligation off on Flock Safety, a third party. Doc. 43, PageID# 382. The fact that a third party *also* has documents or information in its possession, custody, or control does not excuse Defendants from their discovery obligations. *See, e.g.*, *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 410 (E.D.N.C. 2014) ("[T]he rule is that even where a requesting party already has documents in its possession, or could otherwise access those documents, the disclosing party may not withhold those documents."), *aff'd*, 784 F. App'x 118 (4th Cir. 2019). And because that third party is Defendants' "contractor," it is "appropriate to place the burden on [Defendants] to obtain those documents" and produce them to Plaintiffs. *Atlantis Consultants Ltd. Corp. v. Terradyne Armored Vehicles, Inc.*, 2015 WL 9239808, at *1 (E.D. Va. Dec. 16, 2015); *see Vaughn v. Grand Brands, LLC*, 2020 WL 5743215, at *4 (E.D. Va. Sept. 25, 2020) (Leonard, J.) (documents

---

[4] In their section on relevance, Defendants oddly suggest that Plaintiffs should have narrowed their request to cars tracked around the same times and places Plaintiffs' cars were tracked. Doc. 43, PageID# 378. But that suggestion is at odds with Defendants' burden argument because it would require Defendants to take the additional step of identifying every time and place Plaintiffs vehicles were tracked, then identifying every other car seen around the same time at the same place, and then producing that information through trial. Put simply, Defendants' proposal would just require an additional layer of work beyond outputting data files.

are within a party's control when it "has the right, authority, or practical ability to obtain the documents from a non-party" (citation omitted)).

Defendants' argument that Plaintiffs should go directly to Flock gets the burden priority backwards, for Flock has asserted a general objection to Plaintiffs' subpoena to the extent it seeks documents that could be obtained from Defendants, citing *Virginia Department of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("[U]nless the [third party] can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the [third party]."). Flock insists that it is just a "steward[]" of its clients' data and that the clients have the ultimate responsibility to preserve their data by "download[ing] it locally." *See* Ex. A at 7:8–20, 10:23–11:2, 31:23–32:1. So, Defendants' suggestion is akin to telling Plaintiffs to go retrieve Defendants' emails from Microsoft because Microsoft is a large corporation and forcing it to produce the emails would be more convenient for Defendants. *Compare Jordan*, 921 F.3d at 189 (explaining that "a party's email provider might well possess emails that would be discoverable from the party" but normally is not subject to a subpoena for the party's emails), *with* Doc. 43, PageID# 382 (suggesting that Defendants obtain data from Defendants' "vendor" because it "is a tech company with presumably more sophisticated technological and data storage resources"). Moreover, if the Court orders Defendants to produce the data, then Plaintiffs can simply withdraw their corresponding requests to Flock, thereby easing the burden on a nonparty.

Defendants' proposed alternative solution is simply not how discovery works. It cannot foist its discovery obligations onto a nonparty and force Plaintiffs to seek key evidence through third party discovery. And Defendants' suggestion that the Court "defer" ruling on Plaintiffs' motion would introduce intolerable delay, given the tight discovery deadlines, and would also

11

prejudice Plaintiffs' ability to complete expert analyses of the data. The Court should reject Defendants' proposed alternative remedy.

## CONCLUSION

For these reasons, Plaintiffs respectfully request this Court grant their motion to compel and order Defendants to produce the requested Flock data.

Dated: April 10, 2025

Respectfully submitted,

*/s/ Robert Frommer*

Jessica Bigbie
  (TX Bar No. 24134429)*

Institute for Justice
816 Congress Ave, Suite 970
Austin, TX 78701
Tel: (512) 480-5936
Fax: (512) 480-5937
jbigbie@ij.org

Robert Frommer
  (VA Bar No. 70086)
Joshua Windham
  (NC Bar No. 51071)*
Michael B. Soyfer
  (NY Bar No. 5488580; DC Bar No. 230366)*
Tahmineh Dehbozorgi
  (DC Bar No. 90030252)*

Institute for Justice
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
rfrommer@ij.org
jwindham@ij.org
msoyfer@ij.org
tdehbozorgi@ij.org

*Attorneys for Plaintiffs*

*pro hac vice