**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| LEE SCHMIDT and CRYSTAL ARRINGTON, | |
| *Plaintiffs*, | |
| v. | Civil Case No. 2:24-cv-00062-MSD-LRL |
| CITY OF NORFOLK and MARK TALBOT, in his official capacity as the Norfolk Chief of Police, | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO FLOCK SAFETY'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

Table of Authorities..................................................................................................... iii

Introduction ................................................................................................................ 1

Background ................................................................................................................. 2

Legal Standard ........................................................................................................... 5

Argument ................................................................................................................... 6

   I.   Given the scope of Flock's requested intervention, its motion is untimely. ...................... 6

       a.   Flock has no valid justification for waiting five-and-a-half months to move.............. 7

       b.   Flock's intervention would delay resolution of the case and prejudice Plaintiffs, with no offsetting benefit relative to amicus participation. .................................................11

       c.   The case is past the point where Flock should be permitted to intervene, given the scope of intervention it seeks. ........................................................................... 16

   II.  The Court should deny permissive intervention because the burdens of intervention far outweigh the benefits. ...................................................................... 19

   III. In the alternative, if the Court permits intervention, it should impose targeted conditions to minimize the burden on itself and the parties. ................................................. 19

Conclusion .............................................................................................................. 21

TABLE OF AUTHORITIES

**Page(s)**

### Cases

*AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*,
2010 WL 1529195 (D. Md. Apr. 15, 2010) ................................................................................ 14

*Alt v. EPA*,
758 F.3d 588 (4th Cir. 2014) ................................................................................... *passim*

*Atlantis Consultants Ltd. Corp. v. Terradyne Armored Vehicles, Inc.*,
2015 WL 9239808 (E.D. Va. Dec. 16, 2015) ........................................................................ 15

*Back Bay Restoration Found., Ltd. v. U.S. Army Corps of Eng'rs*,
2020 WL 1068629 (E.D. Va. Mar. 4, 2020) ................................................................. 17, 18

*Burke v. Fed. Nat'l Mortg. Ass'n*,
2016 WL 5662007 (E.D. Va. Sept. 29, 2016) ............................................... 9, 12, 17, 18

*Burke v. Fed. Nat'l Mortg. Ass'n*,
2016 WL 7451624 (E.D. Va. Dec. 6, 2016) ............................................................... 9, 16

*Castle v. Jallah*,
142 F.R.D. 618 (E.D. Va. 1992) ................................................................................... 15

*Cayuga Nation v. Zinke*,
324 F.R.D. 277 (D.D.C. 2018) ..................................................................................... 21

*City of Norfolk v. Virginia*,
2020 WL 6330050 (E.D. Va. Jan. 10, 2020) ....................................................... 16, 19

*Commonwealth v. Bellis*,
15 Va. Cir. 276 (1989) *aff'd*, 402 S.E.2d 211 (Va. 1991) ........................................... 14

*Connecticut v. U.S. Dep't of the Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018) .............................................................................. 20

*Crawford v. Newport News Indus. Corp.*,
2016 WL 11673837 (E.D. Va. Mar. 8, 2016) ............................................................. 14

*Defs. of Wildlife v. N.C. Dep't of Transp.*,
281 F.R.D. (E.D.N.C. 2012) ................................................................................... 17-18

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*,
2006 WL 8460949 (S.D.N.Y. Aug. 3, 2006) ............................................................. 14

*EEOC v. Farmer's Pride, Inc.*,
   2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) ........................................................... 10

*Farmer v. EPA*,
   2024 WL 5118193 (D.D.C. Dec. 16, 2024) ............................................................. 20

*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014) ................................................................................ 10

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989) .................................................................................. 7

*Grochocinski v. Mayer Brown Rowe & Maw, LLP*,
   719 F.3d 785 (7th Cir. 2013) ................................................................................ 10

*Higginbotham v. KCS Int'l, Inc.*,
   202 F.R.D. 444 (D. Md. 2001) ............................................................................. 14

*Hill v. W. Elec. Co.*,
   672 F.2d 381 (4th Cir. 1982) .......................................................................... 7, 9, 11

*Houey v. Carolina First Bank*,
   890 F. Supp. 2d 611 (W.D.N.C. 2012) ................................................................ 9, 17

*Hous. Gen. Ins. Co. v. Moore*,
   193 F.3d 838 (4th Cir. 1999) ................................................................................ 1, 6

*In re Cigar Ass'n of Am.*,
   812 F. App'x 128 (4th Cir. 2020) ................................................................ 7, 9, 10, 11

*Levin Richmond Terminal Corp. v. City of Richmond*,
   482 F. Supp. 3d 944 (N.D. Cal. 2020) ................................................................... 20

*Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*,
   314 F.R.D. 180 (E.D. Va. 2016) ...................................................................... 19, 20

*McHenry v. Comm'r*,
   677 F.3d 214 (4th Cir. 2012) .......................................................................... 16, 19

*NAACP v. New York*,
   413 U.S. 345 (1973) ............................................................................................ 16

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*,
   646 F.2d 117 (4th Cir. 1981) ................................................................................ 19

*Ohio Valley Env't Coal., Inc. v. McCarthy*,
    313 F.R.D. 10 (S.D. W. Va. 2015) .................................................................11, 15, 16

*Puget Soundkeeper All. v. EPA*,
    314 F.R.D. 516 (W.D. Wash. 2016) .................................................................. 13, 21

*Richman v. First Woman's Bank*,
    104 F.3d 654 (4th Cir. 1997) .................................................................................. 6

*Scott v. Bond*,
    734 F. App'x 188 (4th Cir. 2018) .................................................................6, 7, 9, 11

*SEC v. Hyatt*,
    621 F.3d 687 (7th Cir. 2010) ................................................................................. 14

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ................................................................................. 16

*Steele v. Goodman*,
    2019 WL 3366556 (E.D. Va. July 25, 2019) ..................................................... 12, 16

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    323 F.R.D. 553 (E.D. Va. 2018) ........................................................................... 19

*Strata Solar, LLC v. Fall Line Constr., LLC*,
    2023 WL 9198194 (E.D. Va. Oct. 4, 2023) ........................................................... 17

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ......................................................................... *passim*

*Students for Fair Admissions Inc. v. Univ. of N.C.*,
    319 F.R.D. 490 (M.D.N.C. 2017) ..................................................................... 20, 21

*Stupak-Thrall v. Glickman*,
    226 F.3d 467 (6th Cir. 2000) ........................................................................ 9, 13, 17

*Tafas v. Dudas*,
    530 F. Supp. 2d 786 (E.D. Va. 2008) .................................................................... 18

*United States v. Duke Energy Corp.*,
    171 F. Supp. 2d 560 (M.D.N.C. 2001) .................................................................. 20

*United States v. Taylor*,
    54 F.3d 967 (1st Cir. 1995) .................................................................................... 1

*Vaughn v. Grand Brands, LLC*,
2020 WL 5743215 (E.D. Va. Sept. 25, 2020) ......................................................... 15

*Virginia v. Westinghouse Elec. Corp.*,
542 F.2d 214 (4th Cir. 1976) ................................................................................. 12

*Waterkeeper All., Inc. v. Wheeler*,
330 F.R.D. 1 (D.D.C. 2018) .................................................................................. 20

**Rules**

Fed. R. Civ. P. 24(a) ....................................................................................................... 5

Fed. R. Civ. P. 24(b) ....................................................................................................... 5

Fed. R. Civ. P. 26 .......................................................................................................... 14

Fed. R. Civ. P. 45 .......................................................................................................... 14

Fed. R. Civ. P. 26(e)(1) ................................................................................................. 21

Fed. R. Civ. P. 33(b)(2) ................................................................................................. 21

Fed. R. Civ. P. 34(b)(2) ................................................................................................. 21

Fed. R. Civ. P. 34(b)(2)(A) ........................................................................................... 21

Fed. R. Civ. P. 36(a)(3) ................................................................................................. 21

Local Rule 26(C) ........................................................................................................... 21

**Other Authorities**

9A Arthur R. Miller, *Federal Practice and Procedure* § 2452,
Westlaw FPP (3d ed. Apr. 2025 update) ............................................................... 15

Brendan Ponton, *New Lawsuit Challenges Whether
Flock Cameras in Norfolk Are Constitutional*,
3WTKR (Oct. 22, 2024, 1:13 PM),
https://www.wtkr.com/news/in-the-community/norfolk/new-
lawsuit-challenges-whether-flock-cameras-in-norfolk-are-constitutional ............ 7, 8

Chase DiFeliciantonio, *Flock Camera Company Faces Federal Suit*,
S.F. Chron. (Oct. 21, 2024),
https://www.sfchronicle.com/bayarea/article/flock-safety-19852696.php. ............... 8

Cianna Morales, *Federal Lawsuit Argues Norfolk's Use of Flock Cameras Is Unconstitutional*, WHRO (Oct. 22, 2024, 5:15 PM), https://www.whro.org/local-government/2024-10-22/ federal-lawsuit-argues-norfolks-use-of-flock-cameras-is-unconstitutional ................................ 8

FOX 5 DC Digital Team, *Virginia City Facing Lawsuit Over License Plate Readers*, Fox 5 DC (Oct. 22, 2024, 11:09 PM), https://www.fox5dc.com/news/virginia-city-facing-lawsuit-over-license-plate-readers ............ 8

FOX6 News Milwaukee, *Wisconsin AI-Powered Flock Cameras Are Tracking Where You Drive*, YouTube (Aug. 3, 2023), https://youtu.be/YGUZ9VWZ5-U?si=oJBIKsN1vtSh_Ed2&t=30 ............................................ 3

Jason Koebler, *Lawsuit Argues Warrantless Use of Flock Surveillance Cameras Is Unconstitutional*, 404 Media (Oct. 21, 2024, 3:22 PM), https://www.404media.co/lawsuit-argues-warrantless-use-of -flock-surveillance-cameras-is-unconstitutional/ ......................................................................... 8

Jimmy LaRoue & Brett Hall, *Federal Lawsuit Filed Against Use of Flock Cameras in Norfolk*, WAVY (Oct. 24, 2024, 2:50 AM), https://www.wavy.com/news/federal-lawsuit-filed-against- use-of-flock-cameras-in-norfolk/ .................................................................................................. 8

Jon Brodkin, *Lawsuit: City Cameras Make It Impossible to Drive Anywhere Without Being Tracked*, Ars Technica (Oct. 22, 2024, 4:11 PM), https://arstechnica.com/tech-policy/2024/10/lawsuit-city-cameras-make-it- impossible-to-drive-anywhere-without-being-tracked/ ................................................................ 7

Lars Daniel, *Privacy Violated, Warrantless Surveillance Alleges Flock Safety Camera Lawsuit*, Forbes (Oct. 22, 2024, 10:20 AM), https://www.forbes.com/sites/larsdaniel/2024/10/22/warrantless-surveillance- federal-lawsuit-challenges-flock-safety-cameras/ ....................................................................... 7

Press Release, Flock Safety, *Accelerating Innovation: Flock Secures $275 Million to Advance Crime-Solving Technology* (Mar. 13, 2025), https://www.flocksafety.com/articles/flock-safety-secures-major-funding ............................... 3

Trevor Metcalfe, *Group Files Lawsuit Arguing Norfolk Traffic Cameras Are Unconstitutional*, The Virginian-Pilot (Oct. 23, 2024, 12:47 PM) https://www.pilotonline.com/2024/10/21/group-files- lawsuit-arguing-norfolk-traffic-cameras-are-unconstitutional/ ................................................. 8

## INTRODUCTION

Nearly six months after this case began, non-party Flock wants to swoop in to reinforce its customers as they defend against a Fourth Amendment claim. Flock claims a right to intervene and, in the alternative, requests permissive intervention. But these claims fail because Flock waited far too long to get off the ground. A motion to intervene must be timely. "[T]he law ministers to the vigilant, not to those who sleep upon perceptible rights." *United States v. Taylor*, 54 F.3d 967, 972 (1st Cir. 1995). Would-be intervenors who dally despite knowing that their rights are at stake therefore commit the "cardinal" sin of untimeliness. *Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999).

That is what Flock did here. Flock claims it must intervene to protect its contract and property rights. Yet, to prove that those rights are at stake, it only cites allegations in Plaintiffs' complaint—filed in October of last year. Doc. 40, PageID# 337–38. Flock claims, in the alternative, that it wants to clear up misunderstandings about its technology and that this interest only became clear recently. But Plaintiffs' complaint brims with allegations about Flock's products, and Flock even responded to a reporter's questions about these allegations immediately after the complaint was filed. Thus, all of Flock's interests in this case were clear to it in October 2024. The law required it to move to intervene *then*, not after the case had proceeded past the motion-to-dismiss stage and into discovery.

Flock's intervention would also have "profound implications" for the case schedule and for Plaintiffs' and the Court's resources. *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013). When it met and conferred with Plaintiffs, Flock breezed past these concerns. Now, Flock takes the same tack in its brief. But it is crucial to recognize that if Flock joined this action as a full party, it would be able to take and produce discovery, serve expert reports, file (and oppose) motions to compel, file its own motion for summary judgment, oppose Plaintiffs' motion for summary judgment, file (and

1

oppose) pre-trial motions, file proposed findings of fact and conclusions of law, present evidence at trial, and participate in post-trial briefing. All of this complexity would not only substantially increase Plaintiffs' and the Court's burden, but also ricochet down the case schedule, forcing Plaintiffs to seek multiple extensions of time to accommodate this (at least) doubled workload. The additional burden would ultimately yield little benefit for Plaintiffs or the Court, relative to Flock's participation as an amicus and cooperation in third-party discovery.

It is too late in the day for Flock to wreak such havoc in the case schedule. The time to become a party with full discovery rights was well before discovery started, before the parties came up with a discovery plan, before the Court entered a case schedule. Flock insists its motion is timely simply because it asked to intervene before summary judgment. But for that assertion, it cites only administrative law cases, where there is no discovery. Flock does not want to intervene simply to file a summary judgment brief; it wants to join this case as though it had been a party all along. The time to do that expired months ago.

In short, the Court should exercise its discretion to find Flock's motion untimely. A sophisticated, multi-billion-dollar company like Flock should not be able to wait on the sidelines of litigation and then swoop it whenever it likes, especially when its presence would greatly burden Plaintiffs and the Court with no offsetting benefit. For these reasons and those that follow, the Court should deny Flock's motion to intervene. And if the Court does allow Flock to intervene, it should impose targeted conditions to minimize the burden on the parties and the Court.

## BACKGROUND

Plaintiffs filed this case in October 2024. *See* Doc. 1. At a high level, they allege that Defendants' use of 172 automated license plate readers "supplied by the private technology contractor Flock Safety" violates the Fourth Amendment. *See* Doc. 29, PageID# 169–71. Flock is a private company valued at $7.5 billion, with over $300 million in annual revenue. *See* Press

Release, Flock Safety, *Accelerating Innovation: Flock Secures $275 Million to Advance Crime-Solving Technology* (Mar. 13, 2025), https://www.flocksafety.com/articles/flock-safety-secures-major-funding. Its CEO and founder's vision is "a Flock camera on every street corner." FOX6 News Milwaukee, *Wisconsin AI-Powered Flock Cameras Are Tracking Where You Drive*, YouTube (Aug. 3, 2023), https://youtu.be/YGUZ9VWZ5-U?si=oJBIKsN1vtSh_Ed2&t=30. Flock sells to a mix of government entities and private-sector customers (like shopping malls and homeowners' associations). *See* Doc. 40, PageID# 330. The Norfolk Police Department is one of Flock's thousands of customers. *See id.*

The Court denied Defendants' motion to dismiss on February 5, 2025. Doc. 29. The parties then had their Rule 26(f) conference on February 19. There, Plaintiffs learned that, though Defendants had implemented a general litigation hold, they had not preserved data from their Flock cameras. *See* Doc. 38-2, PageID# 288. Defense counsel suggested that they might have to work with their contractor, Flock, to implement a hold. That came as a surprise to Plaintiffs because Flock's corporate representatives have testified that Flock is just a "steward[]" of clients' data, "that the FLOCK customers are the ones that own that data," and that Flock has no contractual duty to preserve data for its clients, who must instead "download it locally." *See* Doc. 50-1, PageID# 436, 438–39, 440–41 (Tr. 7:8–20, 10:23–11:2, 31:23–32:1). Plaintiffs had thus understood that Defendants had both the duty and ability to preserve their data. In an abundance of caution, Plaintiffs reached out to Flock to ask Flock to suspend the automatic deletion process, if possible. *See* Doc. 41, PageID# 347 (¶ 2). According to Flock, Defendants reached out that same day to make the same request. Doc. 40, PageID# 332.

On February 24, the Court entered a scheduling order requiring Plaintiffs and Defendants to complete discovery by July 1 and July 29, respectively. Doc. 31, PageID# 205. The parties

3

exchanged initial disclosures by March 6, as ordered. Doc. 28, PageID# 167. After serving initial discovery requests on Defendants, Plaintiffs served a document subpoena on Flock on March 14, with a return date of April 14. Doc. 41-1, PageID# 352. The next business day, Flock asked to meet and confer. During that meet-and-confer, Flock stated that it would not be able to produce documents by the return date, was putting together a list of questions for Plaintiffs, and wanted to meet again in two weeks. Plaintiffs assured Flock that they would not enforce the return date, requested that Flock provide an estimated timeline for production, and agreed to Flock's request to meet again. Shortly after, Plaintiffs also agreed to extend Flock's deadline to object by one week. *See* Ex. 1 at 1 n.1.

Just before the second meet-and-confer, Flock informed Plaintiffs that it intended to move to intervene by the end of the week. *See* Ex. 2 at 2. Plaintiffs asked Flock for more information about intervention at the previously scheduled meet-and-confer. *See id.* There, Flock told Plaintiffs that it wanted to intervene to ensure that the Court and parties understood Flock's technology. Despite that limited purpose, Flock would not agree to Plaintiffs' requests for conditions on its intervention: it reserved the right to seek discovery from Plaintiffs, file its own briefs, and even present evidence at trial, claiming that the parties and the Court could somehow work out any inefficiencies later. The parties then discussed the subpoena, even though Flock still had not served written objections. During that discussion, Flock stated that it would respond as though it were a party but reserved the right to change its position if its motion to intervene were denied. *See* Ex. 3 at 1–2; Ex. 4 at 1.

Flock followed up two days later to ask if Plaintiffs had arrived at a position on Flock's intervention. *See* Ex. 2 at 1. Plaintiffs' lead counsel were both traveling and occupied that day, and unable to respond until later in the day, after Flock had already filed its motion without waiting to

hear back. *See id.* Given that Flock had already filed—and had previously refused to consider limitations on its intervention—Plaintiffs told Flock that they would oppose. *See id.*

The day after Flock filed its motion, it served responses and objections to the subpoena. *See* Ex. 1 at 27. Despite Flock's prior commitment to respond as a party, it (i) asserted general objections based on its nonparty status, *see id.* at 1; and (ii) objected to numerous requests as "cumulative or duplicative of documents reasonably recoverable in party discovery" and responded that it would produce documents "to the extent not provided in party discovery." *See id.* at 1, 5–6, 9–10, 12–15, 18, 20, 22–23; *see also* Ex. 4 at 1 (explaining that Flock's response is contingent on the Court's ruling on its motion to intervene).

Although confused about what position Flock was taking at that point, Plaintiffs, with the benefit of written objections, withdrew eight requests, accepted Flock's responses to nine, and proposed significantly narrowing another four. *See* Ex. 3 at 2–3. Plaintiffs also offered to suspend any obligation for Flock to respond to three requests seeking data, *see id.* at 2, which are the subject of a dispute between the parties, *see generally* Docs. 37–38, 43, 50, and which Flock has asserted are the most burdensome requests, *see* Doc. 40, PageID# 332. Flock rejected that offer. *See* Ex. 4 at 2; Ex. 5 at 1–2. At the same time, when the parties met and conferred a third time regarding the subpoena, Flock continued to assert that there should be no obligation to supplement the initial data production, regardless of whether Defendants produced the data, Flock produced them as a nonparty, or Flock produced them as a party. *See* Ex. 4 at 2; Ex. 5 at 1–2.

## LEGAL STANDARD

Outsiders to litigation have "two avenues for intervention." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). The first is intervention of right under Rule 24(a), and the second is permissive intervention under Rule 24(b). *See id.* Intervention of right requires the "movant [to] demonstrate (1) an interest in the subject matter of the action; (2) that the protection of this interest would be

5

impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Id.* (cleaned up). Permissive intervention, by contrast, requires the movant to identify "a common question of law or fact" and show that its "intervention will [not] unduly delay the adjudication." *Id.* at 355 (cleaned up).

Before it can head down either of those avenues, though, Flock must show that its motion is timely. *See Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). "[A] would-be intervenor bears the burden of demonstrating" each requirement to the Court's satisfaction. *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 658 (4th Cir. 1997); *cf. Back Bay Restoration Found., Ltd. v. U.S. Army Corps of Eng'rs*, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019) (evaluating whether intervenor met its burden even though no party opposed intervention).

ARGUMENT

## I.  Given the scope of Flock's requested intervention, its motion is untimely.

Flock's motion stalls at the "cardinal consideration" of timeliness. *Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); *see Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018) ("[A] movant's failure to seek intervention in a timely manner is sufficient to justify denial of such motion."). Timeliness depends on "three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591.

Each factor weighs heavily against intervention. The case has proceeded past the initial pleading stage and into discovery, pursuant to a discovery plan negotiated among the parties and a schedule ordered by the Court. Flock's intervention would result in a deluge of additional work for Plaintiffs and the Court, which would trigger inevitable delay without an offsetting benefit. And Flock has no explanation for its decision to wait despite knowing since last October that this

lawsuit could impact its financial interests and made copious allegations about its technology. Plaintiffs walk through these three factors (in reverse order) below.

### a.    Flock has no valid justification for waiting five-and-a-half months to move.

The timeliness requirement is stringent. An aspiring intervenor must move "as soon as it becomes clear" that the litigation threatens its interests. *Scott*, 734 F. App'x at 191; *see Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982). So, when a movant waits months after a lawsuit was filed to assert its interests, it must have a "plausible justification for" its delay, such as a lack of notice or substantial change of circumstances. *Scott*, 734 F. App'x at 192. When the movant knows that the litigation might impact its interests, however, the strategic decision to hold back and conserve resources will not suffice. *See Alt*, 758 F.3d at 591–92; *In re Cigar Ass'n of Am.*, 812 F. App'x 128, 138 (4th Cir. 2020). In making this determination, courts consider the would-be intervenors' sophistication. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 287 (4th Cir. 1989) (noting that intervenor was "a lawyer himself, with at least two law firms retained by him for this and related litigation").

Flock does not dispute that it was aware of this litigation by no later than October 22, 2024. Flock is a multi-billion-dollar corporation, with in-house counsel and sophisticated outside counsel. *See* Background Section above. The day after this lawsuit was filed, on October 22, 2024, Flock provided comments to a bevy of national and local media outlets.[1] Nor can Flock insist that

---

[1] *See* Lars Daniel, *Privacy Violated, Warrantless Surveillance Alleges Flock Safety Camera Lawsuit*, Forbes (Oct. 22, 2024, 10:20 AM), https://www.forbes.com/sites/larsdaniel/2024 /10/22/warrantless-surveillance-federal-lawsuit-challenges-flock-safety-cameras/; Jon Brodkin, *Lawsuit: City Cameras Make It Impossible to Drive Anywhere Without Being Tracked*, Ars Technica (Oct. 22, 2024, 4:11 PM), https://arstechnica.com/tech-policy/2024/10/lawsuit-city-cameras-make-it-impossible-to-drive-anywhere-without-being-tracked/; Brendan Ponton, *New Lawsuit Challenges Whether Flock Cameras in Norfolk Are Constitutional*, 3WTKR (Oct. 22, 2024, 1:13 PM), https://www.wtkr.com/news/in-the-community/norfolk/new-lawsuit-challenges-whether-flock-cameras-in-norfolk-are-constitutional; Jason Koebler, *Lawsuit Argues Warrantless Use of Flock Surveillance Cameras Is Unconstitutional*, 404 Media (Oct. 21, 2024, 3:22 PM),

it only recently discovered its technology would be at issue, given that Plaintiffs' complaint prompted a local reporter to ask Flock questions about how its technology works. *See* Cianna Morales, *Federal Lawsuit Argues Norfolk's Use of Flock Cameras Is Unconstitutional*, WHRO (Oct. 22, 2024, 5:15 PM), https://www.whro.org/local-government/2024-10-22/federal-lawsuit-argues-norfolks-use-of-flock-cameras-is-unconstitutional ("Flock representative Holly Beilin said" that Flock cameras "are stationary and cannot track the whole of a person's movements," data "are encrypted from the time of capture to deletion 30 days later," and "Flock also stores a perpetual log of searches of a database").

These facts show that Flock either knew or should have known from the outset that this litigation threatened the "direct and substantial interest[s]" it now claims "justif[y] intervention." *See* Doc. 40, PageID# 338–39. After all, Flock says it has a stake in this case because, by asking for an order "permanently enjoining the Defendants from operating the Flock Cameras," "Plaintiffs' claims seek to impair Flock's contractual relationship with the City" and "affect[] Flock's property." *Id.* (quoting Doc. 1, PageID# 22). But Flock gives up the game by citing only Plaintiffs' complaint to demonstrate those interests. Given that Flock commented extensively on this case the day after it was filed, Flock's own argument underscores that it knew or should have known that this case could impair those interests *more than five months before it moved*. Yet, rather

---

https://www.404media.co/lawsuit-argues-warrantless-use-of-flock-surveillance-cameras-is-unconstitutional/; FOX 5 DC Digital Team, *Virginia City Facing Lawsuit Over License Plate Readers*, Fox 5 DC (Oct. 22, 2024, 11:09 PM), https://www.fox5dc.com/news/virginia-city-facing-lawsuit-over-license-plate-readers; Trevor Metcalfe, *Group Files Lawsuit Arguing Norfolk Traffic Cameras Are Unconstitutional*, The Virginian-Pilot (Oct. 23, 2024, 12:47 PM) https://www.pilotonline.com/2024/10/21/group-files-lawsuit-arguing-norfolk-traffic-cameras-are-unconstitutional/; Jimmy LaRoue & Brett Hall, *Federal Lawsuit Filed Against Use of Flock Cameras in Norfolk*, WAVY (Oct. 24, 2024, 2:50 AM), https://www.wavy.com/news/federal-lawsuit-filed-against-use-of-flock-cameras-in-norfolk/; Chase DiFeliciantonio, *Flock Camera Company Faces Federal Suit*, S.F. Chron. (Oct. 21, 2024), https://www.sfchronicle.com/bayarea/article/flock-safety-19852696.php.

than act "as soon as it became clear," *Hill*, 672 F.2d at 386, Flock chose to let the motion to dismiss, the Rule 26(f) conference, the Rule 16(b) conference, the initial disclosures, and the start of discovery play out before doing anything. Courts have weighed similar delays against aspiring intervenors. *See, e.g.*, *In re Cigar Ass'n*, 812 F. App'x at 138 (movants "did not move to intervene for another six months" after they became aware of superseding agency guidance); *Burke v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 5662007, at *3, *5 & n.9 (E.D. Va. Sept. 29, 2016) (movant waited over two weeks after court ruled on motion to dismiss and "nearly *six* months" after case was filed);[2] *Houey v. Carolina First Bank*, 890 F. Supp. 2d 611, 621 (W.D.N.C. 2012) (movant waited more than four months after case was removed to federal court even though she "was . . . aware of her interest in this litigation from the outset"); *see also Scott*, 734 F. App'x at 193 (movant "waited six months" even though he "knew no more about the . . . case's purported threat to his rights" than he did when the parties stipulated to add certain claims relevant to his interests six months earlier); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 477–78 (6th Cir. 2000) (movant "present[ed] no persuasive excuse for having waited seven months" after filing).

Flock does not claim it intervened "as soon" as it became aware that this case could impair its contractual and property rights. Instead, Flock argues, it intervened promptly after it found out that details about its technology would be relevant to the case. But that argument fails for two reasons.

*First*, it was clear from the beginning that Flock's technology would be at issue. The *very first* paragraph of the complaint refers to Flock's "AI-assisted database," and the *second* mentions Flock explicitly. *See* Doc. 1, PageID# 2 (¶¶ 1–2). Beyond that, the complaint is replete with

---

[2] In Westlaw, this case has a red flag indicator, but only because the court later dismissed the case for lack of subject matter jurisdiction on stipulation of the parties. *See Burke v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 7451624 (E.D. Va. Dec. 6, 2016).

allegations about Flock's technology. *See id.*, PageID# 2–3, 7–10, 12–15, 17–18, 21–23 (¶¶ 4, 7, 29(a), 31–38, 41, 55, 58, 65, 67, 70, 77, 79–80, 85–86, 100; Request for Relief ¶¶ b–e). So, Flock either knew or should have known long ago "that the facts about Flock's technology would be central to and substantially benefit the Court in this case." Doc. 40, PageID# 335. And, as noted above, Flock was answering reporters' questions about how its technology worked the *day after* Plaintiffs filed this case. Given all this, Flock's suggestion that Plaintiffs' "broad discovery" requests spurred it to act is conclusory and unpersuasive, ignoring both Flock's commentary on the complaint and the complaint's detailed allegations about Flock's technology.

*Second*, the relevant trigger for timeliness is the date on which Flock knew this litigation could affect the *interest* Flock claims justifies intervention (its contract and property rights, *see* Doc. 40, PageID# 338–39), not when Flock learned that it could impact some other interest that does not justify intervention, *cf. In re Cigar Ass'n*, 812 F. App'x at 138 (party's argument that earlier intervention was futile because district court denied intervention to another applicant "fails to recognize that the Cigar Appellants were seeking to intervene for different reasons"). Caselaw demonstrates that Flock's interest in preventing misunderstandings about its technology is, at best, a reputational interest that cannot support intervention as a full party. *See, e.g.*, *Floyd v. City of New York*, 770 F.3d 1051, 1060–61 (2d Cir. 2014); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 798 & n.10 (7th Cir. 2013); *EEOC v. Farmer's Pride, Inc.*, 2014 WL 1053482, at *3 (E.D. Pa. Mar. 18, 2014) (collecting cases).

Flock is a $7.5 billion tech company with sophisticated counsel. It has been aware of this case from the beginning. And it knew—or certainly *should* have known—that this case could affect its contract and property interests five-and-and-half months before it moved. Yet, it waited until the middle of discovery. None of its justifications for that delay withstand scrutiny.

  **b.**  **Flock's intervention would delay resolution of the case and prejudice Plaintiffs, with no offsetting benefit relative to amicus participation.**

Prejudice is "the most important consideration []in passing on an application for intervention." *Hill*, 672 F.2d at 386. Intervention has "profound implications" for the course of litigation. *Stuart*, 706 F.3d at 350. "Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial." *Id.* Accordingly, the Fourth Circuit has held that district courts should weigh intervention's benefits against the "delay" and "extra effort" it inevitably requires. *See Alt*, 758 F.3d at 591; *Stuart*, 706 F.3d at 355.

This factor, too, weighs heavily against intervention because the burden of intervention would far outweigh any of the (illusory) benefits Flock promises.

Start with burden. Flock's late intervention would create additional work for both Plaintiffs and the Court. The Fourth Circuit has held "that the expenditure of 'extra effort[s]' on the part of the parties could amount to prejudice on which a district court may base its denial of a motion to intervene." *In re Cigar Ass'n*, 812 F. App'x at 138 (alteration in original). Here, those extra efforts would be substantial. Flock seeks to participate fully in discovery, file motions and other pleadings, serve expert reports, and even present evidence at trial. And it wants to take discovery of *Plaintiffs*, despite that having *nothing* to do with Flock's professed goal of ensuring the Court understands its technology. Intervention therefore would immediately double Plaintiffs' defensive discovery burden, forcing them to respond to discovery (and perhaps litigate discovery motions) from a second defendant. *Cf. Scott*, 734 F. App'x at 192; *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 30–31 (S.D. W. Va. 2015) (intervention would "complicate discovery" because proposed intervenor "would be entitled to discovery from both Plaintiffs and [defendant], requiring existing parties to duplicate their discovery efforts").

Flock's intervention would likewise (at least) double Plaintiffs' offensive discovery burden. They would have to have a new Rule 26(f) conference with Flock; wait for Flock's initial disclosures; notice Rule 30(b)(1) depositions of all the witnesses Flock disclosed (as opposed to one Rule 30(b)(6) deposition);[3] serve new written discovery; potentially file and respond to discovery motions; and receive and rebut expert reports. Then, they would have to coordinate pre-trial matters with a second defendant; engage in three-way settlement discussions; and rebut additional trial evidence. For its part, the Court would likely have to deal with "a deluge of additional briefs and pleadings." *Steele v. Goodman*, 2019 WL 3366556, at *12 (E.D. Va. July 25, 2019) (cleaned up) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 217 (4th Cir. 1976)).

All of that "extra effort" would inevitably result in at least "some delay." *See Alt*, 758 F.3d at 591. The "deluge" of additional work would create bottlenecks at virtually every point in the case schedule, as Flock takes and produces discovery, files motions, argues at hearings, serves expert reports, deposes Plaintiffs and their experts, identifies witnesses it may call at trial (who would have to be deposed), files a motion for summary judgment, files pretrial motions, files oppositions to Plaintiffs' motions, files proposed findings of fact and conclusions of law, presents witnesses and argument at trial, and files post-trial pleadings. Plaintiffs would likely need several extensions of time to deal with this (at least) doubled workload.

Yet, Flock's motion breezes past these concerns, stating without elaboration that it will "comply with the Court's current Scheduling Order" and "work with the existing parties to streamline discovery and briefing as much as possible." Doc. 40, PageID# 336. But the Court need

---

[3] *Cf. Burke*, 2016 WL 5662007, at *5 (if new defendant intervened, plaintiff would have the right to depose "any of its employees . . . disclosed as potential witnesses").

not take those boilerplate assertions at face value. *Cf. Alt*, 758 F.3d at 591 (movant's proposal to work with plaintiffs to "mitigat[e] the prejudice" was insufficient); *Stupak-Thrall*, 226 F.3d at 478 (movant's "bald statement" there would be no prejudice "ignores the fact that" movants "would certainly have sought to obtain discovery, submit expert reports, and so on").[4] And Flock's conduct up to this point belies its promises of cooperation. For instance, rather than reach out to Plaintiffs well ahead of time to engage in a good-faith dialogue on intervention to come to a compromise, Flock presented Plaintiffs with a take-it-or-leave-it offer just two days before filing. During the parties' meet-and-confer, Flock's counsel would not even consider any limitation on intervention. Instead, Flock asserted without explanation—as it does in its brief—that the parties and the Court could somehow work out all of the inefficiencies that Plaintiffs identified. Given Flock's litigation conduct to date, that type of cooperation is probably not a realistic prospect if the Court permits intervention. *Puget Soundkeeper All. v. EPA*, 314 F.R.D. 516, 521 (W.D. Wash. 2016) (finding prejudice where movant "expressed resistance in response to Plaintiffs' request that the court place conditions on intervention").

This delay and increased burden would happen without an offsetting benefit.

Consider first Flock's assertion of efficiencies in the discovery process. Flock offers up just one efficiency: it could produce data that Plaintiffs have moved to compel Defendants to produce. *See* Doc. 40, PageID# 337. At best, this may be illusory; at worst, it shows Flock and Defendants are colluding to stall discovery and support intervention. Flock is just a "steward[]" of data, and its "customers," including Defendants, "are the ones that own that data." Doc. 50-1, PageID# 438–39 (Tr. 10:25–11:2); *see* Ex. 6 at NORF001503 (§ 4.2). Flock's contract with Defendants appears

---

[4] Flock has already missed the deadlines for the Rule 26(f) conference, the Rule 16(b) conference, and the initial disclosures. *See* Doc. 28, PageID# 166–67.

to allow it to produce their data "pursuant to any judicial or governmental order" only if it gives them "reasonable prior notice of such disclosure to contest such order." Ex. 6 at NORF001503 (§ 4.1).[5] "[A]ll discovery subpoenas are contempt-sanctionable orders of the court . . . ." *SEC v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010); *accord Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001).[6] So, if Flock is willing to respond to the subpoena, then it appears that Defendants told Flock they do not object—despite refusing to produce the same data to Plaintiffs on relevance grounds and forcing Plaintiffs to move to compel. *See* Doc. 38, PageID# 254–55; *see also* Doc. 43, PageID# 367, 369, 371–80, 383.[7] Thus, Flock's production of the data is not a benefit, given that *Defendants* have an obligation to produce the data if they have no objection to Flock producing it. Their disparate positions are irreconcilable and may well be little more than an effort to manufacture a "benefit" to support intervention where none exists.[8]

---

[5] Specifically, the contract defines "Proprietary Information" to include "Agency Data." Ex. 6 at NORF001502. Defendants are "Agency." *Id.* at NORF001495. "Agency Data" are "the data, media and content provided by Agency through the Services." *Id.* Unlike with "Agency Data," Flock appears to be able to disclose "Footage" without prior notice and an opportunity to contest, but "Footage" includes only "still images," not data. *Id.* at NORF001496, -1503.

[6] This is also true under Virginia law, *Commonwealth v. Bellis*, 15 Va. Cir. 276 (1989) ("A subpoena is an order of the court."), *aff'd*, 402 S.E.2d 211 (Va. 1991), which governs the contract between Flock and Defendants, *see* Ex. 6 at NORF001510.

[7] Defendants would have had standing to file a motion for protective order or a motion to quash. *See Crawford v. Newport News Indus. Corp.,* 2016 WL 11673837, at *2 (E.D. Va. Mar. 8, 2016) ("Parties have standing to challenge subpoenas duces tecum as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45." (cleaned up)); *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 2010 WL 1529195, at *5 (D. Md. Apr. 15, 2010) (party had standing to quash subpoena to nonparty that sought production of party's own documents and information).

[8] Flock's voluntary production of data does not even moot Plaintiffs' motion to compel because Flock has insisted that it will only make one production without supplementation, *see* Ex. 4 at 2; Ex. 5 at 1–2—as is its right as a nonparty, *see, e.g.*, *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, 2006 WL 8460949, at *2 n.1 (S.D.N.Y. Aug. 3, 2006).

Moreover, despite Flock's repeated assertion that Plaintiffs' subpoena seeks "party discovery" that may not be sought from a nonparty, it is black-letter, hornbook law that "subpoenas and the party discovery rules are coextensive in scope." 9A Arthur R. Miller, *Federal Practice and Procedure* § 2452, Westlaw FPP (3d ed. Apr. 2025 update); *accord Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992).[9] And because documents in the possession of their contractor are within their "control," Defendants have an obligation to produce documents from Flock. *See, e.g.*, *Atlantis Consultants Ltd. Corp. v. Terradyne Armored Vehicles, Inc.*, 2015 WL 9239808, at *1 (E.D. Va. Dec. 16, 2015); *Vaughn v. Grand Brands, LLC*, 2020 WL 5743215, at *4 (E.D. Va. Sept. 25, 2020); *cf.* Ex. 5 at 1–2 (responding to Flock's request that Plaintiffs limit their data requests even if *Defendants* are ordered to produce the data). Given this obligation, admitting Flock as a party would only complicate the discovery process—a burden without a corresponding benefit.

Next, Flock asserts that intervention would benefit the Court and the parties because it can explain how its technology works. But Flock errs by measuring the benefit from the wrong baseline: intervention requires a "benefit attainable only by intervention rather than amicus participation." *Ohio Valley*, 313 F.R.D. at 31. As an amicus, Flock would have every chance to provide discovery to Plaintiffs as a third party and to coordinate with Defendants to make sure relevant information makes it into the record. Indeed, Flock has been able to effectively explain how its technology works as a third-party witness in several cases. *See e.g.*, Doc. 50-1, PageID# 437–38 (Tr. 9:21–11:11); Doc. 40, PageID# 337. It can do so once more in this case through a Rule 30(b)(6) deposition, including by responding to questions on re-direct or from

---

[9] In any event, if Flock had issues with the scope of the subpoena, the proper course was to serve specific, written objections that would enable Plaintiffs to make informed decisions about which requests to narrow and withdraw. But Flock did not do that until after it had moved to intervene, *see* Ex. 1 at 1 n.1, 26, so that customary discovery-negotiation process is just starting, *see generally* Exs. 3–5.

Defendants (if they cross notice the deposition). Flock can then "correct any misunderstandings or misrepresentations of its technology," *see* Doc. 40, PageID# 337, through amicus participation, which Plaintiffs do not oppose.[10] That would allow it to offer its "unique perspective," *Ohio Valley*, 313 F.R.D. at 31, without subjecting Plaintiffs and the Court to a "deluge [of] additional briefs" and discovery, *Steele*, 2019 WL 3366556, at *12 (alteration in original); *cf. McHenry v. Comm'r*, 677 F.3d 214, 227 (4th Cir. 2012) ("Numerous cases support the proposition that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention.").

At this stage of the case, Flock's intervention "would needlessly complicate litigation 'without a corresponding benefit to the existing litigants, the courts, or the process.'" *City of Norfolk v. Virginia*, 2020 WL 6330050, at *4 (E.D. Va. Jan. 10, 2020) (quoting *Stuart*, 706 F.3d at 355). That means the prejudice factor weighs heavily against it.

### c. The case is past the point where Flock should be permitted to intervene, given the scope of intervention it seeks.

There are no hard-and-fast rules to evaluate whether a lawsuit has progressed far enough to weigh against intervention. *See NAACP v. New York*, 413 U.S. 345, 365–66 (1973) (this factor "is not solely dispositive" and "[t]imeliness is to be determined from all the circumstances"). "The analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). As a result, courts in this district have ignored absolute measures and instead compared the proposed scope of intervention to the current stage of the case. *See Burke*, 2016 WL 5662007, at *3. For instance, intervening before summary judgment might be timely enough if the nonparty just wants to file briefs, but the same timing may be too late if the nonparty also wants to participate in discovery. *See id.* Along similar lines, the Court is entitled to demand

---

[10] Needless to say, Plaintiffs do not intend to make "misrepresentations" about Flock's technology. *See* Doc. 40, PageID# 337.

adherence to the scheduling order it entered and compare a movant's "timeliness against the deadlines which" the Court set. *See Stupak-Krall*, 226 F.3d at 474 n.8; *cf. Strata Solar, LLC v. Fall Line Constr., LLC*, 2023 WL 9198194, at *5 (E.D. Va. Oct. 4, 2023) ("Deadlines exist to control the flow of litigation, and a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (cleaned up)).

Under that standard, Flock's proposed intervention is too much, too late. Flock's wants full rights as a party, to take and serve discovery, file pleadings, and participate in all stages of the case through judgment. As explained above, that would necessarily require extending the case schedule to account for Plaintiffs' doubled workload, not to mention possibly lengthening the trial (initially forecast to last just three days). Yet, Flock simply sat on the sidelines for months, fully aware that this case was proceeding, as the initial pleading stage came to a close, the parties developed a discovery plan, the Court entered a schedule, and the parties started discovery consistent with the scheduling order. At this point, the stage of the case weighs heavily against intervention as a full party. *Cf. Burke*, 2016 WL 5662007, at *3–4 & n.5 (movant waited too long by filing its motion to intervene "one month *after* the Court ruled on the motion to dismiss" and in the midst of discovery, where it sought, among other things, to "submit its own dispositive motions"); *Houey*, 890 F. Supp. 2d at 622 (holding that the "stage of litigation" weighed against intervention where movant waited until dispositive motions were fully briefed).

Even so, Flock insists that "intervention before summary judgment briefing is timely." Doc. 40, PageID# 335. Neither of Flock's cited cases support that argument, though. In one, "no party ha[d] alleged that the motion [was] untimely." *Back Bay*, 2019 WL 7817079, at *1. And both cases involved only administrative law claims. *See Back Bay Restoration Found., Ltd. v. U.S. Army Corps of Eng'rs*, 2020 WL 1068629, at *1 (E.D. Va. Mar. 4, 2020); *Defs. of Wildlife v. N.C. Dep't*

*of Transp.*, 281 F.R.D. 264, 266 (E.D.N.C. 2012). "[D]iscovery is typically not permitted" in "judicial review of agency action." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008). So, in Flock's cases, the intervenors sought to intervene for the limited purpose of participating in summary judgment briefing and did so before the administrative record and cross-motions for summary judgment were due. *See Back Bay*, 2019 WL 7817079, at *1; *Defs. of Wildlife*, 281 F.R.D. at 266–67. All that those cases show is that the stage of proceedings may not weigh against intervention under those circumstances. *But cf. Alt*, 758 F.3d at 590–91 (this factor weighed against intervention in administrative law case where movant sought to intervene on side of defendant prior to deadline for defendants' summary judgment brief but after deadline for plaintiffs' brief).

In ordinary civil litigation, though, the stage of proceedings weighs against intervenors who seek full intervention after the case has already proceeded to discovery. In *Burke*, for instance, another court in this district explained that moving before summary judgment was insufficient where "the initial pleading stage had finished," the parties had moved onto discovery, and the proposed intervenor sought to do more than just file its own briefs based on an administrative record. 2016 WL 5662007, at *3. That is what Flock is trying to do here. It wants to intervene as a full party, with the right to take and produce discovery, file pleadings, and participate in trial. But this case has already proceeded beyond the initial pleadings and is in the middle of discovery, pursuant to a Court-ordered set of deadlines. Given the scope of Flock's proposed intervention, the stage of proceedings weighs heavily against it.

\*       \*       \*

Accordingly, the Court exercise its discretion to deny mandatory and permissive intervention because Flock's motion is untimely.

## II.    The Court should deny permissive intervention because the burdens of intervention far outweigh the benefits.

That Flock's motion is untimely is sufficient to deny mandatory and permissive intervention. But the prejudice Flock's intervention would cause provides an additional reason to deny permissive intervention. The Court has extremely broad discretion to weigh permissive intervention's "benefit to existing litigants, the courts, or the process" against the burdens it would impose. *Stuart*, 706 F.3d at 355; *see McHenry*, 677 F.3d at 219 ("[R]eversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent." (citation omitted)). The same prejudice and delay that render Flock's motion untimely further support denial of permissive intervention. *See Stuart*, 706 F.3d at 355; *City of Norfolk*, 2020 WL 6330050, at *4. The Court can therefore deny permissive intervention on that basis, as well.

## III.   In the alternative, if the Court permits intervention, it should impose targeted conditions to minimize the burden on itself and the parties.

The Court should not permit Flock to intervene at all. If it does, though, it should impose conditions on Flock's intervention to minimize the delay and burdens imposed on the Court and the parties. The Court has authority to condition intervention to avoid unnecessary complexity or burden. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 187 (E.D. Va. 2016) (collecting cases); *see also Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) ("Even intervention of right may properly be made conditional by the exigencies of the particular case."). The exact conditions turn on the needs and circumstances of "the particular case." *Lumber Liquidators*, 314 F.R.D. at 187.

 If the Court grants intervention, it should impose five conditions:

***First***, it should prohibit Flock from taking discovery of Plaintiffs, since discovery of Plaintiffs has nothing to do with Flock's professed interest in advancing the understanding of its technology. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018)

(prohibiting intervenors from engaging in further discovery and opposing a motion); *Lumber Liquidators*, 314 F.R.D. at 187 (allowing intervenors to take only "limited discovery to the extent it pertains to" specific claims); *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 497 (M.D.N.C. 2017) (limiting intervenors' discovery to two issues); *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001) (holding that magistrate judge "may impose limitations on [intervenors'] participation in the currently ongoing discovery and [intervenors'] ability to initiate unilateral independent discovery without leave of court").

***Second***, the Court should require Flock to confer with Defendants in advance as to pleadings, expert reports, and trial presentation to eliminate any duplication or redundancy. *See, e.g., Farmer v. EPA*, 2024 WL 5118193, at *5 (D.D.C. Dec. 16, 2024); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 10 (D.D.C. 2018). And if Flock and Defendants determine consolidation is not possible, they should be required to submit a "joint certification of compliance" that "describe[s] the need for separate" pleadings, expert reports, or trial evidence. *See Waterkeeper All.*, 330 F.R.D. at 10.

***Third***, the Court should prohibit Flock from amending its proposed answer to assert any new defenses (such as by denying allegations previously admitted) or affirmative defenses. *Cf. Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 969 (N.D. Cal. 2020) (intervenors "may not expand the scope of this action or raise new issues"); *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 306 (D.D.C. 2018) (prohibiting intervenor from briefing new issues or asserting crossclaims, counterclaims, or other collateral claims).

***Fourth***, the Court should require Flock to serve initial disclosures within three calendar days of any order granting intervention and should limit Flock to disclosing, at most, three

witnesses. This will prevent Plaintiffs from needing to take numerous additional depositions that will require a significant extension of the schedule.

*Fifth*, the Court should require Flock, within an appropriate period time after intervention is granted, to serve amended responses to Plaintiffs' subpoena that comply with Rules 26(e)(1) and 34(b)(2) (that is, respond to the subpoena as though it had been a request for production to a party and supplement responses on an ongoing basis). So as not to delay the case if it grants intervention, the Court should also order Flock to strictly comply with the timing requirements of Local Rule 26(C) and Federal Rules of Civil Procedure 33(b)(2), 34(b)(2)(A), and 36(a)(3). *Cf. Students for Fair Admissions*, 319 F.R.D. at 497 (requiring intervenors to comply with existing schedule); *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 284 (D.D.C. 2018) (same).

*     *     *

Although the Court should deny intervention, it should impose the above conditions if it allows Flock to intervene. To the extent Flock opposes these conditions, the Court should consider that when evaluating the prejudice from Flock's intervention. *Cf. Puget Soundkeeper*, 314 F.R.D. at 521 (citing nonparty's "resistance in response to Plaintiffs' request that the court place conditions on intervention" in concluding that intervention would cause prejudice, delay, and complication).

## CONCLUSION

For these reasons, the Court should deny Flock's motion to intervene and, instead, grant Flock leave to participate as an amicus. In the alternative, if the Court permits intervention, it should impose Plaintiffs' requested conditions.

Dated: April 16, 2025

Respectfully submitted,

*/s/ Robert Frommer*

Jessica Bigbie
  (TX Bar No. 24134429)*

Institute for Justice
816 Congress Ave, Suite 970
Austin, TX 78701
Tel: (512) 480-5936
Fax: (512) 480-5937
jbigbie@ij.org

Robert Frommer
  (VA Bar No. 70086)
Joshua Windham
  (NC Bar No. 51071)*
Michael B. Soyfer
  (NY Bar No. 5488580; DC Bar No. 230366)*
Tahmineh Dehbozorgi
  (DC Bar No. 90030252)*

Institute for Justice
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
rfrommer@ij.org
jwindham@ij.org
msoyfer@ij.org
tdehbozorgi@ij.org

*Attorneys for Plaintiffs*

*pro hac vice

22