**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| LEE SCHMIDT and CRYSTAL ARRINGTON, | |
| *Plaintiffs*, | |
| v. | Case No.: 2:24-cv-00621-MSD-LRL |
| CITY OF NORFOLK and MARK TALBOT, in his official capacity as the Norfolk Chief of Police, | Hon. Mark S. Davis |
| *Defendants*. | |

**<u>FLOCK SAFETY'S REPLY IN SUPPORT OF ITS</u>**
**<u>MOTION TO INTERVENE</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    Plaintiffs' Objections Are Limited to Timeliness....................................................4

II.   Flock's Motion to Intervene Was Timely.............................................................5

    A.    Flock Promptly Sought to Intervene..........................................................5

    B.    Plaintiffs Fail to Show Any Prejudice.......................................................9

    C.    Flock Will Accept Most of Plaintiffs' Conditions for Intervention......................13

III.  Participation as an Amicus Would Not Enable Flock to Protect its Interests...................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allied Title Lending, LLC v. Taylor*,
    420 F. Supp. 3d 436 (E.D. Va. 2019) ...................................................................11

*Alt v. EPA*,
    758 F.3d 588 (4th Cir. 2014) .................................................................................7

*Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*,
    467 F. Supp. 3d 282 (D. Md. 2020) .......................................................................5

*Amazon.com, Inc. v. WDC Holdings LLC*,
    2021 WL 12157960 (E.D. Va. Oct. 21, 2021) .......................................................7

*Burke v. Federal National Mortgage Ass'n of Am.*,
    2016 WL 5662007 (E.D. Va. Sept. 29, 2016) ........................................................8

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
    595 U.S. 267 (2022) ...............................................................................................6

*In re Cigar Association of Am.*,
    812 F. App'x 128 (4th Cir. 2020) ...................................................................8, 10

*Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) .............................................................................14

*Erie Ins. Prop. & Cas. Co. v. Brown*,
    2017 WL 11306121 (N.D.W. Va. Apr. 13, 2017) ..................................................8

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) .................................................................................5

*Harmony W. Ashley, LLC v. City of Charleston, S.C.*,
    2021 WL 805535 (D.S.C. Mar. 3, 2021) ...............................................................8

*Harris-Reese v. United States*,
    2021 WL 3887707 (D. Md. Aug. 31, 2021) ...........................................................8

*Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*,
    117 F. Supp. 2d 508 (E.D. Va. 2000) .................................................................2, 9

*Hill v. W. Elec. Co.*,
    672 F.2d 381 (4th Cir. 1982) .................................................................................9

*Houey v. Carolina First Bank,*
    890 F. Supp. 2d 611 (W.D.N.C. 2012) ........................................................9

*JLS, Inc. v. Pub. Serv. Comm'n of W. VA.,*
    321 F. App'x 286 (4th Cir. 2009) ..........................................................2, 5

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't,*
    2 F.4th 330 (4th Cir. 2021) (en banc) ......................................................4

*Middleton v. Andino,*
    481 F. Supp. 3d 563 (D.S.C. 2020)..........................................................7

*Midgett, Tr. of Hardcastle Charitable Remainder Annuity Tr. U/A Aug. 6, 2007 v.
    Hardcastle,*
    2018 WL 4365580 (E.D. Va. July 19, 2018) ............................................7

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ...............................................................14

*United States ex rel. Baltimore Steel Erectors, LLC v. Hanover Ins. Co.,*
    2019 WL 6895542 (D. Md. Dec. 18, 2019)..............................................7

*Ohio Valley Env't Coal., Inc. v. McCarthy,*
    313 F.R.D. 10 (S.D.W. Va. 2015)...........................................................11

*Savvy Rest, Inc. v. Sleeping Organic, LLC,*
    2019 WL 5865936 (W.D. Va. Nov. 8, 2019) ............................................8

*Scott v. Bond,*
    734 F. App'x 188 (4th Cir. 2018) ................................................3, 6, 8, 10

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) ...................................................................9

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
    323 F.R.D. 553 (E.D. Va. 2018) .............................................................11

*Stuart v. Huff,*
    706 F.3d 345 (4th Cir. 2013) .................................................................10

*Students for Fair Admissions Inc. v. Univ. of N.C.,*
    319 F.R.D. 490 (M.D.N.C. 2017) ...................................................3, 9, 11

*Stupak-Thrall v. Glickman,*
    226 F.3d 467 (6th Cir. 2000) ................................................................8, 9

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.,*
    2016 WL 1071016 (E.D. Va. Mar. 17, 2016)..........................................12

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) ...............................................................................5

*Va. Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ...............................................................................12

**RULES - OTHER**

Fed. R. Civ. P. 24(b) ...............................................................................................4

Plaintiffs seek to exclude the party indisputably best placed to provide the Court with critical facts about whether it is true, as Plaintiffs allege, that Flock cameras have "captured the whole of" Plaintiffs' "public movements."  ECF 1 ¶ 90.  Plaintiffs admit that their "complaint brims with allegations about Flock's products."  ECF 51 at 1.  And the Court has recognized that this case turns on "unresolved issues" about how Flock's technology works in Norfolk.  ECF 29 at 20.  Plaintiffs do not and cannot dispute that having Flock in the courtroom as a party to explain what its cameras can and cannot do will aid the Court in resolving this matter fairly and accurately.

After all, shortly before Flock filed this motion, Plaintiffs sent a preservation request and then sought extensive information from Flock in a subpoena with 28 broad categories of documents.  And before Flock filed this motion, Plaintiffs described "the capabilities" of "Flock Cameras" as "a central question in the case," and asserted that the cameras' "capability" is "what ultimately matters" in this case.  ECF 38 at 2, 10.  But now that Flock wants to become a party so it can explain that Plaintiffs' allegations about Flock cameras are not true, Plaintiffs have reversed course—withdrawing many of their requests for information from Flock and opposing Flock's intervention as a party.[1]

Plaintiffs should not be permitted to exclude Flock from a lawsuit that directly targets its products and contractual interests.  Plaintiffs do not dispute that their claims threaten to impair Flock's interests in its contract with the City and its property in the cameras.  Nor do Plaintiffs

---

[1]  Initially, Plaintiffs twice refused to narrow their non-party document requests.  But, shortly after Flock filed its Motion to Intervene, Plaintiffs withdrew or "suspend[ed]" ten of their 28 requests, narrowed four more, and actively fought Flock's efforts to produce the very same data they had sought from the City.  ECF 51-3 at 2-3; *see* ECF 51-4 (Apr. 11, 2025 Letter) at 2.  Plaintiffs appear to have recognized that continuing to treat Flock as a party for purposes of discovery would undermine their opposition to Flock's motion to intervene.

dispute that the City cannot adequately protect Flock's interests given Flock's "superior knowledge" of the facts. *JLS, Inc. v. Pub. Serv. Comm'n of W. VA.*, 321 F. App'x 286, 291-92 (4th Cir. 2009). Plaintiffs' only argument is that it is simply too late for Flock to become a party and present the true facts. Accordingly, the only issue on this motion is whether Flock's motion was timely. It was.

Flock moved to intervene shortly after this Court denied the City's motion to dismiss and identified "many unresolved issues of material fact directly relevant to the determination of whether Defendants' use of Flock cameras violates Plaintiffs' Fourth Amendment rights." ECF 29 at 20. Flock filed its motion just weeks after Plaintiffs served Flock with an expansive subpoena seeking data and many other categories of information. At that time, when Flock sought to intervene, the deadline for Plaintiffs to complete fact discovery and disclose experts was more than three months away, the dispositive motion deadline was more than four months away, and trial was more than six months away. Under these circumstances, Flock's motion is clearly timely and Plaintiffs can cite no case finding otherwise.

Plaintiffs also fail to show any prejudice, which they agree is the "most important" factor in timeliness. *Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508, 514 (E.D. Va. 2000). Plaintiffs do not explain what they would have done differently if Flock had intervened at the pleading stage. The answer is nothing. Plaintiffs served Flock with the equivalent of party discovery very soon after the court denied the City's motion to dismiss. Plaintiffs would have done the same if Flock was a party to the case from the beginning.

Plaintiffs' arguments why Flock's motion was untimely misstate the law and ignore the facts. *First*, it is not the law that Flock had to intervene as soon as the complaint was filed because an "aspiring intervenor must move 'as soon as it becomes clear' that the litigation

threatens its interests." ECF No. 51 at 7. Plaintiffs have omitted the rest of the Fourth Circuit's statement which says that a "proposed intervenor should move to intervene as soon as it becomes clear **that his interests would no longer be protected**" by an existing party. *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018) (emphasis added). Flock's "superior knowledge" of the facts became directly relevant after this Court's order on the motion to dismiss identified numerous unresolved issues that Flock was uniquely well-positioned to address. Flock filed the instant motion shortly after that decision.

*Second*, Plaintiffs incorrectly argue that requests to intervene are untimely once discovery has begun. In fact, courts routinely permit intervention after discovery has opened. Plaintiffs' cited cases involved motions to intervene filed after discovery deadlines had expired. In contrast, here no discovery deadlines in this case have passed. In fact, discovery has just begun.

*Third*, Plaintiffs incorrectly complain that permitting Flock to intervene will burden them going forward. That is not the test for prejudice, which is measured "by the delay in seeking intervention, not the inconvenience to the existing parties." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 495 (M.D.N.C. 2017). Again, Plaintiffs cannot identify anything they would have done differently had Flock intervened earlier. Regardless, Plaintiffs have no claim of increased burden where Flock has agreed to abide by the existing schedule and coordinate discovery with the City. Plaintiffs do not substantiate their assertion that *they* would need extensions of the case schedule if Flock were permitted to intervene.

Nevertheless, to put to rest any potential for increased burden on Plaintiffs or disruption to the Court, Flock is willing to agree to most of Plaintiffs' "conditions" for intervention. Flock will confer with the City on pleadings, expert reports, and trial presentation "to eliminate any duplication or redundancy." ECF 51 at 20. Flock will serve initial disclosures within three days

of any order granting intervention and disclose no more than five Flock witnesses. Flock will serve amended responses to Plaintiffs' document requests. Flock cannot agree to forgo entirely its right as a party to take discovery from Plaintiffs, but will agree to coordinate defensive discovery, including as appropriate joint requests, negotiations, and briefing with the City to avert the "deluge of additional work" that Plaintiffs fear. *Id.* at 6.

*Fourth*, Plaintiffs are wrong that Flock's intervention would confer no benefit because Flock can produce third-party discovery in response to a subpoena and file an amicus brief. Discovery responses and an amicus brief are not sufficient because they do not allow Flock to make an affirmative evidentiary presentation to correct Plaintiffs' inaccurate characterization of its product and to answer the questions posed by the Court—for example, through the disclosure of its own expert, the filing of its own motions, and the presentation of evidence at trial.

The Fourth Circuit has instructed: "Any Fourth Amendment analysis . . . must be grounded on an accurate understanding of the facts." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 333 (4th Cir. 2021) (en banc). This case is no exception. Flock is the party that best understands the facts, and its intervention would aid the Court in developing a fair and accurate record in evaluating the constitutional issue before it. The Court should reject Plaintiffs' efforts to exclude Flock and grant Flock's motion to intervene.

## I.    Plaintiffs' Objections Are Limited to Timeliness.

Plaintiffs concede that Flock has established a right to intervene based on its substantial interests in this case that are not adequately represented by any existing party. The only disputed issue concerning Flock's right to intervene is timeliness.

To intervene as of right under Federal Rule of Civil Procedure 24(b), the proposed intervenor must "(1) submit a timely motion to intervene; (2) demonstrate a direct and substantial interest in the property or transaction at issue; (3) prove that the interest would be impaired if

intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties." *Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, 467 F. Supp. 3d 282, 286 (D. Md. 2020) (quotation marks omitted).  When applying this test, the Fourth Circuit has advised that "liberal intervention is desirable to dispose of as much of the controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

Plaintiffs do not dispute that Flock satisfies the latter three criteria.  They do not dispute that Plaintiffs' claims would impair Flock's contract with the City and the use of cameras that are Flock's property.  Nor do they dispute that the City, as a governmental entity, cannot adequately represent Flock's interests.  Indeed, Plaintiffs do not even address, let alone try to distinguish, *JLS, Inc.*, where the Fourth Circuit reversed denial of intervention by companies with "superior knowledge" about the facts compared to the existing government defendants.  321 F. App'x at 291.  Nor do Plaintiffs address the other cases that Flock cited where courts recognized that government defendants cannot adequately represent the interests of private parties that "can provide expertise the government agencies may be lacking." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002); *see generally* ECF 40 at 13-14.

Plaintiffs only dispute is on timeliness, but on that score they are wrong.

## II.    Flock's Motion to Intervene Was Timely.

### A.    Flock Promptly Sought to Intervene.

Plaintiffs' arguments against timeliness misstate the legal standard, rely on cases that had progressed far beyond this one, and ignore the timeline of events.

*First*, Plaintiffs misstate the law.  Citing *Scott*, 734 F. App'x at 191, Plaintiffs assert that an "aspiring intervenor must move 'as soon as it becomes clear' that the litigation threatens its interests," which they say should have been apparent to Flock at the time Plaintiffs filed their

Complaint on October 22, 2024.  ECF No. 51 at 7.  But Plaintiffs omit key language from the sentence that they quote.  In *Scott*, the Fourth Circuit stated that a "proposed intervenor should move to intervene as soon as it becomes clear **that his interests would no longer be protected**" by an existing party.  734 F. App'x at 191 (emphasis added).

The Supreme Court recently corrected the exact legal error that Plaintiffs advance here in *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022).  There, the Supreme Court held that the Sixth Circuit's "assessment of timeliness was mistaken" when it "found that the [Kentucky] attorney general's motion was not timely because it came after years of litigation in the District Court and after the panel had issued its decision."  *Id.* at 279.  What mattered for timeliness was instead that the "attorney general sought to intervene as soon as it became clear that the Commonwealth's *interests would no longer be protected* by the parties in the case."  *Id.* at 279-80 (quotation marks omitted and emphasis added).

Thus, the starting point for measuring timeliness is not when it became clear that the case could impair Flock's interests, but when it became clear that the City could not adequately protect Flock's interests.

That point was no earlier than February 5, 2025, when this Court denied the motion to dismiss in an order identifying numerous "unresolved issues of material fact" about Flock's technology that are "*directly relevant* to the determination of whether Defendants' use of Flock cameras violates Plaintiffs' Fourth Amendment rights."  ECF 29 at 20 (emphasis added); *see also id.* at 20 & n.10.  That order made clear that the Court wanted to develop an accurate record through discovery:  The Court posed a number of specific questions about Flock's technology that needed to be resolved, chief among them being its "ability to effectively 'track' [Plaintiff's]

vehicles as they move throughout Norfolk." *Id.* at 20 n.10. In response to that decision, Flock filed its motion less than two months later.

At the time Flock sought to intervene, discovery had barely commenced. The parties exchanged initial disclosures just weeks before Flock filed its motion, *see* ECF 28 ¶ 2(d), and Plaintiffs served requests for production on Defendants and a subpoena on Flock around the same time, *see* ECF 43 at 2 (RFPs served on Defendants on February 25); ECF 40 at 5 (subpoena served on Flock on March 14). Discovery is still in the early stages. Plaintiffs do not claim to have received any written discovery or that any party has scheduled a deposition in this case. Dispositive motions are not due for four months, and the trial date is nearly half a year away. ECF 31 at 2, 4. In short, Flock is not "derailing a lawsuit within sight of the terminal." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014) (citation omitted). The case has hardly left the station.

*Second*, Plaintiffs incorrectly assert that it is untimely to intervene after discovery has begun. In fact, courts in the Fourth Circuit, including the Eastern District of Virginia, routinely permit intervention after discovery has opened. *See, e.g.*, *Midgett, Tr. of Hardcastle Charitable Remainder Annuity Tr. U/A Aug. 6, 2007 v. Hardcastle*, 2018 WL 4365580, at *5 (E.D. Va. July 19, 2018) (intervention timely where "underlying suit has not progressed past the discovery stage"); *Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 12157960, at *1 (E.D. Va. Oct. 21, 2021) (timely where party "moved to intervene in this action during the discovery phase of the litigation"); *Middleton v. Andino*, 481 F. Supp. 3d 563, 568 (D.S.C. 2020) (timely even though "[d]iscovery ha[d] begun"); *United States ex rel. Baltimore Steel Erectors, LLC v. Hanover Ins. Co.*, 2019 WL 6895542, at *3 (D. Md. Dec. 18, 2019) (timely because motion "comes at an early stage" when "discovery is still ongoing"); *Harmony W. Ashley, LLC v. City of Charleston, S.C.*, 2021 WL 805535, at *2 (D.S.C. Mar. 3, 2021) (timely where "dates for discovery…and

dispositive motions…have not yet passed"); *Savvy Rest, Inc. v. Sleeping Organic, LLC*, 2019 WL 5865936, at *2 (W.D. Va. Nov. 8, 2019) (timely when "the parties are still in the early stages of discovery"); *Harris-Reese v. United States*, 2021 WL 3887707, at *3 (D. Md. Aug. 31, 2021) (timely even though motion was "filed only three months before the scheduled end of discovery" when movant "expressly stated that it has no intention of interfering with the existing discovery schedule"); *Erie Ins. Prop. & Cas. Co. v. Brown*, 2017 WL 11306121, at *2 (N.D.W. Va. Apr. 13, 2017) ("United timely moved to intervene during the early stages of the case, five months after Erie filed suit and while discovery is still ongoing.").

In opposing intervention, Plaintiffs are forced to rely on cases where courts denied motions filed at far more advanced stages. In *In re Cigar Association of America*, the movant sought to intervene 18 months after the complaint was filed and after the district court had already granted summary judgment and entered a remedial order. 812 F. App'x 128, 137 (4th Cir. 2020). In short, the case had "progressed literally to its end." *Id.* In *Burke v. Federal National Mortgage Association of America*, the "deadline to serve written discovery [had] expired one week after the movant filed its Motion to Intervene"; "discovery [was] slated to close in less than two weeks"; "[e]xpert deadlines ha[d] come and gone"; and "perhaps most significantly," the trial was "merely two months away." 2016 WL 5662007, at *3 (E.D. Va. Sept. 29, 2016). In *Scott v. Bond*, the plaintiff in parallel litigation sought to intervene "after Cricket and Bond filed their letter notifying the court that they had reached a proposed settlement." 734 F. App'x at 191. And in *Stupak-Thrall v. Glickman*, discovery "had been closed for over ten weeks; all witnesses, including expert witnesses, had been identified over five weeks earlier; the plaintiffs had already produced an expert report and survey; and the dispositive

motion deadline, originally set 17 weeks after the close of discovery, was only seven weeks away."  226 F.3d 467, 474 (6th Cir. 2000).[2]

Here, by contrast, Flock filed its motion shortly after discovery opened, more than three months before the deadline for Plaintiffs to complete discovery and more than four months before the deadline for dispositive motions.  Intervention at this stage is timely.

### B.    Plaintiffs Fail to Show Any Prejudice.

As Plaintiffs concede, *see* ECF 54 at 11, the "most important" consideration when assessing timeliness "is the prejudice caused to the other parties by the delay," *Hill Phoenix*, 117 F. Supp. 3d at 514.  Plaintiffs' attempts to show prejudice again misstate the law and ignore the undisputed facts.

Plaintiffs argue that they will suffer prejudice because adding Flock as a party will supposedly require "extra effort" and a "doubled workload."  ECF 51 at 12.  Not only is that incorrect—especially given that Flock will agree to Plaintiffs' proposed conditions for intervention to reduce any additional burden—but it misstates the law.  "Prejudice related to the issue of timeliness is to 'be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation.'"  *Students for Fair Admissions*, 319 F.R.D. at 495 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994)); *see also Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982) (asking "whether *the delay* has prejudiced the other parties" and finding defendant "clearly could claim no prejudice from the *delay itself*" (emphasis added)).  Thus, in order to show prejudice, Plaintiffs must show that they would have done something differently if Flock had intervened earlier, not merely that

---

[2]  In *Houey v. Carolina First Bank*, the court found intervention was untimely because the movants had "failed to avail themselves of the appropriate procedures" and, as a result, there was already a final order of foreclosure entered in state court.  890 F. Supp. 2d 611, 622 (W.D.N.C. 2012).

there may be some added work.  For example, the Fourth Circuit found prejudice in *Scott v. Bond* because intervention would undermine a settlement agreement, *see* 734 F. App'x at 191, and in *In re Cigar Association of America* because intervention would require re-opening completed briefing, *see* 812 F. App'x at 137.

Plaintiffs have not even tried to make a showing of similar prejudice.  They do not identify anything that they would have done differently had Flock intervened earlier.  Plaintiffs served a subpoena requesting documents on Flock on March 14, just over a month after the motion to dismiss was denied and just over two weeks after their initial requests for production to Defendants.  ECF 51 at 4.  Thus, even if Flock had intervened at the pleading stage, Plaintiffs hardly could have served Flock with document discovery sooner.  Given the breadth of Plaintiffs' document requests to Flock, Plaintiffs do not and cannot argue that they would have served Flock with broader discovery if Flock were a party.  Plaintiffs effectively served Flock with party discovery even before it was a party, so they cannot show any prejudice from Flock becoming a party now.  And Flock has been working diligently to produce extensive discovery.

Plaintiffs cannot explain how they would have benefitted if Flock had intervened at the pleading stage.  The most that Plaintiffs would have received would have been another brief in support of dismissal.  Plaintiffs do not complain about not having received one.

Plaintiffs' failure to identify any lost opportunity from the timing of Flock's motion should be dispositive.  Regardless, Plaintiffs also fail to show that Flock's intervention will cause them any prejudice going forward.  Plaintiffs' main argument is that permitting intervention now will supposedly have "'profound implications' for the case schedule."  ECF 51 at 1 (quoting *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013)).  But "[a]ny potential prejudice is minimized" by Flock's agreement to "follow the existing pretrial and trial schedule."  *Steves & Sons, Inc. v.*

*JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018)).  Plaintiffs complain that *they* will need extensions of the case schedule if Flock is permitted to intervene, but they do not explain why. Again, Plaintiffs have not lost any meaningful time because they served Flock with the equivalent of party discovery shortly after the pleading stage, and Flock is prepared to begin producing responsive documents as soon as its consent motion to modify the protective order is granted.  Even if Plaintiffs can later show some need to push back the case schedule, that would not show prejudice.  *See Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 455 (E.D. Va. 2019) ("[B]ecause adding parties to a case almost always results in some delay, delay alone does not mean that intervention should be denied." (alterations and quotation marks omitted)).

Plaintiffs have not substantiated their assertion that adding Flock as a party will drain "Plaintiffs' and the Court's resources."  ECF 51 at 1.  Plaintiffs argue that "if Flock joined this action as a full party, it would be able to take and produce discovery, serve expert reports, file (and oppose) motions to compel, file its own motion for summary judgment, oppose Plaintiffs' motion for summary judgment, file (and oppose) pre-trial motions, file proposed findings of fact and conclusions of law, present evidence at trial, and participate in post-trial briefing."  *Id.* at 1-2; *see also id.* at 12.  But all of this would be true no matter when Flock intervened, so it cannot establish prejudice from the timing of Flock's intervention.  *See Students for Fair Admissions*, 319 F.R.D. at 495 (noting prejudice is "measured by the delay in seeking intervention, not the inconvenience to the existing parties").  Plaintiffs cite *Ohio Valley Environmental Coalition, Inc. v. McCarthy*, 313 F.R.D. 10 (S.D.W. Va. 2015), but in that case, the court denied permissive intervention by a trade association because it risked a "flood" of interventions by permit holding members.  *Id.* at 30-31.  Plaintiffs cannot identify any similar risk here.

Regardless, Flock's intervention will not increase the burden on Plaintiffs because Flock has agreed to coordinate with the City to serve, negotiate, and take joint discovery and file joint briefs. Plaintiffs' assertion that Flock's "conduct up to this point belies its promises of cooperation," ECF 51 at 13, is entirely unfounded. Flock asked Plaintiffs for their position regarding intervention in advance of filing its motion and also met-and-conferred with Plaintiffs to try to resolve the issue before Plaintiffs had to file their opposition. Plaintiffs do not say what more Flock could have done or how they were prejudiced by the meet-and-confer process.

Finally, Plaintiffs' suggestion that Flock has somehow gone back on its word to "respond as a party" to their third-party subpoena request is similarly groundless. ECF 51 at 5. Flock's position has been clear and consistent: It will respond to Plaintiffs' subpoena as a party as soon as it is granted party status. *See* ECF 51-4 (Apr. 11, 2025 Letter) at 1-2. Because Flock is not yet a party, it reserved its rights to object to discovery that imposes a burden well beyond what is warranted on a non-party in the event that its motion were denied. *Cf. Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("When discovery is sought from nonparties, however, its scope must be limited even more."); *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016) (applying stricter standards to nonparty subpoena). Despite this reservation, however, Flock has already begun the process of collecting and producing extensive categories of documents—including more data than the City has agreed to provide as a party. It is *Plaintiffs* who have changed their position. They served Flock with extremely broad discovery, showing that they believed Flock had information important to developing the facts. But once Flock sought to become a party with the ability to present the facts to the Court directly, Plaintiffs sought to walk back their requests.

In short, because Flock moved to intervene promptly at the beginning of discovery, Plaintiffs cannot identify anything they would have done differently if Flock had intervened even earlier. Plaintiffs' complaints about burden are not only insufficient as a matter of law, but belied as a factual matter by Flock's agreement to abide by the existing case schedule and fully coordinate with the City. Accordingly, Flock's motion was timely and satisfies all other requirements for intervention.

### C.    Flock Will Accept Most of Plaintiffs' Conditions for Intervention.

To further demonstrate that Flock's intervention will not prejudice Plaintiffs or burden the Court in any way, Flock is willing to accept most of Plaintiffs' conditions to "minimize the delay and burdens" to the Court and the existing parties. In fact, Flock already agreed to many of these conditions.

*First*, Plaintiffs ask the Court to "require Flock to confer with Defendants in advance as to pleadings, expert reports, and trial presentation to eliminate any duplication or redundancy." ECF 51 at 20. Flock will do so, as it represented in its motion. *See* ECF 40 at 8-9.

*Second*, Plaintiffs ask the Court to "prohibit Flock from amending its proposed answer to assert any new defenses." ECF 51 at 20. Flock cannot forgo the opportunity to amend its answer in the event that discovery reveals new defenses, but it will seek to do so only if it can show good cause, including good cause for any delay.

*Third*, Plaintiffs ask the Court to "require Flock to serve initial disclosures within three calendar days of any order granting intervention and . . . limit Flock to disclosing, at most, three witnesses." *Id.* at 20-21. Flock will serve initial disclosures within three calendar days of its intervention being granted and will disclose no more than five Flock witnesses.

13

*Fourth*, Plaintiffs ask the Court to "require Flock, within an appropriate period of time after intervention is granted, to serve amended responses to Plaintiffs' subpoena that comply with Rules 26(e)(1) and 34(b)(2)."  ECF 51 at 21.  Flock will do so.

*Finally*, while Flock will work to minimize any burden on Plaintiffs, it cannot agree to an order that would completely "prohibit Flock from taking discovery of Plaintiffs." *Id.* at 19.  Such an order would unfairly prejudice Flock, which may need to ask Plaintiffs for information necessary to rebut Plaintiffs' claims and explain the facts to the Court.  However, as explained above, Flock will agree to take joint discovery with the City to eliminate any increased burden on Plaintiffs.

## III.    Participation as an Amicus Would Not Enable Flock to Protect its Interests

Plaintiffs' assertion that Flock can protect its interests simply by responding to discovery and filing an amicus brief is incorrect.  ECF 51 at 15-16.  "[A] brief as *amicus curiae* is no substitute for the right to intervene as a party in the action." *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).  Indeed, courts have held that amicus status is "not an adequate substitute for participation as a party" because an amicus "may not tender any evidence [or] make any motions." *Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967) (citations omitted)).

Here, Flock is the entity best positioned to make an affirmative presentation that corrects Plaintiffs' mischaracterizations of its products and directly respond to the Court's questions—by proffering its own experts, filing its own motions, serving its own discovery, and presenting evidence at trial.  Indeed, plaintiffs do not dispute that the City as a governmental entity cannot adequately represent Flock's interests in this litigation.  And because Flock has committed to make this affirmative presentation jointly with the City and on the existing case schedule, the

14

benefits of that presentation strongly outweigh any costs.  In order to develop a full, fair, and accurate record in this matter, the Court should grant Flock's motion to intervene.

## CONCLUSION

For the foregoing reasons, and those set forth in Flock's opening brief, this Court should grant Flock's motion to intervene.

Dated: April 22, 2025          Respectfully submitted,

/s/ *Stephen E. Noona*

Stephen E. Noona (VSB No. 25367)
Brandan M. Goodwin (VSB No. 94766)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510-1665
Tel: (757) 624-3239
Fax: (888) 360-9092
senoona@kaufcan.com
bmgoodwin@kaufcan.com

E. Martin Estrada*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
(213) 683-9100
Martin.Estrada@mto.com

Justin P. Raphael*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA 94105
(415) 512-4000
Justin.Raphael@mto.com

Jonathan I. Kravis*
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Jonathan.Kravis@mto.com

* *Pro hac vice*

*Attorneys for Proposed Intervenor Flock*
    *Group, Inc., d/b/a Flock Safety*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

/s/ *Stephen E. Noona*

Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510-1665
Tel: (757) 624-3239
Fax: (888) 360-9092
senoona@kaufcan.com

17