UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEE    SCHMIDT    and    CRYSTAL
ARRINGTON,

                 Plaintiffs,

v.                                              Civil No. 2:24cv621

CITY OF NORFOLK, the NORFOLK
POLICE DEPARTMENT, and MARK
TALBOT,    in    his    official
capacity as the Norfolk Chief
of Police,

                 Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion to intervene filed by Flock Group, Inc., doing business as Flock Safety ("Flock"). ECF No. 39. Because the facts and legal questions are adequately presented in the motions and subsequent briefs, and oral argument would not aid in the decisional process, this Court finds that a hearing is unnecessary.[1] For the reasons explained herein, the Court **DENIES** the motion to intervene.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Flock describes itself as a "technology company that creates products to help . . . law enforcement combat crime and keep their

---

[1] Flock filed a Notice of Waiver of Oral Argument. ECF No. 55.

communities safe." ECF No. 40, at 2.[2] One of these products, a license plate recognition ("LPR") camera system, has been implemented in over 5,000 communities in 49 states, including Norfolk, Virginia. Id.

On October 21, 2024, Virginia residents Lee Schmidt and Crystal Arrington ("Plaintiffs") filed a complaint against the City of Norfolk, the Norfolk Police Department, and Mark Talbot, in his official capacity as Norfolk Chief of Police (collectively "Defendants") relating to their use of the Flock LPR camera system.[3] ECF No. 1. Plaintiffs' complaint alleges that Defendants' warrantless use of Flock LPR cameras effectively tracks the whole of their movements around the City of Norfolk and is therefore a violation of their Fourth Amendment rights. Id. Defendants jointly moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18. The undersigned denied Defendants' motion to dismiss on both grounds. ECF No. 29.

Since the denial of Defendants' motion to dismiss, this civil action has proceeded to discovery. ECF No. 31. Consequently, on

---

[2] Both parties' briefs include a cover page and introductory tables, and for ease of reference, the Court cites to the page number of the brief as designated by the parties, not the page number of the ECF document itself.

[3] The Norfolk Police Department was dismissed as a party, without prejudice, through a consent order entered by the Court on December 13, 2024. ECF No. 21.

February 25, 2025, both Plaintiffs and Defendants sent Flock letters requesting the preservation of certain documents related to this case. ECF No. 41 ¶ 2. On March 5, 2025, Flock sent a response to Plaintiffs' preservation request and met and conferred with Plaintiffs' counsel regarding the request on March 6, 2025. Id. Shortly thereafter, on March 14, 2025, Plaintiffs served Flock with a subpoena that outlined 28 different requests for production. Id. ¶ 3. After conferring with Plaintiffs' counsel regarding the subpoena, Flock filed the motion to intervene that is currently before the Court. ECF No. 40. Plaintiffs filed a response opposing Flock's intervention, ECF No. 51, and Flock replied, ECF No. 54. Defendants consent to Flock's intervention and therefore have not submitted any briefing on the matter. ECF No. 41 ¶ 7. The motion to intervene is now fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

Intervention is a "method for a nonparty to become a party to a lawsuit." United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 933 (2009). Intervention "attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, [] and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged." Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014). The United States Court of Appeals for the Fourth Circuit favors liberal intervention "to dispose of as much of a

3

controversy involving as many apparently concerned persons as is compatible with efficiency and due process." Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotations omitted).

Federal Rule of Civil Procedure 24 allows for (a) intervention as a matter of right (mandatory intervention) and (b) permissive intervention. Fed. R. Civ. P. 24. Intervention as of right requires a court to permit intervention by anyone who either has been "given an unconditional right to intervene by a federal statute," or who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). For permissive intervention, a court may allow intervention by anyone who either has been "given a conditional right to intervene by a federal statute," or who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Regardless of the type of intervention sought, the motion to intervene must satisfy the threshold requirement of timeliness. Alt v. U.S. E.P.A., 758 F.3d 588, 591 (4th Cir. 2014).

### III. DISCUSSION

Flock asserts that it satisfies the Rule 24 requirements for both mandatory and permissive intervention, contending that it is

4

"best placed to provide the Court with information showing that Plaintiffs' allegations are incorrect and that the City's use of Flock's products is lawful." ECF No. 40, at 1. Plaintiffs respond by arguing: (1) that Flock's motion to intervene is untimely; and (2) that Flock's motion to intervene fails on the merits because Flock can adequately provide the relevant technological information through amicus participation. ECF No. 51, at 2.

### A. Timeliness

"Timeliness is a cardinal consideration of whether to permit intervention" and is determined from the totality of the circumstances. Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999); see Alt, 758 F.3d at 591 ("A party seeking to intervene under either Federal Rule of Civil Procedure 24(a) or 24(b) may do so only upon the filing of a timely motion."). As explained by the Fourth Circuit, the "purpose of the timeliness exception is to 'prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.'" In re Cigar Ass'n of Am., 812 F. App'x 128, 137 (4th Cir. 2020) (quoting Alt, 758 F.3d at 591). To determine whether a motion to intervene is timely, the Court must assess three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." Alt, 758 F.3d at 591.

### 1. Suit Progression

As to the first timeliness factor – how far the suit has progressed - although this action is certainly not "within sight of the terminal," it also has not just left the station.  The suit has undoubtedly progressed beyond the initial pleadings stage, as Defendants' motion to dismiss has been fully briefed and subsequently denied, and the parties have commenced discovery. Plaintiffs have approximately one month left to complete discovery, while Defendants have about two months.  ECF No. 31, at 2.  All dispositive motions are due no later than August 14, 2025, and trial is set for less than five months from the date of this order. Id. at 1, 4.

Flock, moving past concerns about these approaching deadlines, argues that the action is still in a "preliminary stage" approximately two months before summary judgment and other dispositive motions are due.  ECF No. 40, at 8.  Flock relies heavily on two cases where district courts within the Fourth Circuit held that a motion to intervene made prior to summary judgment was timely.  See Back Bay Restoration Found., Ltd. v. U.S. Army Corps. of Engr's, No. 2:19cv323, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019); Defs. of Wildlife v. N.C. Dep't of Transp., 281 F.R.D. 264, 267 (E.D.N.C. 2012).

Flock's wholesale reliance on these cases, however, is misplaced.  There is no specific point in the proceedings where

intervention becomes per se untimely; the timeliness of a motion must be evaluated in light of all the case-specific circumstances. N.A.A.C.P. v. New York, 413 U.S. 345, 366 (1973); see Spring Constr. Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980) (finding that mere passage of time is but one factor to be considered in light of all the circumstances).  Furthermore, prior decisions "are not always reliable guides," and the cases on which Flock depends are easily distinguished.  Floyd, 770 F.3d at 1057.  Specifically, in both cases cited by Flock, none of the existing parties alleged that the motion to intervene was untimely.  Back Bay, 2019 WL 7817079, at *1; Defs. of Wildlife, 281 F.R.D. at 267.  Moreover, the proposed intervenors in both cases were only seeking to file summary judgment motions, not engage in discovery.  Back Bay, 2019 WL 7817079, at *1; Defs. of Wildlife, 281 F.R.D. at 267.  In contrast, here, Flock is pursuing much broader intervention as it explicitly requested to: participate in discovery, including taking discovery from Plaintiffs, reserve the right to amend their answer and assert new defenses, disclose up to five witnesses, and present evidence at trial, all in addition to filing a summary judgment motion.  ECF No. 54, at 3-4.  Moreover, as Plaintiffs outline in their response, if Flock joined the action as a full party, they would also be able to "file (and oppose) motions to compel," and "participate in post-trial briefing."  ECF No. 51, at 1-2.  This is a far cry from simply seeking to file summary judgment briefing, with the

7

potential to cause much greater delays to the existing case
schedule.  And although Flock repeatedly asserts that they will
comply with the Court's existing case schedule, Flock fails to
outline how compliance with the current deadlines would even be
feasible.  ECF No. 40, at 2.

Accordingly, because this factor requires such a fact
intensive inquiry, this Court is unpersuaded by Flock's sole
argument that the motion is sufficiently timely just because there
is still time before the parties' summary judgment deadline and
trial.  This case has already picked up a head of steam, so how
far this suit has progressed weighs against a finding of timely
intervention.

## 2. Prejudice

Prejudice to existing parties is the most important factor
when ascertaining whether a motion to intervene is timely.  Harris,
614 F.2d at 377.  Ultimately, courts should balance prejudice
threatened by intervention with "the advantages promised by it."
Allied Title Lending, LLC v. Taylor, 420 F. Supp. 3d 436, 455 (E.D.
Va. 2019); see Ohio Valley Env't Coal., Inc. v. McCarthy, 313
F.R.D. 10, 30 (S.D.W. Va. 2015).  The Fourth Circuit has recognized
a number of ways in which prejudice can manifest.  Granting a
motion to intervene that would "'consume additional resources of
the court and the parties' without 'a corresponding benefit to
existing litigants'" is sufficient to establish prejudice.  In re

*Interior Molded Doors Antitrust Litig.*, No. 3:18cv718, 2020 WL
8018441, at *3 (E.D. Va. Dec. 28, 2020) (quoting *Stuart v. Huff*,
706 F.3d 345, 355 (4th Cir. 2013)).  Similarly, "delay caused by
substantial additional litigation," *Scott v. Bond*, 734 F. App'x
188, 192 (4th Cir. 2018), or "the expenditure of 'extra effort[s]'"
by existing parties can also amount to prejudice, *In re Cigar*, 812
F. App'x at 138 (quoting *Alt*, 758 F.3d at 591).

     This Court struggles to identify any benefit to the existing
parties that outweighs the likely prejudice caused by Flock's
intervention.  Flock argues that their intervention will benefit
the litigation by ensuring that the parties and the Court have an
accurate understanding of how Flock's technology works and will
result in the production of the data that Plaintiffs have moved to
compel Defendants to produce. ECF No. 40, at 2.  Plaintiffs counter
that intervention would at least double Plaintiffs' offensive and
defensive discovery burdens, require a new Rule 26(f) conference,
and likely force Plaintiffs to respond to "a deluge of additional
briefs and pleadings." *Commonwealth of Virginia v. Westinghouse
Elec. Corp.*, 542 F.2d 214, 217 (4th Cir. 1976); *see Steele v.
Goodman*, No. 3:17cv601, 2019 WL 3366556, at *12 (E.D. Va. July 25,
2019) (quoting *Westinghouse*, 542 F.2d at 217) (recognizing that
"the Fourth Circuit has expressed sensitivity to a 'deluge [of]
additional briefs and pleadings' that would add 'no new viewpoints
and little if any illumination to the original . . . disputes'").

Plaintiffs' concerns establish prejudice and the benefits of allowing Flock to intervene do not outweigh this prejudice. Importantly, Flock can confer these same benefits on the existing parties, and the Court, without any corresponding prejudice through amicus participation, compliance with the document subpoena with which it was already served, and compliance with future testimonial subpoenas with which it may be served prior to trial.[4]

As such, any benefit that may potentially result from Flock's intervention is greatly outweighed by the prejudice to the existing parties that may manifest in the form of a substantial delay or the expenditure of significant "extra effort" and resources. Overall, this Court is unconvinced that it must force Plaintiffs to take a lengthy detour in pressing their Fourth Amendment claims when there is an adequate alternative option that allows this litigation to continue down its current track.

---

[4] The Fourth Circuit has held that amicus participation can be an adequate alternative to intervention by allowing proposed intervenors to "retain the ability to present their views." Stuart, 706 F.3d at 355; see McHenry v. Comm'r of Internal Revenue, 677 F.3d 214, 227 (4th Cir. 2012). Although, "a would-be intervenor may prefer party status to that of a friend-of-court, the fact remains that amici often make useful contributions to litigation." Democratic Party of Virginia v. Brink, No. 3:21cv705, 2022 WL 287929, at *3 (E.D. Va. Jan. 31, 2022) (citing Stuart, 706 F.3d at 355). As a matter of fact, Flock has, in the past, made multiple useful contributions to litigation where it was not a party and was able to successfully educate courts on its technology without intervening. See ECF No. 50-1 (providing a transcript of Flock's third-party testimony at a suppression hearing in the Circuit Court of the City of Chesapeake); United States v. Martin, 753 F. Supp. 3d 454, 459-60 (E.D. Va. 2024) (indicating that hearing testimony from a Flock representative about their technology's capabilities informed the court's decision to deny the motion to suppress evidence obtained from Flock's cameras). Although these examples took place in the criminal context, the underlying principle remains the same: Flock can successfully and effectively provide key information about its technology without being a party to litigation.

### 3. Reason for Delay

The third and final factor examined when assessing timeliness is "why the movant was tardy" in filing their motion to intervene. Alt, 758 F.3d at 591. "A proposed intervenor should move to intervene as soon as it becomes clear that his interests 'would no longer be protected'" by the existing parties. Scott, 734 F. App'x at 191 (quoting Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir. 1982)); see Cameron v. EMW Women's Surgical Ctr., P.S.C., 595 U.S. 267, 280 (2022) (finding that the most important circumstance when assessing this factor was that the proposed intervenor sought to intervene as soon as it became clear that their interests would no longer be protected). Otherwise, a proposed intervenor's motion may be viewed as untimely. Scott, 734 F. App'x at 191. Plausible justifications for tardiness may include a significant change in the circumstances of the case. Id. at 192. However, a "strategic decision" not to intervene sooner due to a belief that the court "would grant [a] motion to dismiss" cannot justify tardiness. Alt, 758 F.3d at 591. As the Fourth Circuit has aptly stated, "[s]uch deliberate forbearance [] engenders little sympathy." Id.

Here, the tardiness of Flock's motion may be the "strongest reason supporting its denial" as untimely. Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989). Flock alleges that it moved to intervene as soon as it was clear that they were in the best position to explain the capabilities of their technology and that

11

Defendants would be unable to adequately protect their interests. However, Flock fails to explain what changed in this case to unveil these purportedly "new" concerns, and the timing of the motion to intervene curiously aligns with this Court's denial of Defendant's motion to dismiss. ECF No. 54, at 2-3. While this Court does not dispute that Flock has superior knowledge of their technology, specifically the LPR system, Flock has plainly had this "superior knowledge" since October 22, 2024, when the complaint was filed. As Plaintiffs allege, it was clear from the day that the action was filed that LPR camera technology would be at issue, for the "complaint is replete with allegations about Flock's technology." ECF No. 51, at 9-10. Moreover, Flock representatives made comments to the media about the complaint the day after it was filed. Id. at 7. Flock thus fails to identify any significant change in their knowledge or circumstances since October of 2024 that would justify this tardy intervention. As such, the Court finds Flock's decision to wait to intervene until after this Court denied Defendants' Rule 12(b) motions akin to the decision of the party attempting to intervene in Alt. 758 F.3d at 591. Flock made a conscious gamble to not show up to the platform on time; it is not this Court's fault that the train had already left the station by the time Flock arrived.

\*   \*   \*

12

After examining the totality of the circumstances surrounding Flock's motion to intervene, this Court finds that the motion is untimely.[5]  Since timeliness is a threshold issue under Rule 24, neither mandatory nor permissive intervention is appropriate. Allowing Flock to intervene at this late juncture - or perhaps junction - would throw this case off the rails.  As such, Flock's motion to intervene is **DENIED**.

### B. Intervention As a Matter of Right

Even if their motion to intervene was timely, Flock is still unable to meet the necessary requirements for mandatory intervention.  When a party is seeking to intervene as a matter of right, a district court must permit intervention if: (1) the party has an interest in the subject matter of the action; (2) disposition of the action without the party's presence would impair its ability to protect its interests; and (3) the party's interests are not adequately represented by the existing parties to the action.  Fed. R. Civ. P. 24(a)(2); Teague v. Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991).  Each of these requirements are addressed below in turn.

---

[5] This Court acknowledges that a more lenient standard of timeliness is often applied to motions for mandatory intervention than motions for permissive intervention.  Titan Atlas Mfg. Inc. v. Sisk, No. 1:11cv12, 2014 WL 837247, at *3 (W.D. Va. Mar. 4, 2014).  However, even applying a more lenient standard, Flock's motion is still untimely.

## 1. Interest in the Action

In the context of Rule 24(a)(2), a potential intervenor must identify a "significantly protectable interest" in the subject matter of the action.  Teague, 931 F.2d at 261.  To have a significantly protectable interest, the proposed intervenor must demonstrate that they "stand to gain or lose by the direct legal operation of the district court's judgment on [the] complaint." Id.  This interest "must bear a close relationship to the dispute between the existing litigants." Dairy Maid Dairy, Inc. v. United States, 147 F.R.D. 109, 111 (E.D. Va. 1993)).  Here, Flock alleges two interests it has in the subject matter of this litigation: a property interest in the LPR cameras and accompanying system, and a contractual interest with the City of Norfolk.  ECF No. 40, at 12.    In opposition, Plaintiffs state that Flock only has a reputational interest, an insufficient basis upon which a party may intervene.  ECF No. 51, at 10.

While Plaintiffs are correct that a reputational interest alone likely does not support intervention, see Floyd, 770 F.3d at 1060, that is not the only interest identified by Flock.  Flock's asserted property and contractual interests are both "significantly protectable interests."    First, an interest relating to the property that is the subject of the action is explicitly outlined in Rule 24 as an interest that can justify mandatory intervention. Fed. R. Civ. P. 24(a)(2).  Flock's LPR cameras and accompanying

14

system are undoubtedly the subject of this action, and under the contract between Defendants and Flock, the LPR cameras installed around the City of Norfolk remain the property of Flock. ECF No. 40, at 12. Therefore, Plaintiffs requested relief of permanently enjoining Defendants from operating the LPR cameras, "directly affect[s] Flock's property and its use." Id. Second, other circuits have recognized that a movant has a sufficient interest to intervene where their contractual rights may be affected by a proposed remedy. See Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987) (citing cases from the Fifth, Eighth, and Tenth Circuits). Here, Flock's contract with Defendants, which extends into 2027, might be impacted were this Court to grant the permanent injunction Plaintiffs seek. ECF No. 51-6, at 7. In fact, a permanent injunction could result in the termination of the contract. Id. Accordingly, Flock satisfies the first requirement necessary for mandatory intervention.

### 2. Impairment of Interest

In order to meet the second requirement for mandatory intervention, the proposed intervenor must demonstrate that "the disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest." Harris, 614 F.2d at 377. The impairment must be "practical and not merely theoretical." Field v. Anadarko Petroleum Corp., 35 F.4th 1013, 1020 (5th Cir. 2022). Here, Flock asserts that their interests

15

will be impaired by Plaintiffs requested relief: a permanent injunction preventing Defendants from operating Flock's LPR cameras and accessing the accompanying system without a probable cause-based warrant. ECF No. 40, at 12. Plaintiffs do not dispute that their desired relief will impair Flock's interests.

If this Court permanently enjoins Defendants from operating Flock LPR cameras, ECF No. 1, at 22, Flock's contractual interest would likely be impaired. As stated above, Flock's contract with Defendants extends through 2027, with Flock invoicing Defendants for services and support on a regular basis, not to exceed monthly. ECF No. 51-6, at 3. Were this contract to be terminated prior to 2027 due to Plaintiff's success in the instant litigation, Flock would no longer be receiving the ongoing payments it expected from Defendant, which could total up to $430,000 per year. Id. at 8. There is no question that this identified economic loss impairs Flock's contractual interest.[6] Because this impairment is practical and not merely theoretical, Flock has met the second requirement of intervention as a matter of right.

---

[6] As previously discussed, under the contract at issue, Flock retains ownership over the LPR cameras installed around the City of Norfolk. Flock alleges that if this Court grants Plaintiffs requested relief of permanently enjoining Defendants from operating the LPR cameras, there will be an impairment of their property interest. ECF No. 40, at 12. However, Flock fails to identify how this interest will be affected, as it is not clear why the LPR cameras would not simply be returned to Flock if removed.

### 3. Adequate Representation by Existing Parties

Finally, parties seeking to intervene as a matter of right must demonstrate that their interests are not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). Traditionally, the burden of demonstrating lack of adequate representation is "treated as minimal," and is satisfied if the proposed intervenors can show that representation of their interests "may be inadequate." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)). Where, however, "the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Westinghouse, 542 F.2d at 216 (emphasis added). This presumption of adequate representation is even stronger when proposed intervenors share the same ultimate objective as a "government party." See Stuart v. Huff, 706 F.3d 345, 352 (4th Cir. 2013). In those contexts, the proposed intervenor must mount a "strong showing of inadequacy." Id.

In the instant case, Defendants and Flock share precisely the same goal, securing a ruling that Flock's LPR camera system does not constitute a search and does not violate Plaintiffs' Fourth Amendment rights. Because they share the same ultimate objective, this Court presumes that Flock's interests are adequately

17

represented by Defendants, and to overcome this presumption, Flock must make a "strong showing of inadequacy" through adversity of interest, collusion, or nonfeasance on behalf of Defendants. Flock alludes to both nonfeasance and adversity of interest in their motion to intervene. ECF No. 40, at 13.

### i. Nonfeasance

First, Flock asserts that their "superior knowledge" of the LPR camera system is illustrative of Defendants' inadequate representation through nonfeasance. ECF No. 40, at 13. Flock cites to multiple cases across multiple circuits where courts appear to have granted motions to intervene because the proposed interventors had superior knowledge of the relevant facts when compared to an existing government defendant. Id. Among these cases is one unpublished Fourth Circuit opinion holding that a party with superior knowledge over the government could appropriately intervene. JLS, Inc. v. Pub. Serv. Comm'n of W. Virginia, 321 F. App'x 286, 291 (4th Cir. 2009). However, JLS is easily distinguishable from the case at hand.

To begin, JLS was decided prior to Stuart, where the Fourth Circuit held that a strong showing of inadequacy was required to rebut the presumption that a government party adequately represented a proposed intervenor's interests. Next, Plaintiffs are not challenging the constitutionality of the cameras and accompanying system, but rather, the way in which Defendants are

operating the system (widespread usage across the city and access to data without a warrant).  As such, Flock's knowledge about the specifications of its technology does not appear to be vital to the resolution of the issue before this Court as it was in JLS.[7] And finally, Flock fails to mention that in JLS the Fourth Circuit did not reverse the denials of the motions to intervene based solely on the movants' superior knowledge.  Id. at 291.  Rather, the court also recognized the movants' greater incentive to defend the action, and that the movants asserted new legal arguments that the government failed to raise.  Id.  Here, Flock fails to demonstrate that they have greater incentive than Defendants' in defending this action, or that they will assert any legal arguments that differ from Defendants.  Accordingly, the Fourth Circuit's opinion in JLS offers limited guidance, and applying the subsequent decision in Stuart, it is apparent that Flock fails to demonstrate nonfeasance sufficient to overcome the presumption of adequate representation.

### ii. Adversity of Interests

Second, Flock alleges that because Defendants are a government entity "charged with representing multiple, distinct interests," there is risk that Defendants' approach to the litigation may not be consistent with Flock's best interests.  ECF No. 40, at 13-14.

---

[7] Flock admits lack of knowledge as to the specifics of Defendants' operation of the LPR camera system in its proposed answer.  ECF No. 39-2 ¶¶ 45-50.

However, "potential disagreements" about litigation strategy is insufficient to reveal adversity of interests. Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin., 467 F. Supp. 3d 282, 291 (D. Md. 2020). Although it is true that Defendants' and Flock's interests might not be identical, "stronger, more specific interests do not adverse interests make." Stuart, 706 F.3d at 353. Defendants, like Flock, have a contractual interest in keeping the LPR camera system operating in the City of Norfolk. See ECF No. 51-6. In fact, Defendants also have an interest that arguably provides an even stronger incentive to ensure that the LPR camera system remains in place: the interest in fighting crime and protecting local citizens.

In short, slightly different interests "surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all)." Stuart, 706 F.3d at 353. Allowing slight variations in interest to rebut the presumption of adequacy "would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit." Id. Flock has failed to demonstrate that Defendants' interests are sufficiently different from, let alone "adverse" to, their own.

\* \* \*

20

At bottom, Flock has failed to make the "strong showing of inadequacy" necessary to overcome the presumption that Defendants are adequately representing Flock's interests. <u>Stuart</u>, 706 F.3d. at 352. As effectively articulated by the Fourth Circuit, when a governmental action is challenged, "it is difficult to conceive of an entity better situated to defend it than the government." <u>Stuart</u>, 706 F.3d. at 351. Accordingly, by failing to demonstrate that Defendants inadequately represent their interests, Flock's motion to intervene as a matter of right is **DENIED**.

## C. Permissive Intervention

Assuming again that Flock's motion to intervene was timely, when considering a motion to intervene pursuant to Federal Rule of Civil Procedure 24(b), a court may permit intervention if: (1) the party seeking to intervene has "a claim or defense that shares with the main action a common question of law or fact;" and (2) intervention will not cause undue "delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b); <u>Allen v. Cnty. Sch. Bd. of Prince Edward Cnty.</u>, 28 F.R.D. 358, 363 (E.D. Va. 1961). Flock's only argument supporting permissive intervention is that they share a common defense with Defendants, namely that the use of the LPR system does not violate Plaintiffs' Fourth Amendment rights. ECF No. 40, at 15. On the other hand, Plaintiffs state that the burdens of intervention far

outweigh the benefits, and therefore, this Court should deny permissive intervention. ECF No. 51, at 19.

Because Flock limits its argument to the purported "common defense" that the LPR system does not violate the Fourth Amendment, this is the only basis on which this Court will assess permissive intervention. Both Flock and Plaintiffs overlook a major issue with this "common defense;" it is one that Flock cannot assert. The Fourth Amendment is designed to protect citizens from governmental intrusions; it does not protect against searches by private actors. United States v. Jordan, 693 F. App'x 216, 217 (4th Cir. 2017) (finding that "the Fourth Amendment limits only government action, and 'does not protect against searches, no matter how unreasonable, conducted by private individuals acting in a private capacity'") (internal citations omitted). While Flock makes and supports the technology that Plaintiffs allege is being used to violate the Fourth Amendment, such fact is insufficient to support Flock's intervention. It follows then that Flock, a private actor, cannot violate the Fourth Amendment, cannot assert this defense, and therefore should not be permitted to intervene on this purported "common defense."

Additionally, this Court has already addressed the prejudice and undue delay that Flock's intervention would likely cause Plaintiffs. This Court incorporates its prior analysis on these points here and again finds that intervention will prejudice

22

Plaintiffs.  Accordingly, because Flock is unable to meet either requirement, Flock's motion for permissive intervention is **DENIED**.[8]

### IV. CONCLUSION

For the reasons set forth above, Flock's motion to intervene is **DENIED**.  ECF No. 39.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ [signature]

Mark S. Davis<br>CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 27 , 2025

---

[8] This Court also notes that "where . . . intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." Brink, 2022 WL 287929, at *3 (quoting Va. Uranium, Inc. v. McAuliffe, No. 4:15cv31, 2015 WL 6143105, at *4 (W.D. Va. Oct. 19, 2015)).  Therefore, this too supports the Court's denial of Flock's request for permissive intervention.