# EXHIBIT 3



**Planet Depos**
We Make It *Happen*™

**ATTORNEYS EYES ONLY - SUBJECT TO PROTECTIVE ORDER**

# Transcript of Assistant Chief Michele Maria Naughton

**Date:** July 25, 2025
**Case:** Schmidt and Arrington -v- City of Norfolk, et al.

**Planet Depos**

**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com

**www.planetdepos.com**

Michigan #8598 | Nevada #089F | New Mexico #566

**WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY**

ATTORNEYS EYES ONLY – SUBJECT TO PROTECTIVE ORDER
Transcript of Assistant Chief Michele Maria Naughton
Conducted on July 25, 2025

1 (1 to 4)

**Page 1**

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF VIRGINIA

3                NORFOLK DIVISION

4    -------------------------------X

5    LEE SCHMIDT and CRYSTAL          :

6    ARRINGTON,                       :

7               Plaintiffs,    : Civil Case No.:
                                  2:24-cv-000621
8      v.                       : -MSD-LRL

9    CITY OF NORFOLK and MARK TALBOT, :

10   in his official capacity as the  :

11   Norfolk Chief of Police,         :

12              Defendants.     :

13   -------------------------------X

14   ATTORNEYS EYES ONLY – SUBJECT TO PROTECTIVE ORDER

15          Videotaped Deposition of

16     ASSISTANT CHIEF MICHELE MARIA NAUGHTON

17             Given Remotely

18         Friday, July 25th, 2025

19

20   Job: 589833

21   Pages: 1 - 268

22   Reported by: Karen Kidwell, RMR, CRR

**Page 2**

1       Deposition of ASSISTANT CHIEF MICHELE

2    MARIA NAUGHTON, held at:

3

4

5

6       Remotely Given

7

8

9

10

11       Pursuant to Notice of Deposition, before

12   Karen Kidwell, Notary Public in and for the

13   Commonwealth of Virginia.

14

15

16

17

18

19

20

21

22

**Page 3**

1        R E M O T E   A P P E A R A N C E S

2

3        ON BEHALF OF THE PLAINTIFFS, LEE SCHMIDT and

4    CRYSTAL ARRINGTON:

5        MICHAEL B. SOYFER, ESQUIRE

6        ROBERT FROMMER, ESQUIRE

7        TAHMINEH DEHBOZORGI, ESQUIRE

8        JESSICA BIGBIE, ESQUIRE

9        Institute for Justice

10       901 North Glebe Road

11       Suite 900

12       Arlington, VA  22203

13       703.682.9320

14       msoyfer@ij.org

15       rfrommer@ij.org

16       tdehbozorgi@ij.org

17       jbigbie@ij.org

18

19

20

21

22

**Page 4**

1    R E M O T E   A P P E A R A N C E S (Continued)

2        ON BEHALF OF THE DEFENDANTS, CITY OF NORFOLK

3        AND MARK TALBOT, IN HIS OFFICIAL CAPACITY AS

4        THE NORFOLK CHIEF OF POLICE:

5        KARLA J. SOLORIA, ESQUIRE

6        Norfolk City Attorney's Office

7        810 Union Street

8        Suite 900

9        Norfolk, VA  23510

10       757.664.4529

11       karla.soloria@norfolk.gov

12       - and -

13       JONATHAN KRAVIS, ESQUIRE

14       LIAM GENNARI, ESQUIRE

15       Munger, Tolles & Olson LLP

16       601 Massachusetts Avenue NW

17       Washington, DC  20001

18       202.220.1130

19       jonathan.kravis@mto.com

20       liam.gennari@mto.com

21   Also Remotely Present:

22       Matthew Simpson, Videographer

ATTORNEYS EYES ONLY - SUBJECT TO PROTECTIVE ORDER
Transcript of Assistant Chief Michele Maria Naughton
Conducted on July 25, 2025

2 (5 to 8)

5

1              I N D E X
2  WITNESS/EXAMINATION              Page
3  ASSISTANT CHIEF MICHELE MARIA NAUGHTON
4    By Mr. Soyfer              10
5
6
7
8
9
10          E X H I B I T S
11   Number       Description      Page
12  Exhibit 38  E-mail chain, top e-mail ..........56
        Naughton-Epps to Karpovich,
13      6/10/2022, Bates
        NORF001402-1406
14
     Exhibit 39  6/16/2022 E-mail, Mento to ........67
15      Naughton-Epps, with MOU
        attachment, Bates
16      NORF001393-1400
17  Exhibit 40  E-mail chain, top e-mail ..........70
        6/21/2022, Mento to
18      Naughton-Epps, Bates
        NORF013011-013
19
     Exhibit 41  E-mail chain, top e-mail ..........81
20      9/22/2022, Alex del Carmen to
        Naughton-Epps, Bates
21      NORF009454-9455
22

7

1          E X H I B I T S (Cont'd)
2   Number       Description      Page
3  Exhibit 50  E-mail chain, top e-mail .........162
        11/13/2024, Derrick to
4      Naughton and others, Bates
       NORF014125-127
5
     Exhibit 51  E-mail chain, top e-mail .........227
6      5/24/2023, Maslow to Naughton,
       with attachments,
7      Confidential, Bates
       NORF000369-371
8
     Exhibit 52  6/13/2024 E-mail, Naughton to ....240
9      Maslow with attachments, Bates
       NORF014765-4771
10
     Exhibit 53  E-mail chain, top e-mail .........261
11      11/13/2024 Thomas to Naughton,
       with attachment, Bates
12      NORF020992-998
13
14
15
16
17
18
19
20
21
22

6

1          E X H I B I T S (Cont'd)
2   Number       Description      Page
3  Exhibit 42  E-mail chain, top e-mail ..........88
        7/25/2022, Maslow to
4      Naughton-Epps, Bates
       NORF007505-7509
5
     Exhibit 43  1/13/2023 E-mail, Maslow to ......100
6      Goldsmith and others, Bates
       NORF019598
7
     Exhibit 44  E-mail chain, top e-mail .........110
8      1/24/2023, Maslow to Goldsmith
       and others, Bates
9      NORF014673-679
10  Exhibit 45  E-mail chain, top e-mail .........114
        9/4/2024, Purnell to Naughton
11      and others, Bates
       NORF008164-8165
12
     Exhibit 46  E-mail chain, top e-mail .........122
13      10/18/2024, Naughton to Boone
       and others, Bates
14      NORF015607-5610
15  Exhibit 47  E-mail chain, top e-mail .........141
        7/18/2022, Naughton-Epps to
16      Vernon, Bates NORF012942-953
17  Exhibit 48  E-mail chain, top e-mail .........145
        8/5/2022, Naughton-Epps to
18      Rose, Bates NORF008412-8413
19  Exhibit 49  E-mail chain, top e-mail .........153
        5/31/2024, Covington to
20      Naughton, Bates
       NORF005746-5748
21
22

8

1      PREVIOUSLY MARKED EXHIBITS REFERENCED
2    No.          Description          Page
3  Exhibit 8  6/30/2025 Memorandum, City of ....188
        Norfolk, Bates NORF021152-1163
4
     Exhibit 11  E-mail chain, top e-mail .........150
5      11/11/2022, Vernon to Rose,
       Bates NORF019435-436
6
     Exhibit 22  E-mail chain, top e-mail .........158
7      3/5/2024, Alvarez to Naughton
       and others, with attachments,
8      Bates NORF006843-6846
9  Exhibit 25  10/22/2024 E-mail, Harvey to .....175
        Naughton, with attachments,
10      Bates NORF017584-589
11
12
13
14
15
16
17  REPORTER'S NOTE: All quotations from exhibits
18  are reflected in the manner in which they
19  were read into the record and do not
20  necessarily indicate an exact quote from the
21  document.
22

ATTORNEYS EYES ONLY – SUBJECT TO PROTECTIVE ORDER
Transcript of Assistant Chief Michele Maria Naughton
Conducted on July 25, 2025

3 (9 to 12)

9

1 FRIDAY, JULY 25, 2025
2 P R O C E E D I N G S
3        - - -
4        VIDEOGRAPHER:  Here begins Media Number 1
5 in the videotaped deposition of Assistant Chief
6 Michele Naughton, in the matter of Lee Schmidt
7 and Crystal Arrington vs. City of Norfolk and
8 Mark Talbot, in his official capacity as the
9 Norfolk Chief of Police, in the United States
10 District Court for the Eastern District of
11 Virginia, Norfolk Division, Case Number
12 2:24-CV-00621-MSD-MRL.
13        Today's date is July 25th, 2025, and the
14 time on the video monitor is 9:31 a.m. Eastern
15 Time.  The remote videographer today is Matthew
16 Simpson, representing Planet Depos.  All parties
17 of this video deposition are attending remotely.
18        Would counsel please voice-identify
19 themselves and state whom they represent.
20        MR. SOYFER:  Michael Soyfer, from the
21 Institute for Justice, on behalf of Plaintiffs.
22 I'm joined by my colleagues Robert Frommer,

10

1 Jessica Bigbie, and Tahmineh Dehbozorgi.
2        MS. SOLORIA:  I am Karla Soloria, with the
3 Norfolk City Attorney's Office, on behalf of
4 Defendant.  I'm joined here by my co-counsel
5 Jonathan Kravis, with the firm Munger, Tolles.
6 We are also joined by his colleague, Liam
7 Gennari, via Zoom.
8        VIDEOGRAPHER:  The court reporter today is
9 Karen Kidwell, representing Planet Depos.
10        The witness will now be sworn.
11        ASSITANT CHIEF MICHELE MARIA NAUGHTON
12 having agreed to testify under penalties of perjury,
13 testified as follows:
14             EXAMINATION
15 BY MR. SOYFER:
16    Q.  Okay.  Good morning.
17        We're going to start with the hardest
18 question first:  Could you please state your full
19 name for the record.
20    **A.  Michele Maria Naughton.**
21    Q.  And are you currently employed?
22    **A.  Yes.**

11

1    Q.  Where are you employed?
2    **A.  City of Norfolk, Norfolk Police**
3 **Department.**
4    Q.  And what do you do at the Norfolk Police
5 Department?  What's your title?
6    **A.  Assistant Chief.**
7    Q.  And just tell me a little bit about your
8 job.  What are your -- your job duties as Assistant
9 Chief?
10    **A.  Currently I am responsible for the**
11 **Investigative Services Unit, Division; I'm the Bureau**
12 **Chief for that.  My responsibilities entail all of**
13 **the detectives in the department; the gang squad;**
14 **vice and narcotics; the special operations team,**
15 **which is the SWAT team; the Real Time Crime Center of**
16 **crime; the Criminal Intelligence Unit; and Crime**
17 **Analysis all report to me.**
18    Q.  How long have you been in that role?
19    **A.  As the Investigative Chief since August**
20 **of 2023.**
21    Q.  Okay.  And before that, what were you --
22 what was your job?

12

1    **A.  Upon being promoted to Assistant Chief**
2 **in 2021, I was the Field Operations Chief.**
3    Q.  And what were your job responsibilities
4 there, just briefly?
5    **A.  At that time, all of the patrol officers,**
6 **the Special Enforcement Division all reported to me.**
7    Q.  Okay.  I'll come back to that in a little
8 bit.  But first, let me just ask you:  Have you
9 given -- have you given a deposition before?
10    **A.  Yes, I have, but it's been years.**
11    Q.  Okay.  How long ago was that?
12    **A.  This would have probably been when I was**
13 **patrol officer, so prior to 2011ish.**
14    Q.  Oh, okay.  So a very long time ago.  Okay.
15        And what was -- what was that case about,
16 just briefly?
17    **A.  It was an accident.  I don't know the**
18 **particulars; I don't recall the particulars at this**
19 **time.**
20    Q.  Okay.  Like a car accident?
21    **A.  Yes.**
22    Q.  Got it.  So since it's been a while, I'll

ATTORNEYS EYES ONLY - SUBJECT TO PROTECTIVE ORDER
Transcript of Assistant Chief Michele Maria Naughton
Conducted on July 25, 2025

77

1  would have been a video presentation where -- and I'm
2  just -- as best I can recall, where they were going
3  over what -- what Flock does, I guess success
4  stories, based on the -- the e-mails.  It would have
5  been a presentation of the technology.
6       I don't recall who asked what questions or
7  what that questioning was, over three years ago.
8    Q.  Great.  Yes.  I just want your best
9  recollection.
10      So you obviously made a decision to move
11 forward with presenting Flock to the executive staff,
12 correct?
13   A.  Yes, sir.
14   Q.  And why did you make that decision?
15   A.  I felt that the technology would
16 considerably assist us with the violent crime that we
17 were having.  I had people being shot.  I had people
18 being killed with vehicles that were riding down
19 Virginia Beach Boulevard shooting into the community,
20 a community where there are children that live there,
21 elderly folks that live there.  And I wanted to do
22 all that I could to protect life in any way that I

78

1  could.  The eyewitness descriptions weren't yielding
2  us any results that were beneficial to us to -- to
3  try to identify these individuals.
4       There was -- there's a -- another public
5  housing community that is separated by one block from
6  where this violence was occurring, and at the time,
7  we believed that there was a group or gang violence
8  that was going on between the two communities.  So
9  the violence was extremely rampant, and we were
10 losing lives.
11   Q.  And how -- so understanding that, how --
12 what -- what about Flock stood out to you as a
13 potential way to solve that problem?
14   A.  So Flock, because it captures the license
15 plates and it also puts out alerts for stolen autos,
16 some of those vehicles that were used in this violent
17 crime were stolen autos.  And being able to capture
18 the license plate would give our officers the ability
19 to prevent crimes, if those vehicles were in the
20 area.  Especially where we were having a lot of those
21 violent crimes, it would give us the alerts for
22 stolen autos that were passing through that camera,

79

1  that image, knowing that the camera would be there,
2  if we put a camera there, knowing that a -- that a
3  vehicle that was stolen passed through image would
4  alert our officers to potentially be in the area to
5  ensure -- you know, visibility of a marked unit has
6  the ability to deter crime, to deter somebody
7  shooting at another individual so they're not caught.
8       So, you know, my -- my perspective was
9  life preservation.  I wanted to save lives.  I wanted
10 to utilize what -- and pull in any technology that
11 would help me save lives.
12   Q.  Did -- did you see any role for Flock in
13 investigations at that point in time?
14   A.  I don't recall.  It's possible I did.  I
15 don't know exactly what my thought process was
16 three years ago, in learning about the technology.  I
17 was the Field Operations Chief, so I'm not sure that
18 I would have been immersed in what investigations was
19 doing, because my area of responsibility was patrol
20 and -- and the communities.
21   Q.  Got it.  And so it seems like from your
22 answer today, your priority was preventing crime

80

1  before it happened.  Is that a fair characterization
2  of your answer?
3    A.  It's some of my -- I wanted to prevent
4  crime before it happened.  I wanted to ensure my
5  officers were safe -- you know, knowing is half the
6  battle -- and knowing what vehicles that they're
7  possibly interacting with.
8       You know, if you pull a vehicle over and
9  you have that information that they're a violent
10 offender inside, you're going to do things
11 differently.  It's not going to be the,
12 quote/unquote, routine traffic stop, where -- which
13 is very dangerous for my officers.  So not only was I
14 at the mind-set of preserving life and preventing
15 crime and preventing violent crime, but was also to
16 keep my officers safe.
17   Q.  Okay.  Understood.
18      You can set that document aside.
19      MR. SOYFER:  And I'm going to be dropping
20   in the chat a document which we'll mark
21   Plaintiffs' Exhibit 41.
22 //

ATTORNEYS EYES ONLY - SUBJECT TO PROTECTIVE ORDER

Transcript of Assistant Chief Michele Maria Naughton

67 (265 to 268)

Conducted on July 25, 2025

265

1  said, I probably had it wrong, because the RTCC GO
2  was general order draft. And like I said previously,
3  I saw a draft of the general order. I may have said
4  "Flock," but Flock would be a component in this
5  general order, not the whole basis of it.
6      Q. Okay. And were you concerned at the time,
7  generally, about audits of the use of information
8  systems in the Real-Time Crime Center?
9      A. I'm not sure if that was my concern.
10 Maybe my concern was just making sure we had a system
11 in place. I don't think at that time I had any
12 information that there was issues with auditing or
13 anything. I don't believe I had seen any audit
14 information or anything to that nature.
15      And I'm not as versed with Flock, or -- or
16 even Fusus, because that's more day-to-day. So I
17 think -- I may have been looking at it as the
18 overall, from where I sat, but not actually the inner
19 workings of it.
20     Q. Okay. Understood. You can set that
21 document aside.
22      Have you spoken to community members about

266

1  the Real Time Crime Center?
2      A. Yes.
3      Q. Okay. And just -- can you describe to me
4  generally what those conversations are about?
5      A. So I think there was some release in that
6  we were getting a Real Time Crime Center or maybe
7  something at city council, and generally asking,
8  like, "What is it like? What is it going to be?
9  Where is it going to be located?"
10      Just general information and questions
11 about what -- what exactly it is.
12     Q. Has anyone expressed concerns to you about
13 the Real Time Crime Center Complaints, anything like
14 that?
15     A. I have not received any complaints. Maybe
16 increase, or just asking about what it is -- no.
17     MR. SOYFER: Okay. So, subject to any
18     redirect, those are all of my questions for
19     today.
20     MS. SOLORIA: I don't have any redirect.
21     But before we get off the record, so I don't
22     forget, pursuant to the protective order, the

267

1  Defendants intend to designate those portions of
2  the Chief's testimony where confidentially
3  marked exhibits were discussed as confidential.
4      MR. SOYFER: Okay.
5      VIDEOGRAPHER: All right. This marks the
6  end of the deposition. And we're going off the
7  record at 3:41 p.m.
8      COURT REPORTER: Would you like the same
9      orders you gave yesterday?
10     MR. SOYFER: Yes.
11     MS. SOLORIA: Yes.
12     (Time Noted: 3:41 p.m.)

268

1      CERTIFICATE OF REPORTER
2      I, Karen K. Kidwell, RMR, CRR, the officer
3  before whom the foregoing deposition was remotely
4  taken, do hereby certify that the foregoing
5  transcript is a true and correct record of the
6  testimony given; that said testimony was taken by me
7  stenographically and thereafter reduced to
8  typewriting under my direction; that reading and
9  signing was not requested; and that I am neither
10 counsel for, related to, nor employed by any of the
11 parties to this case and have no interest, financial
12 of otherwise, in its outcome.
13      IN WITNESS WHEREOF, I have hereunto set my
14 hand this the 31st day of July, 2025.
15
16 _____
17      Karen K. Kidwell
18      Registered Merit Reporter
19      Notary Public
20      Commonwealth of Virginia
21      Registration #7625774
22      My Commission expires: July 10, 2027