# EXHIBIT 12

## Unredacted Exhibit Filed Under Seal Per Protective Order

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **LEE SCHMIDT and CRYSTAL ARRINGTON,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 2:24-cv-621** |
| **CITY OF NORFOLK and MARK TALBOT, in his official capacity as the Norfolk Chief of Police,** | |
| **Defendants.** | |

## DECLARATION OF KEVIN HORAN

I, Kevin Horan, declare as follows:

1.     I am over the age of 18 and am competent to testify about the matters in this Declaration based on my personal knowledge.

2.     I am the co-founder of Precision Cellular Analysis, a consulting firm that specializes in the interpretation and analysis of cellular records and digital location data. I have been retained by Defendants in this matter as an expert in the analysis of cellular records and digital location data, and the use of such technologies by law enforcement. I make this declaration based on personal knowledge.

3.     Attached as **Attachment A** is a true and correct copy of the Expert Report of Kevin Horan, submitted in this case. The exhibits attached to my Report are true and correct copies.

4.     I authored the attached Expert Report and understood at the time I signed it that it was being prepared for use in this litigation. I understood at the time I made my Report that my statements were being made under oath and under penalty of perjury.

5.      If called as a witness, then I could and would testify competently to the opinions stated herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this <u>11</u> day of September, 2025, at <u>CENTERVILLE</u>, Ohio.


*Kevin R. Horan*
_____
Kevin Horan

# ATTACHMENT A



# Precision Cellular Analysis LLC

**Expert Witness Report: Comparative Intrusiveness of Location-Based Technologies**
**Prepared by Kevin R. Horan**
**Expert in Cellular Location Analysis (CSLI)**
**Date: August 2025**

**Contains and References Confidential Information Subject to Protective Order**

## I. Personal Background

I am an expert in the analysis of cellular records and digital location data, and the use of such technologies by law enforcement.

In 2022, I co-founded Precision Cellular Analysis (PCA), a consulting firm that specializes in the interpretation and analysis of cellular records and digital location data. In that capacity, I provide expert review of call detail records, Automated License Plate Recognition (ALPR) logs, GPS data, forensic data and digital timelines for active investigations and legal proceedings.

Prior to co-founding PCA, I worked for 31 years in law enforcement, first as an Assistant Prosecuting Attorney, then as an FBI Special Agent. During my time as an FBI agent, I received formal FBI training in digital location data, including Cell Site Location Information (CSLI) and GPS, and served as the primary case agent on numerous violent crime investigations. In those cases, I routinely used CSLI in the field to solve complex criminal investigations, and worked with numerous police departments and other law enforcement agencies. In 2010, I joined the FBI Cellular Analysis Survey Team (CAST), a newly created unit specializing in the use of cellular records in investigations. I served in the CAST unit for 12 years. For my last 3 years on CAST, I served as a Supervisory Special Agent with responsibility for supervising CAST Agents and Task Force Officers in the western half of the United States. During my time at the FBI, I also served as the Task Force Coordinator for a Violent Crime Task Force, and an investigator on a Joint Homicide Investigation Task Force. In my law enforcement career, I was the affiant on hundreds of arrest and search warrants and analyzed approximately a thousand cell phone data sets and hundreds of GPS records. I also analyzed ALPR data in more than a dozen investigations.

I rely in this report on my 31 years of experience in law enforcement, and on my subsequent experience as a consultant. In that capacity, I have consulted with prosecutors, plaintiffs and defendants in cases involving CSLI, GPS records, and digital communication evidence. I have been qualified as an expert witness and provided testimony in more than 120 cases in both state and federal court, and provided fact witness testimony in 25 additional cases. In particular, I have regularly been called upon to testify about digital location data, including ALPR, CSLI, GPS, and related technologies. I have experience with the data collected by multiple U.S. cellular

1



**Precision Cellular Analysis LLC**

carriers, including Verizon, AT&T, and T-Mobile, and am knowledgeable regarding cell technology, radio frequency propagation, GPS architecture, and metadata analysis.

## II. Summary of Opinions

This report responds to the opinions presented by plaintiffs' experts Dr. Andrew P. Wheeler and Dr. Chad Higdon-Topaz. Dr. Wheeler contends that the Flock ALPR system deployed by the City of Norfolk enables law enforcement "to reconstruct the daily routines of individuals," including to infer that an individual visited particular locations, such as a ███████████████████ ████████  Wheeler Report at 7. Dr. Higdon-Topaz similarly concludes that ALPR data "would allow Norfolk PD . . . to know where citizens have traveled."  Higdon-Topaz Report at 5.

In my opinion, these conclusions are inconsistent with how law enforcement actually utilizes ALPR data and do not accurately reflect the technical limitations of Flock systems when compared to other technologies—such as CSLI, GPS, or forensic mobile device analysis.

ALPR systems, including those manufactured by Flock Safety, are fixed-camera installations that capture images of license plates and basic vehicle information at specific locations on public roads. These systems collect data on vehicles, not individuals. They are geographically confined and capture vehicle activity only where cameras are placed—not throughout a city or across continuous travel routes. ALPR systems do not track vehicles in real time or continuously over time, and they do not produce the type or quantity of data needed to reconstruct an individual's whereabouts. They do not provide information on a vehicle's origin, destination, location between captures, whether a vehicle stopped at a location between captures, nor, if so, how long a vehicle stopped at a particular location.

Dr. Wheeler's conclusion that the Flock ALPR system enables the City of Norfolk "to reconstruct the daily routines of individuals" based on his training and experience as a crime analyst, Wheeler Report at p. 4, is contrary to my professional experience as an FBI agent, more than a decade of which focused on using technology to track individuals' locations. In my professional experience, when law enforcement seeks to determine where a person was at a particular time, or to track (i.e., follow the path of), their movement across multiple locations, they rely on CSLI or GPS data. These technologies provide largely continuous time-stamped records tied to a specific device or user that enable law enforcement to determine an individual's location and associations with others. This is why CSLI and GPS are usually the backbone of location-based investigations.

## III. How Automated License Plate Recognition Systems Work



# Precision Cellular Analysis LLC

An ALPR is a camera placed at a fixed position, usually on a public street, that captures license plates and other distinguishing features of vehicles passing the camera.

ALPR systems use high-speed cameras with optical character recognition software to capture and convert vehicle license plate characters into machine-readable text. ALPR cameras are typically mounted on fixed poles (e.g., on roadways or bridges), on mobile platforms (e.g., patrol vehicles), or on existing infrastructure (e.g., traffic lights, highway overpasses). ALPR cameras take photographs and record information about the license plates and sometimes other features of the vehicles that pass the camera locations at a particular point in time.

Flock ALPR cameras are generally positioned on roadways to take photographs of the rear-ends of passing vehicles and capture vehicle license plates, images, and metadata at the point of detection. Flock cameras also use machine learning technology to identify characteristics of vehicles such as their make, type, and color.

Law enforcement can receive alerts that notify them when vehicles meeting certain criteria in Virginia's ALPR statute and the Norfolk Police Department's Flock policy—such as known stolen vehicles or vehicles associated with an Amber Alert—pass a Flock camera.

The Flock database can be queried by license plate number, vehicle attributes, time range, and camera location within the applicable retention period.

## IV. Limitations of Automated License Plate Recognition Systems

While ALPR systems are an important and useful tool for law enforcement, ALPR systems have important limitations. In my experience, ALPR cameras like Flock cameras do not enable law enforcement to track a person's whereabouts or identify where a person is or was at frequent intervals or continuously through time, and law enforcement do not use this technology for that purpose.

In my experience, law enforcement instead uses CSLI and GPS data, not ALPRs, when a criminal investigation requires them to track an individual's movements. A comparison between CSLI and GPS, and ALPR, reveals that ALPR cameras do not share the features that enable law enforcement to use CSLI and GPS to track an individual's movements.

## A. Cell Site Location Information

CSLI is data regarding the location of a mobile device created when the device connects to a nearby cellular tower (cell site) during calls, text messages, or data sessions. As noted above, I

3



**Precision Cellular Analysis LLC**

routinely analyzed and testified regarding CSLI in major criminal investigations as a member of the FBI CAST Unit.

Cellular phones use radio frequency signals to communicate with cell towers, also called cell sites. When a cellular device initiates or receives a communication event, the interaction is logged by the cellular provider in a Call Detail Record. These records identify the cell tower and antenna used for the interaction (CSLI), which analysts can use to determine the approximate direction and location of the phone when it initiated contact with the network down to as small an area as 0.1 square miles in an urban area. In a typical urban area, a single cell phone could generate approximately 500 to 2,000 CSLI data points per day—once every 1 to 3 minutes—depending on network activity, background app usage, and user behavior.

CSLI has several characteristics that make it particularly useful for tracking a user's movements. First, CSLI records data throughout the entirety of a given city or town. Cellular infrastructure is engineered for ubiquitous and continuous connectivity. For example, Norfolk, Virginia has approximately 644 cellular towers across all major wireless carriers. If a person journeys from one place to another in Norfolk, then CSLI will record data about the timing and location of a person's origin and ultimate destination as well as the places that they pass and the stops that they make along the way.

Second, because mobile devices connect continuously with cellular towers even when they are not being actively used by the user (e.g., email app updates), CSLI records data continuously regardless of what a subject is doing (i.e., even if they are not placing a call or browsing the internet).

Third, CSLI is collected even when the subject is in a private place such as inside their own home, a doctor's office, or a place of worship, and even when a subject is not moving or has not gone out into public.

Fourth, cellphone location is an excellent proxy for the user's location because users typically remain close to their cellphone whether in public or in private, throughout the day, regardless of their activities, and typically do not share their cellphone with others.

Fifth, cellular networks maintain CSLI data going back as much as five years. As a result, CSLI can provide a comprehensive record of a person's movements over several years.

As a result, CSLI provides investigators with a detailed and persistent record of a subject's movements (or non-movements) throughout an entire day, including where they traveled, when they arrived, how long they stayed, and when they departed. Even when a subject remains

4



**Precision Cellular Analysis LLC**

stationary, their device continues to interact with the same tower, maintaining a location footprint in the dataset.

**B. GPS**

GPS is a satellite-based navigation system that enables a device to determine its geographic location with a high degree of precision. Examples of GPS-enabled devices include smartphones, fleet monitors, and ankle bracelets. Law enforcement also can install GPS-tracking devices on vehicles. During my law enforcement career, I used GPS data in numerous investigations to establish where an individual's vehicle had been, including at the time of a homicide or other crime.

A GPS-enabled device calculates its position using trilateration: by measuring the time it takes to receive signals from at least four GPS satellites.  Each satellite broadcasts its location and the precise time the signal was sent, which enables the device to determine its position relative to those four satellites. GPS-enabled devices can calculate and record data regarding their location up to multiple times per second, and the location data can be accurate to within 3 to 5 meters. The result is a highly precise and continuous record of timestamped location coordinates that can be transmitted in real-time to a monitoring system.

Like CSLI, GPS technology has several characteristics that make it particularly useful for tracking a device's movements. First, like CSLI, GPS technology records data throughout a given city or town because the satellites used to calculate GPS coordinates are designed for universal coverage. If a person journeys from one place to another, then GPS will record data about the timing and location of a person's origin and ultimate destination as well as the places that they pass and the stops they make along the way, whether in a highly-trafficked commercial area or a quiet residential area.

Second, like CSLI, GPS technology records data regarding a device's location with near-continuous frequency, regardless of whether the device is in a public or private place, such as a home, a doctor's office, or a place of worship. GPS technology can record data even when the device is stationary. Depending on the device configuration and the application in use, GPS logging may occur as frequently as once per second (1 Hz), and in many law enforcement applications or commercial trackers, location data is recorded every 5 to 15 seconds. This results in hundreds—or even thousands—of precise location points per day, enabling a highly detailed reconstruction of an individual's movements, time spent at particular locations ("dwell times") , and repeat visits to sensitive locations.

 **Precision Cellular Analysis LLC**

Law enforcement can therefore use GPS-enabled devices to track a person's or vehicle's movements (or non-movements) because they provide complete, precise, and reliable data regarding a device's movements.

**C. Comparison to ALPR**

ALPR cannot be used by law enforcement to track an individual's movements because it lacks several features that CSLI and GPS have.

First, ALPR cameras like Flock cameras do not record data at every location in a given city or town. ALPR cameras are located in only a fraction of places in a city or town, usually at major intersections or on highly-travelled streets. ALPR cameras do not record any data regarding a vehicle when it is not passing a camera, so they do not record any information about a vehicle when it is in a place where a camera is not located.

Second, ALPR cameras like Flock cameras do not continuously collect data regarding a vehicle's location. Rather, they record data only when a vehicle passes a fixed location. ALPR cameras do not record data about a vehicle's origin or destination or about a vehicle's location during the time between when it passes ALPR cameras. ALPR cannot provide information showing that an individual remained at a particular location without moving for some period of time.

Third, ALPR cameras like Flock cameras only record information about vehicles. When a person is outside of their vehicle, ALPR cameras do not record any information about that person's location. As a result, ALPR cameras do not provide information about when a person has entered a building or private place, such as their own home, a doctor's office or a place of worship. If a person takes a walk, then ALPR cameras will not record any information about that person's location. By contrast, a cell phone and many GPS enabled devices almost always accompany a person wherever they go, recording data from those devices about that person's location wherever they go—even if they are walking, riding a bike, taking public transportation, or staying in one location.

Fourth, Virginia law allows ALPR data to be retained for just 21 days. This is just a small fraction of the time for which CSLI is available, which can be up to five years.

For these reasons, in my experience, if law enforcement want to determine where a person was at a particular time, then they generally would not turn to ALPR cameras as a first step, but instead would use CSLI or GPS. Law enforcement will often build a case around CSLI and GPS trackers, relying on that data as the central support because it provides a full record of a suspect's movements, but they will not use ALPR data to do so.

 **Precision Cellular Analysis LLC**

In my opinion, Dr. Wheeler and Dr. Higdon-Topaz's conclusions that ALPR data enables the NPD "to reconstruct the daily routines of individuals," including to infer that an individual visited particular locations, Wheeler Report at 7, and "to know where citizens have traveled," Higdon-Topaz Report at 5, do not reflect the technical limitations of ALPR systems and so are inconsistent with how law enforcement actually uses ALPR systems like Flock systems.

For example, in his Report, Dr. Wheeler offers the opinion that law enforcement could use ALPR data to "draw" specific "deductions and inferences about ██████████ lives." Wheeler Report at 6. In my opinion, these inferences are speculative and are not consistent with my experience in law enforcement. During my time at the Bureau, the FBI would not conduct operations, including arrests or searches, based on inferences like those suggested by Dr. Wheeler. Additionally, CSLI would provide far more location information regarding a subject than the ALPR data associated with Plaintiffs' vehicles presented by Dr. Wheeler. CSLI would provide far more location data points and the data provided by CSLI would be far more useful because it would provide continuous location information, indicate points of origin and destination, and record dwell times and locations.

Furthermore, many of the inferences that Dr. Wheeler draws from Flock ALPR data exceed the actual capabilities and fail to reflect limitations of that technology. For example, Dr. Wheeler concludes that ██████████ frequent presence on a particular stretch of Granby Street justifies the inference that he "shops at ██████████." In my experience, that is not a valid conclusion based solely on ALPR data. A camera detection, whether frequent or not, only indicates that a specific vehicle was present at the camera's location and traveling in a given direction when it passed the camera. The detection does not reveal the driver's destination, purpose, or duration of stay. A review of mapping tools such as Google Maps reveals that the relevant area of Granby Street contains numerous commercial establishments, residences, and points of interest, including, for example, a Starbucks, restaurants, and office spaces. A frequent detection along that corridor is equally consistent with routine travel for coffee, commuting, or any number of unrelated activities. Without additional data, such as surveillance footage, witness statements, GPS tracking, or phone location records, the inference that the individual shops specifically at ██████████ cannot be supported and would not be a responsible one for law enforcement to make.

Dr. Wheeler's assertion that a westbound Flock detection of ██████████ on Lafayette Boulevard supports the conclusion that ██████████ is similarly problematic. Accepting as true that ██████████ in the general vicinity of where ██ ██████████ vehicle was captured, the ALPR data does not show ██████ stopped at ██. ██████████ The neighborhood contains numerous other homes, churches, and businesses, including Manny's Burger and Duke Brothers Oriental Rug Cleaning. It is equally plausible that ██████████ visited a friend, attended a church service, or passed through without stopping.



**Precision Cellular Analysis LLC**

Accordingly, the inference that Dr. Wheeler draws regarding ▮▮▮▮▮ would not be a responsible one for law enforcement to make.

Dr. Wheeler also asserts in his Report that timestamp information showing, for example, two locations in a two-minute period, is significant because "similar information is used to surveil individuals in police investigations." Wheeler Report at 12. Dr. Wheeler argues that patterns of repeated travel can identify "locations where individuals frequent," which in turn may support inferences about whether an individual is "likely associated with particular criminal activity nearby in space." Wheeler Report at 12.

In my lengthy and varied professional experience, Dr. Wheeler's claims are not how ALPR data is used or interpreted in law enforcement investigations. Unlike GPS or CSLI data, which provide continuous or high-frequency location records tied to a known user or device, ALPR only generates brief snapshots of a vehicle's location when it happens to pass one of a limited number of fixed cameras. The existence of two timestamped detections within a short time frame does not establish continuity of travel, dwell time, or a behavioral pattern. For example, a vehicle might pass two ALPR cameras on the same road two minutes apart—yet this may reflect routine commuting, rideshare activity, delivery routes, or any number of other purposes. Nor can such information reveal if the individual stopped at a particular location, or what they did there. Without additional evidence, such as GPS data, witness observations, or contextual behavioral information, these detections do not establish that the driver frequents a particular location.

Dr. Higdon-Topaz opines that "[w]ith adequate computational resources," the approach he uses in his report to identify supposedly likely routes between ALPR data points "could enable comprehensive surveillance analysis across Norfolk's entire monitored vehicle population." Higdon-Topaz Report at 37. In my experience, law enforcement, including sophisticated federal agencies, does not use this sort of statistical modeling to process ALPR data. During my entire career, I have not worked with a law enforcement agency that used the kinds of mathematical models that Dr. Higdon-Topaz applies in his report or that would have the capabilities to do so. Law enforcement agencies act on concrete, specific, actionable evidence regarding location and activities capable of supporting proof.

**VI. Conclusion**

The claims made by the plaintiffs' experts overstate the surveillance capabilities of ALPR systems and fail to account for the significant technical and practical distinctions between Flock ALPR data and location tracking technologies such as CSLI and GPS. While Flock ALPRs are a valuable investigative aid, ALPR cameras only capture vehicle images at fixed points and at specific locations on public streets. As such, ALPR cameras do not provide information on a



**Precision Cellular Analysis LLC**

vehicle's origin, destination, location between captures, whether a vehicle stopped at a location between captures, and, if so, how long a vehicle stopped at a particular location. In contrast, CSLI and GPS technologies provide persistent, time-stamped records tied to specific devices and users, enabling law enforcement to track a subject's full movements. This cannot be done with ALPR data.

I am being compensated at my standard hourly rate of $350 per hour for all time spent on case review, data analysis, report preparation, and expert consultation. My compensation is not contingent upon the outcome of the case, the opinions expressed herein, or any subsequent testimony. My findings, conclusions, and opinions are based solely on the data reviewed, standard forensic methodologies, and my professional experience.

I reserve the right to supplement or amend this report should additional information or materials become available.

*Kevin R. Horan*
_____
Kevin R. Horan
Co-Founder
Precision Cellular Analysis
Date: August 8, 2025

**Materials Considered**

**Expert Reports**

- Expert Report of Andrew P. Wheeler, Ph.D.

- Expert Report of Chad Higdon-Topaz, Ph.D.

**Flock Safety Materials**

- Falcon LR Solar Specification Sheet (FLOCK0000257)

- About Flock Safety ALPR, Product + Technology FAQs (NORF001560)

- Flock Safety Falcon Overview (NORF001563)

- Sole Source Letter for Flock Safety ALPR Cameras and Solution (NORF001566)

- Anatomy of a Search Result Image Card (NORF001776)

- Flock Safety Training Video (2025) (NORF001798)

**Academic and Technical Literature**

- Hoy, Joseph. *Forensic Radio Survey Techniques for Cell Site Analysis.* Wiley, 2022.

**Standards and Guidelines**

- Scientific Working Group on Digital Evidence (SWGDE), "Recommendations for Cell Site Analysis" (SWGDE.org)

**Government and Law Enforcement Resources**

- FBI CAST Field Resource Guide (2023 Edition)

**Supplemental Materials**

- FCC tower registration database for Norfolk, VA and surrounding areas, including: Virginia Beach, Chesapeake, Portsmouth, Hampton, and Newport News, VA.

- Google Maps imagery and street-level business/residence location data for:

  o ██████████████ and adjacent commercial area near Little Creek Rd. & Granby St., Norfolk, VA

  o Neighborhood surrounding Lafayette Blvd. between Tidewater Dr. and Chesapeake Blvd., Norfolk, VA

- Publicly available reports and websites addressing cell phone user behavior and network infrastructure, including:

    o Ericsson Mobility Report (2024) (www.ericsson.com)

    o CTIA Wireless Industry Survey (2023) (www.ctia.org)

    o FCC Communications Marketplace Report (2022) (www.fcc.gov)

    o Pew Research Center, *Mobile Technology and Home Broadband* (2023) (www.pewresearch.org)

# CURRICULUM VITAE



### *Kevin R Horan*
Co-Founder
Precision Cellular Analysis
P.O. Box 72
Bellbrook, OH 45305
614-725-9804

---

## PROFESSIONAL EXPERIENCE

**PRECISION CELLULAR ANALYSIS** (August 2022 – Present), Co-Founder. My firm specializes in cellular record analysis, law enforcement training and expert witness services.

**SPECIAL INVESTIGATOR** (August 2022 – Present), Montgomery County Prosecutor's Office, Dayton, OH. Contractual arrangement to assist local law enforcement agencies with cell phone analysis.

**SUPERVISORY SPECIAL AGENT** (2019 – 2022), FBI C.A.S.T (Cellular Analysis Survey Team). Program Manager/Coordinator for 19 FBI Field Offices. Field Supervisor for 23 FBI Agents and Task Force Officers for the Western region of the United States. Set standards and goals for personnel and conduct performance appraisals. Provide training, guidance and instruction to personnel.

2007 – 2019: National Asset, FBI C.A.S.T. (Cellular Analysis Survey Team).  One of twelve full time FBI Special Agents who provide cellular record analysis and technological assistance to Local, State and Federal Law Enforcement, including mapping, analytical reports and expert testimony at trials.  Conduct training regarding cellular technology and record analysis for law enforcement.  Conduct tracking missions on target cell phones used by fugitives, witnesses or victims of crime.

2007 – 2011:  Task Force Coordinator for the Columbus Metro Violent Crimes Task Force, which is responsible for investigating criminal enterprises, robberies, kidnappings, fugitive cases and other crimes of violence.  Perform administrative and partial supervisory functions for 10 Task Force Officers.  Also perform Relief and Principal Relief Supervisory functions for the Violent Crime Squad.

1998 – 2018:  Assistant Team Leader, FBI Cincinnati SWAT Team.  Executive Officer for 17-member tactical entry team.  Responsible for training SWAT Operators in conducting safe and effective arrests, searches and seizures.  Conduct mission planning and drafting of operations orders.  Cultivate and maintain SWAT Operator competency and evaluate performance.

March 2006 – November 2006:  Acting Supervisory Special Agent for Squad 6, Violent Crime Squad.  Supervised 6 Special Agents in criminal investigations and managed the collection, evaluation and dissemination of information emanating from these investigations.

Overall Special Agent responsibilities include: Investigating felony offenses; Preparing and serving search warrants; Preparing reports of Investigations for presentment to Grand Jury; Conducting pattern analysis; Collecting and preserving criminal evidence; Testifying in court; Investigating organized criminal elements within the jurisdictional boundaries of the Cincinnati Division of the FBI; Recovering lost and stolen property; Directing, and advising 5 Task Force and 5 Special Agents during preliminary investigations of felony crimes against persons and property; Supervising evidence technicians during the processing and collection of evidence at crime scenes; Conducting interviews and interrogations; Performing liaison with local, state and federal law enforcement agencies as well as private industry security forces.

**Assistant Prosecuting Attorney** (May 1991 – November 1995)
Montgomery County Prosecutor's Office
Dayton, Ohio

Responsibilities included: Prosecution of Juvenile offenders, adult preliminary hearings, evidence presentation to grand jury and adult felony trial docket.

EDUCATION
_____

AB – Political Science - Syracuse University (1988), Syracuse, New York

JD – Law – University of Dayton School of Law (1991), Dayton, Ohio

Admitted to the Ohio Bar (1991)

PROFESSIONAL TRAINING & INSTRUCTION
_____

Basic Legal and Advanced Legal training – 1991
Informant Development – 1996, 2001
Organized Crime/Drug Investigations – 1999
Safe Streets/Street Survival School – 1999
Basic SWAT School/SWAT Certified – 1998
SWAT Breaching School – 1999
Drug Supervisor – 2002
Street Crimes/Gang School – 2001
SWAT Weapons of Mass Destruction Tactical Operators Course – 2001
University of Louisville – Southern Police Institute – Homicide Investigation School – 2003
Airport Liasion Agent Basic School – 2005
MS-13 Training School, San Salavdor, El Salavor – 2006

FBI Cellular Technology Courses - 2007, 2008, 2014, 2015, 2018, 2019, 2020

Emerging Technology Support (ETS), Reston, VA – 2008 (2 weeks) - Basic Cellular Tracking and RF Therory

Harris Corporation – Harris Basic (RF technology company providing training to government agencies) – 2009 (2 weeks)
        -Attended multiple classes with detailed study in GSM, iDEN, CDMA, UMTS and LTE cellular protocols

Emerging Technology Support (ETS), Mooresville, NC, 2008/2010 (4 weeks) – Cellular Telephone Network Theory
        -GSM, CDMA, Basic IDEN, Radio Frequency Theory
        -In-person training from legal compliance and engineers from the following cellular telephone providers: US
         Cellular, Sprint/Nextel, Verizon, Metro PCS, Cricket, T-Mobile, and AT&T
        -JDSU/Agilent Wireless Optimization Software certified
        - Expert witness training
        - Practical exercises and mock trial
        - Certified as cellular record analyst and expert

Qualcomm Wireless Academy, Arlington, VA – 2014 (8 hrs) – LTE technology and networks

FBI Instructor Development Course (Certified Instructor) - 2011

Instructor - Cellular Technology/Records Analysis (multi-day course)  to 100's of investigators and Special Agents
        (Both nationally and internationally)

Provided telephone records analysis for local, state and federal law enforcement agencies

AWARDS
_____

2012 – FBI Director's Award – Distinguished Service to the Law Enforcement Community

COURTROOM EXPERIENCE
_____

Testified over 100 times in State and Federal Court in the following states:

            Arkansas, Connecticut, Florida, Georgia, Indiana, Iowa, Kentucky,
            Minnesota, Maryland, New Hampshire, Ohio
            Rhode Island, South Carolina, Tennessee, Texas, Virginia, West Virginia, Washington, DC

EXPERT TESTIMONY – KEVIN R. HORAN*

**2010**

06/01/2010 – United States v. Maurice Williams, US District Court, Columbus, Ohio

**2011**

01/12/2011 – United States v. Dwayne Davis, US District Court, Cleveland, Ohio
06/15/2011 – United States v. Tyvarus Lindsey, US District Court, Minneapolis, Minnesota
11/16/2011 – State of Ohio v. Donnie Berry, Court of Common Pleas, Defiance, Ohio

**2012**

01/06/2012 – United States v. Anthony Wllloughby, Toledo, Ohio
01/09/2012 – State of Ohio v. Anthony Croom, Court of Common Pleas, Dayton, Ohio
01/13/2012 – United States v.  Eric Tutstone, US District Court, Canton, Ohio
06/11/2012 – State of Ohio v. Keywan Conner, Columbus, Ohio
10/29/2012 – United States v.  Shaundelle Dial, US District Court, Youngstown, Ohio
11/26/2012 – United States v.  Gabouriel, US District Court, Cleveland, Ohio
12/18/2012 – State of Kentucky v.  Robert Brown, Fayette County, Lexington, Kentucky

**2013**

03/28/2013 – United States v. Randolph Thomas, DC Superior Court, Washington D.C.
04/25/2013 – United States v. Tommy Branch, DC Superior Court, Washington D.C.
05/16/2013 – United States v. Alazjuan Gray, DC Superior Court, Washington D.C.
06/18/2013 – United States v. Maurice Colbert, US District Court, Baltimore, Maryland
06/19/2013 – United States v. Keith Reed, et. al., US District Court, Alexandria, VA
06/26/2013 – State of Ohio v. Michael Harwell, Court of Common Pleas, Dayton, Ohio
06/27/2013 – United States v. Devon Holmes, DC Superior Court, Washington D.C.
07/15/2013 – United States v. Suni Kuti, DC Superior Court, Washington, D.C.
07/19/2013 – United States v. Ashby, DC Superior Court, Washington, D.C.
07/29/2013 – State of Texas v. Lorenza Sam, Ft. Bend County (Texas) Court, Houston, TX
10/03/2013 – United States v. Watkins, DC Superior Court, Washington, D.C.
10/30/2013 – State of Texas v. Antwain Burks, Ft. Bend County (Texas) Court, Houston, TX
12/19/2013 – State of Ohio v. Richard Western, Court of Common Pleas, Dayton, Ohio

## 2014

01/28/2014 – State of Ohio v. Samuel White, Court of Common Pleas, Dayton, Ohio
02/03/2014 – State of Ohio v. Shawn Wood, Court of Common Pleas, Dayton, Ohio
02/27/2014 – United States v. Ricky Donaldson, DC Superior Court, Washington, D.C.
03/11/2014 – United States v. Ebony Ruffin, DC Superior Court, Washington, D.C.
04/02/2014 – United States v. Jeorge Torrez, US District Court, Alexandria, VA
04/08/2014 – United States v. Terrance Williams, DC Superior Court, Washington, D.C.
05/30/2014 – State of Ohio v. Eddie Lackey, Court of Common Pleas, Dayton, Ohio
06/12/2014 – United States v. Leon Boyd, DC Superior Court, Washington, D.C.
06/25/2014 – United States v. Pinson, US District Court, Columbia, South Carolina
08/01/2014 – State of Ohio v. Lynntonio Watson, Court of Common Pleas, Dayton, Ohio
08/12/2014 – State of Georgia v. Maurice Conner, Fulton County Court, Atlanta, Georgia
09/02/2014 – United States v. Freeman, US District Court, Greenbelt, Maryland (Daubert)
09/09/2014 – United States v. Freeman, US District Court, Greenbelt, Maryland
09/16/2014 – United States v. Chappell, DC Superior Court, Washington, D.C. (Frye)
09/24/2014 – State of Ohio v. Moxley, Court of Common Pleas, Dayton, Ohio
10/09/2014 – United States v. Donovan, US District Court, Cincinnati, Ohio
10/10/2014 – United States v. Chappell, DC Superior Court, Washington, DC
10/09/2014 – United States v. Watson, Greensboro, South Carolina
11/05/2014 – State of Kentucky v. Holbrook, Elliott Circuit Court, KY (Daubert)
11/10/2014 – United States v. Mack, US District Court, Hartford, CT (Daubert)

## 2015

01/29/2015 – United States v. Tyrone Johnson, DC Superior Court, Washington, D.C.
02/18/2015 – State of Connecticut v. Solomon Taylor, Waterbury, CT
02/19/2015 – State of Connecticut v. Jermaine Richards, Bridgeport, CT
03/04/2015 – State of Kentucky v. Holbrook, Elliott Circuit Court, KY
04/16/2015 – State of Ohio v. Kramer, Court of Common Pleas, Defiance, Ohio
04/23/2015 – United States v. Cortez Calloway, DC Superior Court, Washington, D.C.
05/12/2015 – State of Florida v. Clifton Laidley, Broward County, Ft. Lauderdale, FL
05/28/2015 – State of Rhode Island v. Adams, Superior Ct., Providence, RI (Daubert)
06/26/2015 – State of Tenn. v. Norman Clark, Knox County Court, Knoxville, TN (Daubert)
07/09/2015 – State of Rhode Island v. Adams, Superior Ct., Providence, RI
08/18/2015 – State of Tenn. v. Norman Clark, Knox County Court, Knoxville, TN
08/25/2015 – State of Florida v. Clifton Laidley, Broward County, Ft. Lauderdale, FL
09/23/2015 – State of Connecticut v.  McKethan, New London, CT.
09/25/2015 – United States v. Mulenga, DC Superior Court, Washington, D.C.

## 2016

02/18/2016 – State of Indiana v. Johnas Orr, Sullivan County Court, Sullivan, Indiana (Daubert)
03/09/2016 – Kentucky v. Garrett/Richardson, Circuit Court, Louisville, Kentucky
04/25/2016 – United States v. Chavez, US District Court, Alexandria, VA
05/19/2016 – United States v. Pitt, DC Superior Court, Washington, D.C.
06/23/2016 – State of NH v. Normil, Hillsborough Superior Ct., Manchester NH
06/30/2016 – State of Indiana v. Johnas Orr, Sullivan County Court, Sullivan, Indiana
09/09/2016 – Kentucky v. Lagantta, Circuit Court, Louisville, Kentucky
09/22/2016 – State of Ohio v. Jones, Court of Common Pleas, Dayton, Ohio
10/24/2016 – State of Kentucky v. Tonya Ford, Taylor County Court, Campbellsville, KY
              (post-conviction hearing)

## 2017

01/12/2017 – State of Ohio v. George Dewberry, Court of Common Pleas, Dayton, Ohio
02/02/2017 – State of Indiana v. Artavius Richards, Allen County Court, Ft. Wayne, IN
02/08/2017 – United States v. McKisssick, US District Court, Indianapolis, IN.
03/22/2017 – United States v. Dominic White, DC Superior Court, Washington, D.C.
05/24/2017 – State of Ohio v. Jamarko Walker, Court of Common Pleas, Dayton, Ohio
06/09/2017 – State of Indiana v. Larry Prouse, Vigo County Court, Terre Haute, IN
07/20/2017 – United States v. Gordon, et., al., US District Court, Lincoln, NE
07/21/2017 – State of Nebraska v. Rolander Brown, Douglas County Ct., Omaha, NE
08/03/2017 – State of Kentucky v. Christopher McCullum, Jefferson County, Louisville, KY
08/22/2017 – United States v. Charles Morgan, US District Ct., Washington, D.C. (Daubert)
08/23/2017 – State of Ohio v. Curtis McShann, Court of Common Pleas, Dayton, Ohio
08/29/2017 – United States v. Charles Morgan, US District Ct., Washington, D.C. (Daubert)
09/28/2017 – State of Ohio v. De Andre Dixon, Court of Common Pleas, Dayton, Ohio
10/11/2017 – United States v. Charles Morgan, US District Ct., Washington, D.C. (Daubert)

## 2018

01/16/2018 – State of Arkansas v. Terrell, Poinsett County Court, Harrisburg, Arkansas (Daubert)
02/02/2018 – State of Ohio v. Brandon Carr, Court of Common Pleas, Dayton, Ohio
02/27/2018 – United States v. Davis, et. al., US District Ct., Indianapolis, Indiana
04/12/2018 – State of Arkansas v. Terrell, Poinsett County Court, Harrisburg, Arkansas
04/30/2018 – United States v. Charles Morgan, US District Ct., Washington, D.C
06/07/2018 – State of Indiana v. Hagan, Warrick County Court, Boonville, IN

07/27/2018 – State of Ohio v. Blair, Court of Common Pleas, Athens, Ohio
08/01/2018 – State of Indiana v. Jones, Allen County Court, Ft. Wayne, IN
10/08/2018 – United States v. Loughry, US District Court, Charleston, WV

**2019**

01/30/2019 – State of Indiana v. Earl Martin, Marion County Court, Indianapolis, IN
04/03/2019 – State of Ohio v. Brian Kirby, Court of Common Pleas, Hamilton, OH
04/25/2019 – State of Ohio v. Kameron Tunsdale, Court of Common Pleas, Hamilton, OH
07/19/2019 – State of Ohio v. Gurpreet Singh, Court of Common Pleas, Hamilton, OH (GJ)
07/25/2019 – State of Indiana v. Lawon Browning, Marion County Court, Indianapolis, IN

**2020**

01/27/2020 – State of Ohio v. Joquez Ross, Court of Common Pleas, Lorain County, OH (Daubert)
08/12-13/2020 – State of Ohio v. Joquez Ross, Court of Common Pleas, Lorain County, OH
09/30/2020 – State of Ohio v. Hatfield, Court Common Pleas, Dayton, OH
10/15/2020 – State of KY v. Donald Lynch, Ohio County Circuit Court, Hartford, KY

**2021**

05/25/2021 – State of Iowa v. Christian Rivera (Mollie Tibbetts trial), Des Moines, IA
07/29/2021 – State of Indiana v. Edward Fox, Pike County Court, Petersburg, IN
10/05/2021 – State of Ohio v. Jamario Drane, Court of Common Pleas, Dayton, OH
11/10/2021 – United States v. Melissa McCormick, US District Court, Cleveland, Ohio

**2022**

01/25/2022 – State of Ohio v. Larry Rodgers, Court of Common Pleas, Dayton, OH
02/17/2022 – United States v. Whitney Lancaster, US District Court, Columbus, Ohio
03/16/2022 – State of Kentucky v. Antonio Wilson, Warren County Circuit Ct., Bowling Green, KY
03/18/2022 – United States v. Sterling Roberts, US District Ct. Dayton, OH
06/15/2022 – State of Kentucky v. Chase Simmons, Daviess County, KY
10/17/2022 – State of Ohio v. Gupreet Singh, Court of Common Pleas, Hamilton, OH
11/30/2022 – State of Ohio v. Christopher DeBord, Court of Common Pleas, Dayton, OH

**2023**

07/20/2023 – State of Ohio v. Jacob Bumpass, Court of Common Pleas, Batavia, OH
08/31/2023 – State of Ohio v. Quintin Clemons, Common Pleas Court, Dayton, OH
10/04/2023 – State of Ohio v. Jamar Hayes, Common Pleas Court, Dayton, OH

**2024**

05/08/2024 – State of Ohio v. Grupreet Singh, Court of Common Pleas, Hamilton, OH
07/24/2024 – State of Ohio v. Delante Holden, Court of Common Pleas, Dayton, OH
09/18/2024 – State of Ohio v. Lawrence Pate, Court of Common Pleas, Dayton, OH
10/01/2024 – State of Ohio v. Steven Miller, Court of Common Pleas, Dayton, OH
11/18/2024 – State of California v. Anthony Lomas, Riverside Hall of Justice, Riverside, CA

**2025**

03/13/2025 – State of Ohio v. Tommy Moreland, Court of Common Pleas, Dayton, OH
06/26/2025 – State of Ohio v. Shawn Jackson, Court of Common Pleas, Dayton, OH

(121 Total) (21 States)

*NOTE – this list does not include trial testimony and Case Agent participation in matters where I was not utilized as an expert witness.  As a Fact witness and Case Agent, I have testified approximately 25 times.