# EXHIBIT 18



# MEMORANDUM

| | |
|---|---|
| TO: | All Commands |
| FROM: | Chief of Police |
| COPIES TO: | |
| SUBJECT: | Memo 25-097: General Order OPR-493: Flock Safety ALPR System |
| DATE: | June 30, 2025 |

Operational General Order 493: Flock Safety ALPR System has now been issued superseding Special Order 23-002: Flock Safety. Personnel will acquaint themselves with the new order (attached). The current issue of the order is located at R:Reference\Orders & Memos\General Orders.

All personnel will log into PowerDMS and electronically sign, acknowledging receipt and understanding of the general order.

Commanding officers are to ensure compliance.

This memo self-cancels when superseded by notification.

Mark Talbot
Chief of Police

MET/ps/ats
(Attachment)

The information contained is restricted for official Departmental use only. Any further disclosure outside of the Norfolk Police Department is strictly prohibited.

| THE CITY OF NORFOLK POLICE DEPARTMENT | **Operational General Order - 493: Flock Safety ALPR System** |
|---|---|
| | Office of Preparation: Personnel and Accreditation Division |
| | **CALEA:** none |

| LEGAL REVIEW DATE: | 6/30/2025 \| 12:22 PM EDT | PRESCRIBED DATE: | 6/30/2025 \| 9:41 AM PDT |
|---|---|---|---|
| City Attorney: | *Signed by:* Karla Soloria | City Manager/Director of Public Safety: *Signed by:* | |
| APPROVED BY THE AUTHORITY OF THE CHIEF OF POLICE: | | *Signed by:* Mark Talbot | |

Purpose:

The purpose of this general order is to provide Norfolk Police Department personnel with requirements, guidelines, and principles for the use, response, collection, access, dissemination, retention and purging of Flock Safety data to ensure that information is used for legitimate law enforcement purposes only and in accordance with applicable law.

Policy:

It is the policy of the Norfolk Police Department to further support law enforcement capabilities by utilizing the latest technologies for crime prevention and apprehension of criminal suspects. Flock Safety utilizes Automatic License Plate Readers (ALPRs) to scan, detect and identify license plate numbers and vehicle characteristics. Officers will receive the appropriate training before being authorized to use these devices for law enforcement purposes. The Flock Safety ALPR system and the ALPR cameras associated with the system will be used and maintained by manufacturer recommendations and this policy.

Order Contents:
    I.    Definitions
    II.    Responsibilities
    III.    Permitted Uses and System Access
    IV.    Procedures
    V.    Training
    VI.    Restrictions on the Sale and Sharing of Data
    VII.    Security Procedures
    VIII.    Record Keeping and Reporting
    IX.    Maintenance
    X.    Violations

Related Documents:
1. OPR-492: LPR Systems
2. OPR-710: Operation of Police Vehicles
3. ADM-510: In Car Video System
4. PD 643 - Request to Enter a Flock Custom Hotlist

Supersedes:

1. S.O. 23-002: Flock Safety, dated July 25, 2023

I.  Definitions

   A.  Audit trail: all records of queries and responses in the Flock Safety ALPR system, and all records of actions in which system data is accessed, entered, updated, shared, or disseminated, including the following:

      1.  Date and time of access.

      2.  License plate number or other data elements used to query the system.

      3.  Specific purpose for accessing or querying the system, including the offense type for any criminal investigation.

      4.  Associated call for service or case number.

      5.  Username of the person or persons who accessed or queried the system.

   B.  Audit trail data: all forms of data collected or generated by the Flock Safety ALPR system for purposes of producing an audit trail.

   C.  Automatic License Plate Recognition (ALPR) System: a system of one or more high-speed cameras used in combination with computer algorithms to convert images of license plates, vehicles, or a combination of both into computer-readable data.

   D.  Custom hotlist: a hotlist manually created by NPD personnel.

   E.  Flock Safety: an ALPR system vendor that contracts with NPD.

   F.  Hotlist: A list of license plates and vehicles entered into the National Crime Information Center (NCIC) database, the Virginia Crime Information Network (VCIN) database, and any other database utilized by the Flock Safety ALPR system for comparison purposes.

   G.  Notification: an alert from the Flock Safety ALPR system that a license plate or vehicle matches a license plate or vehicle in a database utilized by the Flock ALPR system for comparison purposes.

   H.  Query: a search of the Flock Safety ALPR system data based on information entered by NPD personnel, including a full or partial license plate number, any identifying characteristics of a vehicle, the date, time, or location of an image, or any other data that is searchable within the Flock Safety ALPR system.

   I.  System data: all forms of data collected or generated by the Flock Safety ALPR system including images of license plates, vehicles, any identifying characteristics of vehicles, the date, time, and location of an image, and any peripheral images collected from which analytical data may be extracted.

II. <u>Responsibilities</u>

    A. Authority to approve the use of the Flock Safety ALPR system will be vested in the Chief of Police or their designee.

    B. Supervisors in the Real Time Crime Center (RTCC) will act as the point of contact and liaison with Flock Safety. Their responsibilities include, but are not limited to the following:

        1. Ensuring that the Flock Safety ALPR system has been approved by the state Division of Purchases and Supply of the Department of General Services.

        2. Overseeing the installation, implementation, and maintenance of Flock Safety ALPR system equipment.

        3. Ensuring the Standard Operating Procedures (SOP), Operational General Order, and any necessary forms are developed based on the manufacture's recommendations, VCIN/NCIC regulations and appropriate legal mandates.

        4. Overseeing the development and timely administration of training for ensuring proficiency of Flock Safety ALPR users. This will include but is not limited to the following:

            a. Ensuring that proficiency training is received by each user.

            b. Documenting and forwarding training records to the Training Division.

            c. Reviewing and revising all applicable training criteria on an as needed basis.

        5. Completing monthly audits of active custom hotlists to ensure that there is a corresponding PD 643 for each entry.

        6. Collecting and maintaining records to facilitate and satisfy the public reporting and audit trail requirements of the Flock Safety ALPR System usage and related actions. These reports must be submitted annually beginning April 1, 2027.

        7. Reviewing the policies and procedures in this General Order and making recommendations for any amendments.

        8. Designating Flock Safety ALPR system administrators.

    C. The Training Division will approve all recommended training and maintain all training records.

    D. NPD Supervisors will ensure that personnel under their direct command who use the Flock Safety ALPR System will follow the established guidelines and procedures.

G.O. OPR-493: Flock Safety ALPR System     Page 2 of 10     *Date of Issue:* 06/30/2025

    E.   NPD Flock Safety ALPR system administrators will be responsible for adding personnel as system users, reviewing data sharing requests with other jurisdictions for acceptance or approval, and conducing an audit of the Flock Safety ALPR system every thirty (30) days.

III.   Permitted Uses and System Access

    A.   Permitted Purposes

        1.   The Flock Safety ALPR system, including downloads, queries, and hotlists, may be used only in the following circumstances per Virginia law:

            a.   As part of a criminal investigation into an alleged violation of the Code of Virginia or any ordinance of any county, city, or town where there is reasonable suspicion that a crime was committed.

            b.   As part of an active investigation related to a missing or endangered person or a person associated with human trafficking.

            c.   To receive notifications related to a missing or endangered person, a person with an outstanding warrant, a person associated with human trafficking, a stolen vehicle, or a stolen license plate.

        2.   The Flock Safety ALPR system may be used for official and legitimate use only in connection with the law enforcement purposes set forth in this General Order and applicable law.

        3.   The Flock Safety ALPR system will not be used to interfere with individuals engaging in lawful activities or tracking individuals on the basis of the content of lawfully protected speech.

    B.   NPD Flock Safety ALPR system cameras will be positioned to capture only vehicles that are exposed to public view (e.g., vehicles on a public roadway or a place that is publicly accessible, such as public parking lots).

    C.   System Access

        1.   Officers are required to sign into the Flock Safety ALPR system at the beginning of each shift, such that the technology is available for use throughout their shift based on operational needs. The Flock Safety ALPR system can be minimized or otherwise remain in the background.

        2.   NPD personnel will ensure that they are logged into the Flock Safety ALPR system under the username assigned to them.

        3.   NPD personnel will not share their ALPR system credentials with others.

        4. NPD personnel will only utilize city issued equipment to access the ALPR system.

        5. NPD personnel will not allow any unauthorized individual to access the ALPR system.

D. Queries

        1. Queries may be used only in connection with a permitted purpose listed under section III(A). A query made in connection with a crime also requires reasonable suspicion.

        2. The user must enter the following information in the corresponding data fields of the Flock Safety ALPR system to initiate a query:

            a. Parameters (e.g., license plate, vehicle characteristics, time, and/or location).

            b. Case number or call for service number.

            c. Offense type and reasonable suspicion. Examples:

                (1) Retail theft – vehicle observed fleeing the scene

                (2) Stolen vehicle – victim reported vehicle stolen

                (3) Missing or endangered person – reported by family

        3. Through the Flock Safety ALPR system, audit logs will record the user who made the query, the parameters of the query, the date and time of the query, the offense type, and a concise basis for reasonable suspicion.

E. Custom Hotlists

        1. A license plate or vehicle added to a custom hotlist must be in connection with a permitted purpose listed under section III(A). A license plate or vehicle added in connection with a crime requires reasonable suspicion.

        2. Prior to creating a custom hotlist, the investigator must obtain approval from a Detective Division supervisor by submitting a PD 643. Signed PD 643 forms will be forwarded to the Sergeant assigned to the RTCC.

        3. The offense type and supporting reasonable suspicion must be described in the "Justification for Entry" section on PD 643.

        4. Examples where the manual entry of a license plate into a custom hotlist is permitted include, but are not limited to the following:

        a.    Be On Look Out (BOLO) for a vehicle as part of a criminal investigation supported by reasonable suspicion

        b.    Stolen vehicle or license plate

        c.    AMBER/SILVER alert

        d.    Child abduction

        e.    Wanted person with an outstanding warrant

        f.    Missing or endangered person

5. NPD personnel who create a custom hotlist are responsible for setting the expiration date of the custom hotlist to no longer than 21 days from creation. If after 21 days, it remains necessary to extend the expiration date of the custom hotlist, personnel must complete a new PD 643. The extension will not exceed an additional 21 days. At the conclusion of the extension, the custom hotlist will automatically be purged from the Flock Safety ALPR System.

## IV. Procedures

### A. Traffic Stops and Other Field Protocols

1. A traffic stop based on a notification from the Flock Safety ALPR system must be based on one of the permitted purposes listed in Section III(A).

2. **A notification from the Flock Safety ALPR System cannot be used as the sole reason for a traffic stop. Upon receipt of a notification personnel must take the following actions before commencing a traffic stop:**

    a.    Develop independent reasonable suspicion; or personnel must ensure that the notification was accurate by visually confirming that the vehicle's license plate numbers, letters, and issuing state and any other identifying characteristics match the information in the Flock Safety ALPR system.

    b.    For notifications based on VCIN/NCIC, personnel must also verify that the information received through VCIN/NCIC is accurate and current. The personnel will conduct the verification request by contacting the Emergency 911 Division (E911D) telecommunicator via radio. This process serves two purposes:

        (1)    Allows for a thorough notification verification check through the E911D; and

  (2) Initiates a Computer Aided Dispatch (CAD) documentation process and notifies the E911D of the potential request for assistance by other nearby units.

 c. After visually verifying that the information received matches the vehicle in question and verifying the notification through E911D, NPD personnel will take appropriate action after considering all variables and adhering to current NPD policies and procedures.

3. The following information must be recorded in On Call Records about each traffic stop made as a result of a notification:

 a. Any stop made as a result of a notification and the reason for the notification in keeping with Section III(A).

 b. The race, ethnicity, age, and gender of the driver of the vehicle stopped based on the notification.

B. Data Downloads

1. Personnel will not download system data unless such data is related to at least one of the purposes described in Section III(A).

2. If personnel download system data as part of an investigation, it will be stored in accordance with applicable evidentiary records law and policy.

3. Personnel may download audit trail data for purposes of generating audit reports.

C. Internal Audits

1. All Flock Safety ALPR records documenting the use of an ALPR, or access to or use of ALPR data, will be subject to review and audit by the Flock Safety ALPR system administrators. The purposes of these audits include to ensure compliance with the terms of this General Order and Virginia law.

2. The Flock Safety ALPR system administrators must conduct an audit of the ALPR system at least every thirty (30) days.

3. Audits will include a review of audit logs to ensure that queries are conducted for permitted purposes and that each user has input all required information.

4. The RTCC will complete monthly audits of custom hotlists to ensure that there is a corresponding PD 643 for each entry.

D. Data Retention and Destruction

1. The Flock Safety ALPR system will purge system data after twenty-one (21) days measured from the date of its capture.

2. The Flock Safety ALPR system will purge audit trail data after two (2) years measured from the date of its capture.

3. If the system data or the audit trail data is part of an ongoing investigation, prosecution, or civil action, such data will be retained by the law-enforcement agency until the following occurs.

    a. The investigation concludes without any criminal charges, or

    b. The final disposition of any criminal or civil matter related to the data.

4. System data and audit trail data are not subject to disclosure under the Virginia Freedom of Information Act (FOIA).

V. Training

A. All NPD personnel must complete standardized training prior to gaining access and using the Flock Safety ALPR system. NPD personnel who have access to the Flock Safety ALPR system as of the date of the implementation of this order and who have not yet completed standardized training will be required to complete that training within sixty (60) days of the issuance of this order to maintain their access to the Flock Safety ALPR system.

B. Standardized training will include the following:

1. Completion of a video orientation course provided by Flock Safety relating to the proper operation and use of the Flock Safety ALPR system.

2. An ALPR system certification course offered by Flock Safety.

3. Training on the following topics administered and tracked through PowerDMS:

    a. Review of the Virginia ALPR law and this General Order.

    b. Setup and maintenance procedures.

    c. Proper use guidelines.

    d. Recordkeeping and audit trail requirements.

    e. Query and hotlist functions and other forms of information entry and deletion.

    f. Training on any other subject deemed necessary and established by the Chief of Police or their designee.

  C. A user's completion of training will be recorded and stored by the RTCC and submitted to the Training Division.

  D. Additional training may be required based on manufacturer recommendations, recommendations by the RTCC, and as needed in response to changes in the Flock Safety system, policy, or law.

VI. <u>Restrictions on Sharing System Data</u>

  A. System data may be shared only in the following circumstances:

    1. With other Virginia law enforcement agencies for the purposes described above in section III(A).

    2. With a Commonwealth Attorney for the purposes described above in section III(A) or to comply with discovery obligations or a court order in a criminal proceeding.

    3. With a defendant or his counsel for purposes of complying with discovery or a court order in a criminal proceeding.

    4. Pursuant to a court order or a court-issued subpoena duces tecum in any criminal or civil proceeding.

    5. With an ALPR system vendor for maintenance or quality assurance purposes.

    6. To alert the public to an emergency situation, a missing or endangered person, a person associated with human trafficking, or a person with an outstanding warrant.

  B. Neither system data nor audit trail data will be sold.

VII. <u>System Data Security</u>

  A. System data will be encrypted in transit and at rest.

  B. All data collection points will be equipped with secure communication protocols to protect data in transit from interception and tampering.

  C. Access to system data will be restricted to authorized personnel.

  D. All data will be encrypted using industry-standard algorithms before being transmitted to servers.

  E. Flock Safety will be certified by the FBI's Criminal Justice Information Services (CJIS) and compliant with NDAA, SOC2 (Type II), SOC3, ISO 27001, Higher

                Education Community Vendor Assessment Tool (HECVAT), HIPAA, and FERPA.

      F.    Criminal Justice Information Services (CJIS) data must be securely stored.

VIII.   Recordkeeping and Reporting

      A.    RTCC is responsible for ensuring collection of all data needed to satisfy reporting requirements and compiling the annual report to the Virginia State Police required by Virginia law.

      B.    The following information must be recorded and reported annually:

          1.    Total number of cameras that are part of the ALPR systems used by the NPD, broken down by the following categories:

              a.    Vehicle cameras

              b.    Permanent cameras adjacent to a highway

              c.    Temporary cameras adjacent to a highway

          2.    The list of state and federal databases used (e.g. NCIC).

          3.    The total times the ALPR system was queried including purposes and offense types.

          4.    The race, ethnicity, age, and gender of any individual identified as suspect and charged as a result of a query.

          5.    The number of vehicles stopped based on a notification.

          6.    The race, ethnicity, age, and gender of the drivers of vehicles stopped based on a notification.

          7.    Whether data is shared with other agencies and, if so, which agencies.

          8.    The number of instances of unauthorized use and the nature and circumstances of the unauthorized use.

          9.    The number of subpoenas, search warrants, and other third party requests for ALPR system data or audit trail data, the identities of the requestors, and whether data was provided unless this disclosure is prohibited by law.

      C.    NPD will publicly post this General Order and the annual reports compiled pursuant to this General Order.

IX.   Maintenance

      A.    The RTCC will be responsible for overseeing the installation, implementation, and maintenance of Flock Safety ALPR equipment.

    B.    Flock Safety equipment will not be manipulated by anyone except a technician authorized by Flock Safety. The RTCC supervisors will be responsible for the notification and coordination with Flock Safety when Flock Safety equipment requires attention.

    C.    Any damage, manipulation, or hindering of Flock Safety equipment observed by an officer will be immediately reported to a supervisor who will notify the RTCC.

    D.    Flock Safety will maintain the operability of each camera and is responsible for repairing damaged or malfunctioning cameras. Flock Safety maintains all records of repairs and maintenance.

X.    <u>Violations</u>

    A.    If any NPD personnel fail to comply with or adequately enforce the terms of this General Order, their authority to access or use the Flock Safety ALPR system may be temporarily suspended or permanently revoked. Supervisors in the RTCC may take such other action necessary to ensure compliance, including referring such personnel for disciplinary measures permitted under NPD policy.