# EXHIBIT 26



# Transcript of Derrick Vernon

**Date:** July 18, 2025
**Case:** Schmidt and Arrington -v- City of Norfolk, et al.

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
www.planetdepos.com
Michigan #8598 | Nevada #089F | New Mexico #566

**WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY**

**Page 1**

```
          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF VIRGINIA
                 NORFOLK DIVISION
-------------------------X
LEE SCHMIDT and CRYSTAL           :
ARRINGTON,                        :
         Plaintiffs,              :   Case No.
    v.                            :   2:24-cv-00621-MSD-LRL
CITY OF NORFOLK and               :
MARK TALBOT, in his official capacity :
as the Norfolk Chief of Police,   :
         Defendants.              :
-------------------------X

     REMOTE VIDEOTAPED STENOGRAPHIC DEPOSITION OF
                   DERRICK VERNON
                Friday, July 18, 2025
                9:33 a.m. Eastern Time

Job No.: 589829
Pages: 1 - 191
STENOGRAPHICALLY REPORTED BY:
GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, ACCR, CSR
CALIFORNIA CSR 14424
```

**Page 2**

Deposition of DERRICK VERNON, held remotely, via videoconference at:

VIA VIDEOCONFERENCE

Pursuant to agreement, before Giselle Mitchell-Margerum, Registered Professional Reporter, Certified Reporting Instructor, Licensed Court Reporter (TN), Certified Court Reporter (GA), Certified Court Reporter (NJ), Certified Court Reporter (WA), Certified Shorthand Reporter (OR), Certified Shorthand Reporter No. 14424 (CA), Alabama Certified Court Reporter (ACCR), Certified Court Reporter (NM).

**Page 3**

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS:
    JESSICA BIGBIE, ESQ.
    INSTITUTE FOR JUSTICE
    816 Congress Ave, Suite 970
    Austin, TX 78701
    (512) 480-5936

ON BEHALF OF DEFENDANTS:
    KARLA SOLORIA, ESQ.
    NORFOLK CITY ATTORNEY'S OFFICE
    810 Union Street, Suite 900
    Norfolk, VA 23510
    757-664-4529

**Page 4**

APPEARANCES (cont'd):

ON BEHALF OF DEFENDANTS:
    ADAM MELITA
    JONATHAN KRAVIS
    LIAM GENNARI
    MUNGER TOLLES & OLSON LLP
    601 Massachusetts Avenue NW
    Suite 500 E
    Washington, D.C. 20001
    (202) 220-1100

ALSO PRESENT:
    ROBERT FROMMER
    JOSHUA WINDHAM
    MICHAEL SOYFER
    TAHMINEH DEHBOZORGI
    MATTHEW SIMPSON, Videographer

5

W I T N E S S   I N D E X

Witness                                         Page

DERRICK VERNON (sworn) ........................8

   Examination by JESSICA BIGBIE ............8

   Examination by KARLA SOLORIA  ...........182

   Re-Examination by JESSICA BIGBIE  .......186

6

E X H I B I T   I N D E X

No.         Description         Page

Exhibit 5    NORF019294 - Email ..............67
             5/17/2024

Exhibit 6    NORF008996 - Email ..............71
             01/26/2023

Exhibit 7    NORF018635 - City ..............102
             of Norfolk Operational Special Order -
             23:002

Exhibit 8    NORF021152 - City ..............106
             of Norfolk Memorandum

Exhibit 9    ATTORNEYS EYES .................111
             ONLY NORF000029

Exhibit 10   NORF-RERUN000204 ...............141
             - RTCC Training Document

Exhibit 11   NORF019435 - ...................171
             Email 11/11/2022

7

P R O C E E D I N G S

    THE VIDEOGRAPHER:  Here begins media number one in the videotaped deposition of Sergeant Derrick Vernon, in the matter of Lee Schmidt and Crystal Arrington vs. City of Norfolk and Mark Talbot, in his official capacity as the Norfolk Chief of Police.

    In the United States District Court for the Eastern District of Virginia, Norfolk Division.  Case No. 2:24-cv-00621-MSD-LRL.

    Today's date is July 18th 2025.  The time on the video monitor is 9:33 a.m. Eastern Time.  Remote videographer today is Matthew Simpson representing Planet Depos.  All parties of this video deposition are attending remotely.

    Would counsel please voice identify themselves and state whom they represent?

    ATTORNEY BIGBIE:  Jessica Bigbie, representing plaintiffs in this matter.  Working with the Institute for Justice.  We are also joined by my colleagues, Robert Frommer, Joshua Windham, Michael Soyfer, and Tahmineh Dehbozorgi.

8

    ATTORNEY SOLORIA:  This is Karla Soloria, with the Norfolk City Attorney's Office, on behalf of the defendants.  In the room with me, I have co-counsel, Adam Melita and Jonathan Kravis, with Munger Tolles, and I believe Liam Gennari, also with Munger, has joined us online.

    THE VIDEOGRAPHER:  The court reporter today is Giselle Mitchell, representing Planet Depos.  The witness will now be sworn.

    COURT REPORTER:  Please raise your right hand.

    Do you swear to tell the truth, the whole truth, and nothing but the truth?

    THE WITNESS:  Yes.

    COURT REPORTER:  Okay.  We can start.

    ATTORNEY BIGBIE:  Thank you.

    DERRICK VERNON
Having been duly sworn testified as follows:
EXAMINATION BY ATTORNEY BIGBIE:
   Q.  Can you please state your name and rank for the record?
   A.  My name is Derrick Vernon.  I'm a police

101

1  been going for coming up on an hour and a half.  So
2  I just want to --
3          ATTORNEY BIGBIE:  Well, yeah.  Let's -- I
4  have a good bit more of this.  So why don't we take
5  a break now, and we can come back to it?  I am on
6  Central Time, I'll tell you, so it's not quite lunch
7  time for me, but I'm happy to take a lunch break if
8  we need to, at this point.
9          ATTORNEY SOLORIA:  I think that makes
10 sense.
11         ATTORNEY BIGBIE:  Okay.  Let's go off the
12 record and we can talk logistics.
13         ATTORNEY SOLORIA:  Okay.
14         THE VIDEOGRAPHER:  We are going off the
15 record, and the time is 11:54 a.m..
16         (Luncheon break.)
17         THE VIDEOGRAPHER:  We are back on the
18 record, and the time is 1:00 p.m..
19         ATTORNEY BIGBIE:  Lieutenant Vernon, I
20 think when we had left off, we were talking about
21 audits of the queries in the system.
22         I want to maybe go back a little bit.  I'm

102

1  going to send in the chat, and I can share my screen
2  as well, two documents.  The first will be Bates
3  labeled NORF018635.  That will be Exhibit 3.  So
4  we'll start with that, and I can share my screen.
5          (Exhibit 7 marked for identification)
6          ATTORNEY BIGBIE:  Let me know if you can
7  see my screen too.
8          THE WITNESS:  I see the screen.
9          ATTORNEY BIGBIE:  Okay.
10 BY ATTORNEY BIGBIE:
11     Q.   So it looks like -- I guess, let me ask
12 you this.  Have you seen this document before?
13     A.   Yes.
14     Q.   Okay.  And I can scroll as necessary.
15 Just let me know.  Looks like this document is dated
16 July 13th of 2023.
17         Do you see that at the top?
18     A.   Yes.
19     Q.   And it's labeled, "Operational Special
20 Order 23-002:  Flock Safety."  What's your
21 understanding of what this document is?
22     A.   Providing guidance to using the Flock LPR

103

1  system in the City of Norfolk.
2      Q.  Okay.
3          And I guess, what are the dates from
4  which, to your knowledge, this specific policy --
5  these guidelines would have been controlling within
6  Norfolk?
7      A.  So, from the date that it was issued, to
8  the officers, or disseminated to the officers, until
9  the general order was disseminated on the 29th of
10 June.
11     Q.  That's the 29th of June of this year?
12     A.  Of this year, sorry.  Yes.
13     Q.  And you said when this order here that we
14 are looking at -- the Operational Special Order
15 23-002 -- you said it would be the date that it was
16 disseminated to officers.
17         Would you assume that would be close, at
18 least, in time to this July 13th 2023 date?
19     A.  Yes.
20     Q.  Okay.
21         All right.  So looking at this document
22 here -- and I will scroll -- I just want to -- I

104

1  want to make sure we are on the same page in terms
2  of looking at queries and the audit information you
3  are looking at.
4          Under this policy, what is your
5  understanding of the standard by which an officer
6  must justify their search -- in putting the reason
7  for their search in that query?
8          And take all the time you need.  I'm happy
9  to scroll as well.
10         [Witness reviewed document.]
11     A.  Looking at the order, it looks like it
12 gives more direction to investigators creating hot
13 lists, and what's required for those hot lists, in
14 term of permissions from a supervisor.
15         They are completing a document and
16 forwarding that document to the special projects
17 lieutenant, to ensure that they complete the
18 document after they have done the -- to request the
19 search, and they have the required permissions to do
20 such searches.
21         And the reasons that they may be able to
22 do a search, to include the BOLO; stolen vehicle;

---

105

1  amber alert; missing persons.
2     Q.  Okay.
3         But to my question, that's for a hot list
4  entry.  Correct?  And my question is for a general
5  query of the Flock system, is there anything in this
6  order that you see as guidance for what is a valid
7  reason to input in that box?
8     A.  The reasons to do the searches?  Is that
9  what you are asking?
10    Q.  Correct.
11    A.  So, I guess it lists what they -- the
12 reasons why you could do searches.  But it says
13 there is no specific -- it says they are not limited
14 to the search reasons, and gives reasons why you can
15 do searches.
16    Q.  Point me to where you are seeing that, if
17 you don't mind?
18    A.  So under "Procedures."
19    Q.  Okay.
20    A.  So, two.  And down "H."  Examples for
21 scenarios for mail entry of a license plate.
22    Q.  Okay.

---

106

1         And as you indicated, those are examples,
2  but not limited to those options.  Is that correct?
3     A.  Correct.
4     Q.  And this specifically again relates to hot
5  lists.  Not just specifically querying the system.
6  Is that your understanding?
7     A.  Yes.
8     Q.  Okay.
9         But in terms of actually querying the
10 system, generally, outside of the hot list context,
11 there is no guidance that you can see for what is a
12 reason to submit the query?
13    A.  I don't see -- unless it would be under
14 Section 3 for training.  Letter C.  And that
15 guidance may be in the completion of the Flock
16 Safety orientation video.  But again, I didn't see
17 this video, so I'm not sure.
18    Q.  Okay.
19        ATTORNEY BIGBIE:  Pivoting to what -- the
20 other document I list in the chat, that's
21 NORF021152, that will be Exhibit 4.  And I can share
22 my screen here so you can see.

---

107

1         (Exhibit 8 marked for identification)
2  BY ATTORNEY BIGBIE:
3     Q.  Have you seen this document before?
4     A.  Yes.
5     Q.  Can you tell me what it is?  What your
6  understanding is?
7     A.  So that will be the new general order that
8  would supersede what was in the last document.
9  Because this document was created to give additional
10 guidance, and more specific guidance, to the use of
11 the Flock Safety system.
12    Q.  Okay.
13        Did you have any role in, I guess,
14 creating this document that we are looking at?
15    A.  No.
16    Q.  How does this document, in your opinion,
17 change or -- I guess, change the criteria by which
18 officers are conducting queries?
19    A.  So one of the first differences, I can
20 assure, is with the change in the law in Virginia,
21 about the [Indiscernible].  So it went from being 30
22 days in the special order to being 21 days in this

---

108

1  order.  And there is a lot more detail given in
2  terms of definitions and responsibilities of
3  supervisors.
4         You know, of course, when the first order
5  was disseminated, there was no Realtime Crime Center
6  established yet.  So this gives more direction as to
7  what -- what's required in using Flock, and like the
8  permitted uses, and the system accesses.
9         So it's more direction given here.
10    Q.  Outside of just you, like, reading this
11 document, was there any other, like, training or --
12 I want to say like department meetings that you all
13 had, to teach you about these changes?
14    A.  No.
15    Q.  All right.  So within this, how does this
16 change, if at all, the -- what the officers are
17 putting into those search boxes in the query?
18    A.  Again, it provides direction as to what's
19 required.  So what parameters you are using for the
20 searches.  It asked for the case number and asked
21 for the offense type.  It asked for those things to
22 be entered when doing the queries.

**189**

1  ATTORNEY SOLORIA: Thank you.
2  THE VIDEOGRAPHER: Did anybody want a copy
3  of the video?
4  ATTORNEY SOYFER: Yes. Plaintiffs do.
5  (Whereupon, the deposition adjourned at
6  3:08 p.m.)

**190**

1  REPORTER'S CERTIFICATE
2
3  I, GISELLE MITCHELL-MARGERUM, the undersigned, a Registered Professional Reporter, Certified Reporting Instructor, Licensed Court Reporter, and Certified Court Reporter, do hereby certify:
4
5
6  That the witness, DERRICK VERNON, before examination was remotely duly sworn to testify to the truth, the whole truth, and nothing but the truth.
7
8  That the foregoing deposition was taken remotely stenographically by me on Friday, July 18, 2025, and thereafter was transcribed by me, and that the deposition is a full, true, and complete transcript of the testimony, including questions and answers, and objections, motions and exceptions made by counsel.
9
10
11  That reading and signing was not requested; and that I am neither attorney nor counsel for, nor related to or employed by, any of the parties to the action in which this deposition was taken; and that I have no interest, financial or otherwise, in this case.
12
13
14
15  IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of July, 2025.
16
17
18
19
20  GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, ACCR, CSR
21  CALIFORNIA CSR 14424
22

**191**

1
2  CERTIFICATE OF DEPONENT
3
4  I, DERRICK VERNON, hereby certify that I have read the foregoing pages, numbered 1 through 189, of my deposition of testimony taken in these proceedings on Friday, July 18, 2025 and, with the exception of the changes listed on the next page and/or corrections, if any, find them to be a true and accurate transcription thereof.
5
6
7
8
9
10
11
12  Signed: ........................
13  Name:   DERRICK VERNON
14  Date:   ........................
15
16
17
18
19
20
21
22