# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v. Case No. 8:23-cr-305-TPB-SPF

DEVON FLOYD,

Defendant.
_________________________________/

**ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS AUTOMATIC LICENSE PLATE READER EVIDENCE"**

This matter is before the Court on Defendant Devon Floyd's "Motion to Suppress Automatic License Plate Reader Evidence," filed by counsel on August 20, 2025. (Doc. 172). On September 10, 2025, the United States of America filed a response in opposition to the motion. (Doc. 179). On September 25, 2025, Defendant filed a reply. (Doc. 183). After reviewing the motion, response, reply, court file, and the record, the Court finds as follows:

**Background**

On August 10, 2023, at around 1:58 pm, a man robbed a Family Dollar store in Tampa, Florida. Security cameras captured the car in which the robber arrived and escaped – a dark-colored Mazda 6. In addition, during the robbery, the robber touched a box of pens. Police recovered a fingerprint from the box of pens and entered it into the automated IAFIS fingerprint identification system, which returned a "lead" to Defendant. A fingerprint examiner concluded that the fingerprint was Defendant's fingerprint. Police also queried an automatic license plate reader ("ALPR") database for nearby hits for the Mazda, and they discovered one or more such hits showing the

vehicle. The ALPR recorded the Mazda's license plate and provided the police with a new piece of information – the Mazda had a Florida license plate, with tag number BW7-8SR.

On August 11, 2023, at around 9:45 pm, a man attempted to rob a Dollar General store in Lakeland, Florida. The robber passed a written note to the cashier demanding money and containing a threat. The cashier was unable to provide any money, and the robber fled without taking anything. Police queried the Vigilant ALPR database and discovered a scan of the Mazda with the BW7-8SR license plate approximately 3.1 miles from the robbery location at 8:13 pm., around 32 minutes before the robbery.

On August 12, 2023, at around 3:00 am, someone robbed a Thorton's store in Riverview, Florida. Police queried a database maintained by the Hillsborough County Sheriff's "Eye on Crime Cameras" ("EOC"), an ALPR system. Around an hour before the robbery, the Mazda 6 with license plate BW7-8SR was around 1.17 miles from the Thorton's. A different ALPR camera, Vigilant, scanned the Mazda around 9 miles from the Thorton's approximately 17 minutes after the robbery.

On August 12, 2023, someone robbed a 7-Eleven in Temple Terrace, Florida. Police queried the EOC database – at 7:21 am, around 19 minutes before the robbery, the EOC camera scanned the plate of the Mazda around 2.5 miles from the 7-Eleven.

On August 12, 2023, at approximately 2:58 pm, someone robbed an Amoco gas station in Orlando, Florida. ALPR cameras in the area scanned the Mazda with license plate BW7-8SR approximately 4.1 miles from the robbery at around 12:21 pm, which was around 2 hours and 37 minutes before the robbery. During the robbery, the

robber wore a blue and white medical-style mask and black Nike slide shoes – both the mask and Nike shoes were recovered near the scene of the robbery. DNA swabs of the mask supported inclusion of Defendant as a single male contributor of the DNA, and swabs of the Nike shoes supported inclusion of Defendant as a contributor of DNA.

On August 13, 2023, at around 11:02 am, a man robbed a Dollar General store in North Port, Florida. Law enforcement queried the Vigilant ALPR cameras and discovered that cameras captured the Mazda at approximately 10:17 am, around 45 minutes before the robbery, approximately 2 miles from the robbery. North Port police issued a "be on the lookout" ("BOLO") alert for the Mazda. An off-duty officer at a Publix saw and reported the Mazda, and law enforcement obtained surveillance footage from the Publix showing Defendant there.

On August 13, 2023, at around 2:10 pm, someone robbed a 7-Eleven in Gibsonton, Florida. Police queried the EOC cameras and discovered the Mazda was scanned at approximately 2:25 pm, around 15 minutes after the robbery, and approximately 4 miles from the robbery location. During the robbery, the robber touched the counter near the cash register. Police recovered latent prints, including palm prints, from the counter. A print analyst concluded the palm print was a match to Defendant.

Law enforcement officers obtained Defendant's Google account information from his probation officer, and they made an "exigent data request" to Google, which showed Defendant may have been near a Rodeway Inn in Tampa, Florida. Agents arrived at the Rodeway Inn, where they found the Mazda. The agents surveilled the motel and learned that Defendant was living there. An agent then obtained four

search warrants, one for each of the three rooms at the Rodeway Inn where Defendant was seen, and one for the Mazda. In each warrant application, the affiant included information obtained from the ALPR's, including the Mazda's license plate number.

With the search warrants, agents searched the Rodeway Inn rooms and Mazda. They found and seized the following evidence from the Rodeway Inn: a Girsan model MC 95, 9-millimeter pistol; a Glock model 27 Gen4, .40 caliber pistol; seven rounds of.40 caliber ammunition; a pair of black Nike shorts; a black and white floral baseball cap. They found and seized the following evidence from the Mazda: two pairs of acid washed jeans; a black and gray shirt with a pattern on the back; a package of white medical-style masks. Agents also took DNA swabs from the pistol grips, pistol frame, and buttons.

On August 14, 2023, Defendant was arrested pursuant to a criminal complaint for one count of Hobbs Act robbery. On September 6, 2023, a grand jury returned a two-count indictment charging Defendant with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Doc. 25). On June 26, 2024, a grand jury returned a superseding indictment charging Defendant with two additional robbery and firearm violations, adding a Hobbs Act conspiracy count and charging Defendant's co-conspirators. (Doc. 50). On February 13, 2025, a grand jury returned a second superseding indictment charging Defendant with two additional robbery and firearm charges. (Doc. 109).

**Analysis**

The facts in this case are undisputed, and neither party has requested a hearing on what appears to involve pure issues of law related to the searches in this case.

In his motion, Defendant argues that the observations of the Mazda using the ALPR cameras constituted a Fourth Amendment "search" because the ALPR cameras tracked the car's physical movements. But even if the observations were not themselves searches, Defendant further contends that the Government's querying of the databases constituted separate Fourth Amendment events that would require probable cause or a warrant. Because the searches were warrantless, Defendant contends that they were unlawful. And because the ALPR evidence led to the discovery of much of the Government's evidence against Defendant, Defendant argues that the other evidence should be excluded as fruit of the poisonous tree.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A search occurs for the purposes of the Fourth Amendment 'when the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *United States v. Trader*, 981 F.3d 961, 967 (11th Cir. 2020) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).

Defendant has not identified any other criminal case that has held a law enforcement officer must obtain a search warrant to either use an ALPR database or query an ALPR database, and the Court's own research has not yielded any such case.[1] Instead, Defendant relies heavily on *United States v. Jones*, 565 U.S. 400

[1] Defendant points to *Schmidt v. City of Norfolk*, No. 2:24cv621, 2025 WL 410080 (E.D. Va. Feb. 5, 2025), a civil § 1983 case where the court denied a motion to dismiss and allowed the case to proceed. The plaintiff's claims were based on an allegedly unlawful search using an

(2012), and *Carpenter v. United States*, 585 U.S. 296 (2018), to argue that the Supreme Court has repeatedly held that modern surveillance that allows police to observe the whole of a person's physical movements may constitute a "search" under the Fourth Amendment.[2] But *Jones* was a case about the physical attachment of a GPS tracking device to a vehicle, and *Carpenter* was a case about historical location information compiled by the defendant's cellular phone provider – neither are perfect analogues for the present situation.

Neither the United States Supreme Court nor the Eleventh Circuit have taken up this precise question in a published opinion. But the Supreme Court has considered the constitutionality of an alleged search related to a vehicle identification number, which is reasonably similar to a license plate in important ways. In *New York v. Class*, the Supreme Court explained a variety of "factors that generally diminish the reasonable expectation of privacy in automobiles," including their function as modes of transportation rather than residences, and the fact that they are "justifiably the subject of pervasive regulation" by the government. 475 U.S. 106, 112-13 (1986). The Court ultimately concluded, as it pertained to a VIN number, that it was "unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of an automobile." *Id*. at

---

automatic license plate reader. The court itself noted that its finding was not intended to be a preview of the likely resolution of the case, and that the court was limited to interpreting the pre-discovery factual allegations in light most favorable to the plaintiffs. The Court does not find this civil case particularly persuasive, particularly in light of the overwhelming criminal case law addressing this issue.

[2] The Court notes that *Carpenter* limits itself in important ways – the Supreme Court specifically explained that its holding did not "call into question conventional surveillance technique and tools, such as security cameras." *Carpenter*, 585 U.S. at 316. Security cameras and automatic license plate readers appear to be functionally similar, if not identical.

114. Consequently, the Supreme Court held that "there was no reasonable expectation of privacy in the VIN." *Id.*

The Eleventh Circuit has addressed a very similar license plate reader issue in dicta. In *United States v. Wilcox*, 415 F. App'x 990 (11th Cir. 2011), although the Eleventh Circuit ultimately concluded that a criminal defendant waived his right to challenge a Magistrate Judge's recommendation by failing to file timely written objections, the court noted that it would have affirmed the district court even if the defendant had properly preserved his argument that he had a reasonable expectation of privacy in his license plate and that capture of an image of his license plate on a public road by tag reader technology violated the Fourth Amendment.[3] The Eleventh Circuit explained

> The Supreme Court has concluded in similar contexts that visual surveillance of vehicles in plain view does not constitute an unreasonable search for Fourth Amendment purposes. This is true even if the surveillance is aided by the use of technology to augment the officers' sensory faculties.
>
> Georgia law requires license plates to be displayed at all times on the rear of the vehicle so that it is plainly visible. Given the Supreme Court's Fourth Amendment precedent, the district court did not commit plain error in concluding that [the defendant] did not have a reasonable expectation of privacy in the plainly visible license plate and that the officers' use of the tag reader in this case did not violate the Fourth Amendment.

*Wilcox*, 415 F. App'x at 992 (internal citations omitted).

Other courts have considered this issue, and of the cases examining this license plate reader issue that the Court has located and reviewed, all have declined to extend

[3] The Court acknowledges that *Wilcox* predates *Carpenter*. But based on *Carpenter's* own limitations, the Court does not believe that the Eleventh Circuit's opinion would change were it to specifically address the issue of automatic license plate readers in the future.

*Carpenter* to license plates. *See United States v. Yang*, 958 F.3d 851, 859 (9th Cir. 2020) (defendant lacked standing and had no reasonable expectation of privacy in the historical license plate information captured by readers); *United States v. Toombs*, 671 F. Supp. 3d 1329, 1333-34 (N.D. Ala. 2023); *United States v. Brown*, No. 19 CR 949, 2021 WL 4963602, at *4 (N.D. Ill. Oct. 26, 2021) (finding that officers did not conduct a Fourth Amendment search when they queried the automatic license plate reader databases); *United States v. Bowers*, No. 2:18-CR-00292-DWA, 2021 WL 4775977, at *3 (W.D. Pa. Oct. 11, 2021) (defendant did not have reasonable expectation of privacy in his license plate); *United States v. Rubin*, 556 F. Supp. 3d 1123, 1129 (N.D. Cal 2021) (declining to extend *Carpenter* to license plate reader technology).

In light of these decisions, and considering the particular circumstances of this case, there does not appear to be any legitimate basis upon which to conclude that Defendant had a reasonable expectation of privacy as it relates to his license plate, automatic license plate readers, or in law enforcement's queries of those license plate databases and systems. That is particularly true where the license plate readers are similar to VIN numbers (as they are required to be publicly viewable) and do not implicate the Fourth Amendment concerns in *Jones* or *Carpenter* – the license plate readers did not track the entirety of Defendant's movements over a significant period of time. Rather, here, the license plate readers provided a snapshot of Defendant's location at a discrete time while traveling in an automobile on a public road. In addition, the same information obtained from the license plate readers could have been obtained from simple visual surveillance – such as the surveillance that occurred at the Publix.

For the reasons discussed above, the Court concludes that Defendant lacks a reasonable expectation of privacy in his license plate and in the information stored in the license plate reader systems. The use of automatic license plate readers in this case, and law enforcement's queries into license plate reader systems, did not violate Defendant's Fourth Amendment rights.[4] Consequently, Defendant's "Motion to Suppress Automatic License Plate Reader Evidence" is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of November, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[4] The Court specifically notes that even if it was proper or appropriate to extend *Carpenter's* holding to the automatic license plate readers at issue in this case, it would appear that the good faith exception would also be applicable. No reasonably well-trained police officer would be expected to make that leap, particularly given *Carpenter's* own limiting language. So even if there was a Fourth Amendment violation, the good faith exception to the exclusionary rule would apply, and suppression would not be warranted. *See United States v. Leon*, 468 U.S. 897, 914-26 (1984).